**NO. 04-0093C**

**JUDGE HORN**

---

**In the United States Court of Federal Claims**

**JAMES R. VANDERPOOL, THOMAS L. CAVEN, MICHELLE L. ROOT, RICHARD L. ROBERTS, THOMAS J. FUNKE, WILLIAM E. FISHER, DONALD MCMULLEN, and ROBERT MACHO,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

---

**Respectfully submitted,**

**Mahon & Berger, Esqs.**
**Lawrence Berger, Esq.**
**21 Glen Street, Suite D**
**Glen Cove, New York 11542**
**Phone: 516-671-2688**
**Fax: 516-671-1148**
**Attorney for the Plaintiffs**

**Dated: October 3, 2006**

# Table of Contents

**Page**

**Plaintiffs' Opposition to Defendant's Partial Motion to Dismiss........................1**

**I. Background........................................................................................1**

**II. The Basis of Defendant's Motion............................................................4**

**III. The Statutory Framework.......................................................................6**

**IV. Plaintiffs' Availability Pay Claims..........................................................7**

**V. The Federal Court of Claims Is Not Precluded From Asserting Subject Matter Jurisdiction Over The Plaintiffs' Claims, Nor Is Jurisdiction Precluded By A Purported Failure To Exhaust Remedies.......................................................................13**

**Conclusion................................................................................................18**

**Plaintiffs' Appendix Document**

**FAA Personnel Management System (FAA PMS) dated March 28, 1996.........1**

**Table of Authorities**

**Cases** **Page**

**Bradley v. United States, 42 Fed. Cl. 333 (1998)....................................................3, 4, 14, 15**

**Coit Indep. Joint Venture v. FSLIC, 489 U.S. 561 (1989)....................................13**

**Crowley v. United States, 398 F.3d 1329 (Fed. Cir. 2005)...................................13, 17**

**Darby v. Cisneros, 509 U.S. 137 (1993)..................................................................17**

**Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999)..........................................9**

**McCarthy v. Madigan, 503 U.S. 140 (1992)...........................................................13**

**Martinez v. Department of Treasury, 126 F.3d 1480 (Fed. Cir. 1997)...............3**

**Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2003)....................................17**

**Palmer v. United States 411 U.S. 389 (1973).........................................................13**

**United States v. Fausto, 484 U.S. 439 (1988).........................................................4, 5, 6, 14**

**Verizon Md. Inc. v. Public Service Comm'n of Md., 535 U.S. 635 (2002)........15**

**Weinberger v. Bentex Pharmaceuticals, Inc., 412 U.S. 645 (1973)....................4**

**Whitman v. Department of Transportation, 126 S.Ct. 2014 (2006)..................14**

**Table of Authorities**
**-continued-**


**Statutes and Regulations** **Page**

**5 U.S.C. Section 5541(3)..........2**

**5 U.S.C. Section 5545a..........1, 2, 4, 5, 9, 10, 11, 13, 14, 15, 16**

**5 U.S.C. Section 7101..........5**

**5 U.S.C. Section 7512..........15**

**5 U.S.C. Section 8401(17)..........2**

**28 U.S.C. Section 1491..........3**

**49 U.S.C. Section 40122..........5, 6, 7, 8, 10, 14, 15, 16, 17**

**5 C.F.R. Section 550.184(f)..........2**

**In the United States Court of Federal Claims**

**James R. Vanderpool, Thomas L. Caven,**
**Michelle L. Root, Richard L. Roberts,**
**Thomas J. Funke, William E. Fisher,**
**Donald McMullen, and Robert Macho,** **(Judge Horn)**

**Plaintiffs,** **No. 04-0093C**

**v.**

**The United States,**

**Defendant.**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**PARTIAL MOTION TO DISMISS**

## I. BACKGROUND

The Plaintiffs, each of whom at all relevant times was an employee of the Federal Aviation Administration ("FAA"), a division of the Department of Transportation, allege that the FAA wrongfully refused to pay to each of them a form of premium pay known as "availability pay" pursuant to the Law Enforcement Availability Pay Act of 1994 ("LEAPA") codified at 5 U.S.C. Section 5545a. It is undisputed that at all times relevant to this action each of the Plaintiffs was employed by the FAA as a criminal investigator. See Joint Stipulation of Fact ("JSOF") filed with the Court by Defendant with its Motion to Dismiss, paragraphs 3 through 8, for the applicable time periods covered by the Plaintiffs' claims. "Availability pay" is a form of

premium pay to compensate a criminal investigator for unanticipated unscheduled overtime. 5 U.S.C. Section 5545a. Each of the claims by the Plaintiffs for retroactive availability pay covers the time each Plaintiff encumbered a criminal investigator position with FAA, toiling in the field, investigating persons suspected of committing crimes affecting the integrity of the civil aviation infrastructure, and as a necessary incident of such investigative work, covers the aggregation of numerous hours of nonremunerated unscheduled overtime.

As a result of litigation before the Merit Systems Protection Board ("MSPB"), each of the Plaintiffs was granted criminal investigator status, retroactively from the inception of their employment, respectively (see JSOF, paragraphs 3-7), until March 26, 2001 for Plaintiffs Vanderpool, Roberts, Root, McMullen, Funke, and Fisher; January 4, 2002 for Plaintiff Caven, and February 10, 2001 for Plaintiff Macho. It is undisputed that on March 26, 2001, the FAA summarily converted all of the then employed Plaintiffs, except for Caven (Macho having separated from FAA on February 10, 2001) to non-criminal investigator positions. Caven was summarily converted to a non-criminal investigator position on January 4, 2002.

According to LEAPA, each of the Plaintiffs, by virtue of their criminal investigator status (as defined in 5 U.S.C. Section 8401 (17) which is incorporated into LEAPA), was eligible to receive availability pay. (See 5 U.S.C. Section 5545a(a)(2) which incorporates 8401(17) through 5541(3)). Furthermore, LEAPA provides that "each criminal investigator <u>shall</u> be paid availability pay" as provided under LEAPA. 5 USC Section 5545a(c). [Emphasis added.]. The payment is mandatory, not discretionary, and by virtue of 5 CFR Section 550.184(f) is even to be paid retroactively to correct lapses due to agency error. As expressed in the title to LEAPA, "Availability pay for criminal investigators," it is clear that availability pay is directly tied to the

position of a criminal investigator. 5 U.S.C. Section 5545a(b) provides that "the purpose of [LEAPA] is to provide premium pay to criminal investigators to ensure the availability of criminal investigators." "Availability pay is intended to compensate investigators for being available for unscheduled duty an average of two hours in excess of each regular workday." Martinez v. Department of Treasury, 126 F.3d 1480, 1483 (Fed. Cir. 1997).

The Defendant appropriately observes that this Court has previously ruled that claims against the government for monetary relief under LEAPA are claims brought under a money mandating statute and therefore this Court has subject matter jurisdiction to consider such claims under the Tucker Act (28 U.S.C. Section 1491). Bradley v. United States, 42 Fed. Cl. 333, 335-36 (1998). See p. 5 of Plaintiff's Motion to Dismiss ("Motion"). Despite the Bradley ruling that LEAPA is a money mandating statute granting this Court subject matter jurisdiction to consider monetary claims brought under LEAPA, the Defendant in its Motion asserts that this Court has jurisdiction to consider some but not all of Plaintiffs' LEAPA claims.

Specifically, the Defendant apparently concedes that this Court possesses jurisdiction to entertain claims for availability pay only for the initial year of eligibility of each Plaintiff, but does not possess jurisdiction to consider any claim for availability pay for any year subsequent to the lapse of the initial year. (Motion p. 7). Significantly, the Defendant also concedes that in exercising subject matter jurisdiction over Plaintiffs' LEAPA claims (presumably whether for the initial year or those subsequent thereto) as an incident thereto, this Court also has the "jurisdiction to make the legal and factual determinations" necessary to determine whether the Plaintiffs should be certified as eligible to initially receive or (presumably after the initial year) continue to receive availability pay. See Motion pp. 9-10. Based upon this concession by

Defendant, the undersigned will not brief the propriety of the exercise of subject matter jurisdiction by this Court over each Plaintiffs' initial eligibility for availability pay or the incidental power of this Court to certify the eligibility of the Plaintiffs as contemplated by LEAPA, for any period that this Court decides to exercise such jurisdiction. However, ever mindful of the Supreme Court's admonishment that "[P]arties, of course, cannot confer jurisdiction; only Congress can do so" (Weinberger v. Bentex Pharmaceuticals, Inc., 412 U.S. 645, 652 (1973)), in the event this Court does not accept the jurisdictional concession by Defendant, the undersigned would appreciate notice of the Court's contrary view and an opportunity to brief the issues of initial year jurisdiction including and the power of the Court to certify eligibility for availability pay if jurisdiction is granted over Plaintiffs' LEAPA claims.

## II. THE BASIS OF DEFENDANT'S MOTION

The Defendant asserts two separate arguments in support of its claim that this Court does not have jurisdiction to entertain any of Plaintiffs' claims for availability pay after the lapse of the initial year of eligibility, and an additional argument that, regardless when an initial year of eligibility commenced, any claim which accrued to a Plaintiff on or after April 1, 1996 is barred as a matter of law. The first argument sounds in jurisdictional preclusion (Motion pp 10-13) and the second sounds in a failure to exhaust remedies (Motion pp. 14-16). Specifically, Defendant first asserts that by virtue of the provisions of 5 U.S.C. Section 5545a(e)(1), Congress has given the MSPB exclusive jurisdiction over the LEAPA claims of the Plaintiffs and, in consequence, despite Bradley, supra, this Court is stripped of its Tucker Act jurisdiction to consider those claims. The Defendant cites United States v. Fausto, 484 U.S. 439 (1988) in support of its claim

preclusion argument. In Fausto, the Supreme Court ruled that if an employee's claim can fit within the statutory scheme of the Civil Service Reform Act (5 U.S.C. Section 7101, et seq.) ("CSRA") , then the employee may be precluded from pursuing remedies beyond those set out in the CSRA (such as a Tucker Act claim for the same relief). The Defendant apparently argues to this Court that the Plaintiffs' claims for monetary relief, after the lapse of initial year eligibility for availability pay, somehow falls within the "comprehensive and integrated review scheme of the CSRA." United States v. Fausto, 484 U.S. at 454. The Defendant argues in the alternative that the Plaintiffs' claims post-initial year, are premature, or in other words, the Plaintiffs have failed to exhaust the request for certification procedures under LEAPA (5 U.S.C. Section 5545a(e)(1)).

Lastly, and independent of the preclusion and exhaustion arguments, the Defendant argues that by virtue of Congressional enactment codified at 49 U.S.C. Section 40122(g), neither LEAPA (5 U.S.C. Section 5545a) nor the Back Pay Act (5 U.S.C. Section 5595) have applied to FAA employees such as Plaintiffs, since April 1, 1996, and hence, any claim for availability pay which accrued after that date are precluded, as a matter of law. (Motion p. 16-19).

For reasons discussed below, each of these arguments by Defendant are wholly without merit. Briefly, the Defendant's Motion must fail because (i) no statute, regulation, or "comprehensive and integrated review scheme" set up by Congress affirmately or implicity prohibits this Court from exercising subject matter jurisdiction over Plaintiffs' claims so as to preclude Tucker Act jurisdiction in this matter; (ii) no statute, regulation or internal agency rule imposes an affirmative duty upon Plaintiffs' to exhaust any alleged administrative remedy including requests for certification, ostensibly provided by 5 U.S.C. Section 5545a(e)(1) as a

prerequisite to judicial review by this Court; and (iii) the FAA personnel management system developed by the FAA pursuant to 49 U.S.C. Section 40122(g)(1), reincorporated, albeit indirectly, as binding on the FAA, the mandatory availability pay provisions of LEAPA, or at a minimum those provisions of LEAPA which deal with the mandatory payment of overtime for unscheduled irregular work.

## III. THE STATUTORY FRAMEWORK

In order to properly assess the Defendant's arguments regarding jurisdictional preclusion (Motion pp. 10-13), exhaustion of remedies (Motion pp. 14-16), and claim preclusion (Motion pp. 16-19), it is necessary to set forth the statutory framework which governs the employment rights of Plaintiffs. For instance, a major flaw in Defendant's argument regarding preclusion of jurisdiction is that the CSRA prohibits Tucker Act jurisdiction because Plaintiffs' availability pay claims are somehow subsumed by the "comprehensive and integrated review scheme" of the CSRA. See United States v. Fausto, 484 U.S. at 454. However, as will be discussed below, a "comprehensive and integrated" CSRA has no application to the FAA by virtue of 49 U.S.C. Section 40122(g), which authorized it to substitute its own personnel management system in lieu of the CSRA, and hence it is necessary to look to the FAA personnel management system developed pursuant to 40122(g) to determine whether that system, as developed, prohibits Tucker Act jurisdiction. Fausto provides no help to Defendant in this regard since the decision in that case flowed directly from the CSRA's overall statutory purpose to "replace the haphazard arrangements for administrative and judicial review of personnel actions, part of the outdated patchwork of statutes and rules...". United States v. Fausto, 484 U.S. at 444. The CSRA, as a

"comprehensive and integrated" system of administrative and judicial review did not survive intact FAA's newly developed personnel management system pursuant to 49 U.S.C. Section 40122(g), but rather as will be seen below, some, but not all of the CSRA provisions, (a patchwork if there ever was one) was incorporated into the new FAA personnel management system. It is highly significant that Congress, as expressed at 49 U.S.C. Section 40122(g)(2), and as Defendant observes in its Motion at pp. 16-19, did not mandate that LEAPA be expressly incorporated into the contemplated FAA personnel management system and it is now implausible to argue, as Defendant apparently does, that it is an overall statutory purpose of 40122(g) to integrate LEAPA as well as its MSPB review procedures into the newly developed FAA personnel management system, and hence, assuming arguendo, that Plaintiffs' availability pay claims survive into the new FAA personnel management system (to be discussed below) that the new FAA system somehow directly or implicitly precludes Tucker Act jurisdiction of such claims. This is an impossible position for the Defendant. Nevertheless, it is to 40122(g) and the FAA personnel management system that one must look to in order to determine whether Tucker Act jurisdiction is precluded and whether the FAA personnel management system ("FAA PMS") is sufficiently "comprehensive and integrated" to encompass Plaintiffs' claims here. See the FAA PMS, dated March 28, 1996, at Plaintiffs' Appendix, pp. 1-30.

## IV. PLAINTIFFS' AVAILABILITY PAY CLAIMS

Each of the Plaintiffs, at all relevant times, were employed as criminal investigators by the FAA. (JSOF at 4-7). Like all federal agencies, the FAA faces certain statutory constraints on its prerogatives as an employer. Unlike most federal agencies, however, the FAA is not directly

governed by the CSRA. Congress has directed the FAA to develop its own personnel management system, 49 U.S.C. 40122(g)(1), and has provided that "[t]he provisions of Title 5," which is where CSRA is codified, "shall not apply to the new personnel management system," with certain exceptions. Id. Section 40122(g)(2). The list of CSRA provisions that directly govern FAA PMS is codified at Id. 40122(g)(2). In promulgating the FAA PMS, the Administrator noted his decision to adopt the substance of any provision of Title 5 that he deems appropriate. See Plaintiffs' Appendix, II p. 2.

Pursuant to this legislation, the FAA developed the FAA PMS system. See Plaintiffs' Appendix, pp. 1-30. The system incorporates the provisions of the CSRA required under the enabling legislation, as well as additional CSRA provisions the FAA administrator deemed appropriate for the FAA. Id at II, p. 2. Additionally, Congress further constrained the FAA by enacting the following "Employee protections" provision:

> (e) Employee protections. - Until July 1, 1999, basic wages... and operational differential pay provided employees of the Administration shall not be involuntarily adversely affected by reason of enactment of this section..." at 49 U.S.C. Section 40122(e) [Emphasis added].

Further, according to the "Compensation" provisions of the FAA PMS (See Plaintiff Appendix, Chapter ll, p. 13):

> (b) Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996. Plaintiff Appendix, Chapter ll, 1(b). [Emphasis added].

According to the FAA PMS, it was contemplated that on or about September 30, 1997, a revised FAA PMS "compensation" plan be devised and implemented (See Plaintiffs' Appendix, Chapter ll, 1(d)), at p. 13). The FAA PMS does not contain a definition of the phrases "personnel compensation" or "benefits," but a plain language approach would certainly encompass availability pay as defined at 5 U.S.C. Section 5545a, which was in existence as of March 31, 1996, as a form of "personnel compensation" or one of the "benefits" due to FAA criminal investigators, for irregular unanticipated overtime. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) ("...our analysis begins with the language of the statute.") The plain meaning of "compensation" is "money paid for ...work." Encarta World Dictionary, St. Martins Press, 1999, p. 370. "Benefits" includes "money paid ... to an entitled person by an employer." Id. At p. 161. Neither definition distinguishes between money paid by an employer for basic wages as opposed to payment for either scheduled or unscheduled overtime work. FAA management, having enjoyed the benefit of the fruits of the criminal investigations undertaken by each of the Plaintiffs, even if their de jure status as criminal investigators was belatedly recognized by the FAA, would be hard pressed to assert that management affirmatively intended not to compensate each Plaintiff in accordance with its obligations under statute and rule for the actual unscheduled overtime work necessary to facilitate the investigations; had they even thought about it. One of FAA's statutory "compensation" obligations as of March 31, 1996 was its obligation to pay availability pay to its criminal investigators under 5 U.S.C. Section 5545a.

Any personnel compensation due to FAA employees as of March 31, 1996 (such as availability pay), would by the express terms of the FAA PMS, continue to be due after March 31, 1996, unless specifically superseded by some other FAA PMS provision. Availability pay, as

provided for at 5 U.S.C. Section 5545a, as a form of payment for irregular unscheduled overtime, was not superseded by any other provision of the FAA PMS and hence constitutes one of the forms of "personnel compensation" or "benefits" which survived the development of the FAA PMS. Although the FAA had the privilege and discretion to submit a revision of the FAA PMS plan as of September 30, 1997, it is unclear whether any such plan was submitted, and if so whether availability pay as a component of "personnel compensation" or "benefits" in existence as of March 31, 1996 was expressly or impliedly eliminated, superseded, or was impliedly maintained in the FAA PMS by virtue of omission to qualify the definition of "personnel compensation" or "benefits" to exclude overtime for irregular unscheduled work (even if subsequently approved) in contrast to scheduled work. To date, it does not appear that the FAA PMS expressly or impliedly excises, overtime pay for unscheduled irregular work as mandated by LEAPA, for those FAA employees who are criminal investigators. Additionally, despite the 1997 revision date, Congress mandated that, as a matter of law, as a protection of previously acquired employee rights, until July 1, 1999, "operational differential pay" shall not be "involuntarily adversely affected" by reason of the enactment of the FAA PMS. 49 U.S.C Section 40122(e). The phrase "operational differential pay" is not a defined term in the FAA PMS. However, this phrase is set forth in contrast to "basic wages," and therefore contemplates pay in addition to or different from basic wages. Availability pay under 5545a is a form of additional or premium pay differentiated from base pay and is paid as a result of fulfilling the operational mission of the FAA by the working of unanticipated unscheduled overtime hours. The phrase "operational differential pay" therefore encompasses availability pay payable to criminal investigators.

According to Congress, whatever pay was due to the Plaintiffs as of March 31, 1996 would continue to be due at least until July 1, 1999, at which time, presumably, the FAA may eliminate such pay. It does not appear that availability pay as either a form of "personnel compensation" or part of a criminal investigators "benefits" in existence as of March 31, 1996 has ever been expressly or impliedly revised by the FAA out of existence, either before or after September 30, 1997, including July 1, 1999. Of course, it makes sense that FAA indirectly incorporated availability pay into its FAA PMS, along with other compensation and benefits, as of March 31, 1996, and did not explicitly excise it as of 1997 or 1999 because FAA, until 1999, for whatever reason, refused to acknowledge that it even employed criminal investigators who would be entitled to receive availability pay. Upon information and belief, the FAA, has since its awareness in late 1999 that it employed criminal investigators since the time LEAPA was effective in 1994, never revised the FAA PMS system to retroactively eliminate availability pay as a form of compensation in its FAA PMS. To the extent that the "personnel compensation" and "benefits" payable to all FAA employees as of March 31, 1996, which would by the plain and broad generic terms of those phrases be inclusive of both base and additional pay for overtime or otherwise, was not directly nor impliedly superseded by a revised FAA PMS compensation system developed after September 30, 1997, or by July 1, 1999, the entitlement of Plaintiffs to availability pay by virtue of 5545a survived the implementation of FAA PMS by its plain terms.

The universe of "personnel compensation" and "benefits" existing as of March 31, 1996, including availability pay as defined in 5545a, and carried forward by the FAA PMS is not undermined by the part of the FAA PMS, chapter 11, part 5 (a) captioned "Eligibility for

Overtime Pay" (See Plaintiffs' Appendix at p. 15). This section merely provides that "[o]vertime work will include officially ordered and approved hours of work in excess of an employee's scheduled tour of duty..." The inclusion of "ordered and approved" hours of work as overtime does not necessarily exclude overtime hours not approved in advance, or were otherwise approved even if unanticipated or unscheduled. The provision does not appear to regard "ordered and approved" overtime as exclusive of all other overtime, such as overtime not scheduled in advance but work. Nor does the provision exclude unscheduled overtime hours "ordered and approved" by oral utterance of a manager as opposed to a written order. Nor does it exclude standing orders or approval by management that the FAA criminal investigators need work as many hours as necessary to get the job done, even if in excess of the employee's core hours, and even if wholly unscheduled or unanticipated and not controllable administratively. Unless the Defendant can demonstrate that availability pay as a component of the broader category of "personnel compensation" or "benefits" in existence as of March 31, 1996, has somehow been specifically superseded, then to the extent that the "personnel compensation" and "benefits" in existence as of March 31, 1996 continues to abide in the FAA PMS, and not modified, the Plaintiffs' entitlement to availability pay continues to subsist from the effective date of LEAPA in October 1994, through the enactment of the FAA PMS, effective April 1, 1996, through purported revisions, if any, in or about September 30, 1997, through July 1, 1999 (the safe harbor protection of previously acquired rights) and thereafter (in the absence of superseding rules) to the lapse of entitlement pursuant to the conversion of each of the Plaintiffs to a non-criminal investigator position. Additionally, the "personnel compensation" and "benefits" to which each of the Plaintiffs were entitled to as of March 31, 1996 as well as the

obligation of the Agency to pay to the Plaintiffs "operational differential pay" would include the benefits of the Back Pay Act (5 U.S.C. Section 5595), as an incident to providing whole relief to the Plaintiffs if they prevail on their availability pay claim. See Crowley v. United States, 398 F.3d 1329, 1334 (Fed. Cir. 2005). The back pay provisions of the FAA PMS do not reach the Plaintiffs' claims here. See Plaintiffs' Appendix, Chapter ll, Section 9, p. 16.

In light of the foregoing, Defendant's argument expressed at pp. 16-19 of the Motion are without merit, since the FAA PMS incorporated, albeit indirectly, the LEAPA into its new system by virtue of its determination to keep in effect, even after the enactment of its system on April 1, 1996, all personnel compensation systems and employee benefits subsisting as of March 31, 1996.

## V. THE FEDERAL COURT OF CLAIMS IS NOT PRECLUDED FROM ASSERTING SUBJECT MATTER JURISDICTION OVER THE PLAINTIFFS' CLAIMS, NOR IS JURISDICTION PRECLUDED BY A PURPORTED FAILURE TO EXHAUST REMEDIES

The task of defining the jurisdiction of federal courts is entrusted to the Congress by the Constitution, Palmer v. United States, 411 U.S. 389, 400-01 (1973), and federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." McCarthy v. Madigan, 503 U.S. 140, 112 (1992). Therefore, courts must not decline the exercise of jurisdiction by way of preclusion or pursuant to the exhaustion of remedies doctrine unless it is consistent with congressional intent. Coit Indep. Joint Venture v. FSLIC, 489 U.S. 561, 579-580 (1989). It is true that the LEAPA by way of 5 U.S.C. Section 5545a(e)(1) and (2), (assuming arguendo that the review provisions of LEAPA have, in addition to the compensation

provisions, also been reincorporated into the FAA PMS, a fact not demonstrated here) may afford an appeal to the MSPB by an employee previously certified by the employing agency to be eligible to receive availability pay who, having been receiving availability pay, suffers a subsequent involuntary loss of such pay through a denial of certification. It is also appropriate to observe that 5 U.S.C. Section 5545a(e) does not confer Federal Court of Claims jurisdiction over employee claims under LEAPA. Nevertheless, under the ruling of Bradley, supra, another statute, the Tucker Act grants jurisdiction to this Court to consider claims against the government for monetary relief under the LEAPA. The issue is whether the MSPB has exclusive jurisdiction over the Plaintiffs' claims which accrued after first year eligibility. According to the Supreme Court, the question is not whether 5 U.S.C. Section 5545a(e) confers jurisdiction on this Court, but whether LEAPA or the statutory scheme in which it is embedded (which is not the CSRA but rather 49 U.S.C. Section 40122(g) and the FAA PMS) prohibits the jurisdiction given to this Court under the Tucker Act. See Whitman v. Department of Transportation, 126 S. Ct. 2014, (2006). According to the Court in Whitman, the question is properly phrased in terms of "prohibition" rather than "authorization." There appears to be no dispute that the employment rights of Plaintiffs are not governed by CSRA. Rather, those rights are governed by 40122(g) and the FAA PMS incorporates only certain provisions of the CSRA, but not all, pursuant to an act of Congress in 1996. See 49 U.S.C. Section 40122 (g)(2). Whatever the overall policy and intent of the various provisions which make up the CSRA statutory scheme are, such policies are peculiar to the goals of the CSRA, and have no obvious application to a different statutory scheme expressed by 49 U.S.C. Section 40122(g). Defendant's reliance upon United States v. Fausto, 484 U.S. 439, 445 (1988) is therefore misplaced. Fausto is expressly rooted in the

"comprehensive and integrated review scheme" of the CSRA which has not been swallowed whole by the FAA PMS, which purports to create a different review scheme for FAA personnel actions, and has cherry-picked certain CSRA provisions. The issue then is whether 49 U.S.C. Section 40122(g) or the FAA PMS system as a whole removes jurisdiction given to this Court under the Tucker Act, not whether the CSRA does so. See e.g. Verizon Md Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 642 (2002).

It is well settled that statutory interpretation begins with the language of the statute itself. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). Accordingly, it is appropriate to begin the inquiry with the text of 40122(g) itself. Section 40122(g)(3) directs that an FAA employee "may" submit an appeal to the MSPB. See also emphasis on "may" at 40122(h). The statute does not direct that the MSPB appeal route be the exclusive remedy under the statute or the FAA PMS system promulgated thereunder. "May" does not mean "must," and nothing in 40122(g) or the scheme of FAA PMS requires this reading. The non-exclusivity of the MSPB as a remedy under 40122(g) is further supported by 40122(i) which states in part as follows:

> Where a major adverse personnel action may be contested through more than one of the indicated forums...an employee must elect the forum through which the matter will be contested. Nothing in this section is intended to allow an employee to contest an action through more than one forum unless otherwise allowed by law. [Emphasis added].

It is otherwise allowed by law for an employee to contest a claim under LEAPA in the forum of the Federal Court of Claims. See Bradley, supra. Nor does LEAPA itself tie exclusivity to the MSPB. 5 U.S.C. Section 5545a(e)(2) merely recites that the involuntary reduction in pay

resulting from a denial of certification "shall be a reduction in pay for purposes of 7512(4) of this title." 7512(4) defines a reduction in pay as an action appealable to the MSPB. There is no evidence in the text of 5545a(e)(2) standing alone (ignoring the CSRA from which it has been excised by 40122(g)) that the MSPB is the exclusive remedy for loss of pay under the statute. If the logic of Fausto is followed regarding implicit preclusion of judicial review, 5 U.S.C. Section 5545a must now be read in conjunction with 40122(g) and the FAA PMS not CSRA to determine whether the LEAPA is so integrated into the FAA PMS system, and so central a part of the overhaul of the FAA personnel management system pursuant to 40122(g), that Congress intended the FAA PMS to provide MSPB as the exclusive remedy for LEAPA violations. LEAPA claims have survived into the FAA PMS system. However, this is an absurd consideration. Even Defendant concedes that 5545a was not required by 40122(g) to be incorporated into the new FAA PMS. Obviously, Congress, in enacting 40122(g) did not consciously intend to integrate LEAPA into the new FAA PMS system, and left such decisions to the discretion of the FAA Administrator. See Plaintiffs' Appendix, p. 2. Far from being a central component of a comprehensive and integrative statutory scheme, the compensation components of LEAPA were indirectly reincorporated into the FAA PMS by virtue of the broad "personnel compensation," "benefits" and "operational differential pay" language discussed above. Perhaps, the compensation components of LEAPA was reintroduced into the FAA PMS by FAA personnel who gave nary a thought to this form of overtime pay, especially since the FAA did not think that it employed criminal investigators at the time.

Nevertheless, the unambiguous language of 40122(g) and FAA PMS is that nothing in that statute or rules, unmistakably suggests that exclusivity of MSPB review of LEAPA claims is

overtly a central part of a comprehensive overhaul of the FAA personnel management system contemplated by that statute. See Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2003). Neither the plain text of 40122(g) nor any overt policy considerations suggest that it was the affirmative intent of Congress or the FAA Administrator to strip the Federal Court of Claims of its jurisdiction to hear Plaintiffs' claims.

Nor do the internal grievance procedures promulgated pursuant to the FAA PMS bar Plaintiffs' claims in this Court. According to FAA PMS, Chapter III, Section 4c (Plaintiffs' Appendix, p. 22), the FAA Grievance procedure does not apply to "certification" matters (4(c)(vi)) or to claims regarding "overtime entitlement" (4(c)(ix)), which are both involved in the instant claims.

Lastly, the Defendant's claim that if the Court determines that the MSPB does not have exclusive jurisdiction to entertain Plaintiffs' claims for availability pay accruing during the years subsequent to Plaintiffs' initial year of eligibility, then in the absence of Plaintiffs' exhaustion of the certification requirements for the instant claims, they are premature is in error.

As the Defendant itself observed in its Brief in support of the Motion (see p. 10), if this Court has jurisdiction over Plaintiffs' LEAPA claims under the Tucker Act, it also has jurisdiction to make the necessary legal and factual determinations to determine whether the Plaintiffs should be certified as eligible for availability pay for the year or years in question. See Crowley v. United States, 398 F.3d 1329, 1334 (2005). Assuming arguendo, this Court has jurisdiction to exercise judicial review of the Plaintiffs' availability claims, nothing in the Tucker Act or FAA PMS specifically mandate that the Plaintiffs first apply for and be denied certification of eligibility to receive availability pay as a prerequisite for judicial review by the

Federal Court of Claims. Darby v. Cisneros, 509 U.S. 137, 154 (1993). The Supreme Court frowns on judicially created exhaustion requirements. Id.

## CONCLUSION

For all of the foregoing reasons set forth in this opposition to the Motion, Plaintiffs respectfully request that Defendant's partial motion to dismiss be denied.

Respectfully submitted,
s/Lawrence Berger, Esq.
Mahon & Berger, Esqs.
21 Glen Street, Suite D
Glen Cove, New York 11542
Phone: 516-671-2688
Fax: 516-671-1148
Attorney for the Plaintiffs