**NO. 04-0093C**

**JUDGE HORN**

---

**In the United States Court of Federal Claims**

**JAMES R. VANDERPOOL, THOMAS L. CAVEN, MICHELLE L. ROOT, RICHARD L. ROBERTS, THOMAS J. FUNKE, WILLIAM E. FISHER, DONALD MCMULLEN, and ROBERT MACHO,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS SUBMITTED PURSUANT TO COURT ORDER FILED OCTOBER 30, 2006

---

**Respectfully submitted,**

**Mahon & Berger, Esqs.**
**Lawrence Berger, Esq.**
**21 Glen Street, Suite D**
**Glen Cove, New York 11542**
**Phone: 516-671-2688**
**Fax: 516-671-1148**
**Attorney for the Plaintiffs**

**Dated: November 20, 2006**

**Table of Contents**


**Page**

**Plaintiffs' Opposition to Defendant's Partial Motion to Dismiss........................1**

**Background.................................................................................................1**

**Issue 1. Whether this Court has jurisdiction to hear Plaintiffs' claims for retroactive Availability Pay which accrued during the initial year of eligibility of each Plaintiff for such premium pay................4**

**Issue 2(i) Whether this Court has jurisdiction to hear Plaintiffs' claims for retroactive Availability Pay which accrued during any year subsequent to the initial year that a Plaintiff was eligible for such premium pay..................................................10**

**Issue 2 (ii) Whether this Court is precluded from hearing Plaintiffs' claims for Availability Pay for the years subsequent to the initial year of eligibility on the basis that such claims are premature.....................................................16**

**Issue 3 Whether, pursuant to 49 U.S.C. Section 40122 (2000), this Court lacks jurisdiction to hear Plaintiffs' retroactive Availability Pay claims for any claim that accrued after March 31, 1996, the date of implementation of the Federal Aviation Administration Personnel Management System 49 U.S.C. Section 40122(g) (2000)..................................................17**

**Conclusion...................................................................................................24**

**Plaintiffs' Appendix Documents**

**FAA Personnel Management System (FAA PMS) dated March 28, 1996.........1**

**5 U.S.C. Section 5541...................................................................................31**

**5 U.S.C. Section 7101...................................................................................40**

**5 U.S.C. Section 8401...................................................................................41**

**28 U.S.C. Section 1491.................................................................................52**

**Table of Authorities**

**Cases** **Page**


1. **Allen v. Merit Systems Protection Board, 127 F.3d 1074 (Fed. Cir. 1997)........................................................................................23**

2. **Abbot Laboratories v. Gardner, 387 U.S. 136 (1967).........................................6**

3. **Bowen v. Michigan Acad. of Family Physicians, et al, 476 U.S. 667 (1986).....5**

4. **Bradley v. United States, 42 Fed. Cl. 333 (1998).........................................2, 4, 6,7**

5. **Caven v. Merit Systems Protection Board, 392 F.3d 1378 (Fed. Cir. 2004)........................................................................................5,6**

6. **Chaney v. Veterans Administration, 906 F.2d 697 (Fed. Cir. 1990).............13**

7. **Crowley v. United States, 398 F.3d 1329 (Fed. Cir. 2005)...........................6, 9, 22**

8. **Diefenderfer v. Merit Systems Protection Board, 194 F.3d 1275 (Fed. Cir. 1999)..............................................................23**

9. **Dunlop v. Bachowski, 421 U.S. 560 (1975)....................................................5**

10. **Duszak v. United States, 58 Fed. Cl. 518 (2003)............................................16**

11. **Hamzik v. United States, 64 Fed. Cl. 766 (2005)...........................................16**

12. **Hughes Aircraft v. Jacobson, 552 U.S. 432 (1999)........................................19**

13. **King v. Jarome, 42 F.3d 1371 (Fed. Cir. 1994).............................................12, 14**

14. **Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003)............................17**

15. **Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006)..........4,10,16,18**

**Table of Authorities**
**-continued-**

**Statutes and Regulations** **Page**

**1. 5 U.S.C. Section 2302**......................................................................................**23**

**2. 5 U.S.C. Section 5541**......................................................................................**2**

**3. 5 U.S.C. Section 5545a**...................................................................**1, 2, 3, 4, 5, 6,8 9, 10, 11, 12, 13, 14, 16,17,19,20,21**

**4. 5 U.S.C. Section 5595**......................................................................................**17,22**

**5. 5 U.S.C. Section 7101**......................................................................................**10**

**6. 5 U.S.C. Section 8401**......................................................................................**2**

**7. 28 U.S.C. Section 1491**....................................................................................**4**

**8. 49 U.S.C. Section 106 Note**............................................................................**23**

**9. 49 U.S.C. Section 40122**.............................................................**3, 4, 17, 18, 20,23**

**5 C.F.R. Section 550.183**.............................................................**7, 8, 9, 12**

**5 C.F.R. Section 550.184**.............................................................**6, 7, 11, 12, 13,14**

**5 C.F.R. Section 550.187**..........................................................................**1**

**In the United States Court of Federal Claims**

**James R. Vanderpool, Thomas L. Caven, Michelle L. Root, Richard L. Roberts, Thomas J. Funke, William E. Fisher, Donald McMullen, and Robert Macho,**

**Plaintiffs,**

**v.**

**The United States,**

**Defendant.**

**(Judge Horn)**

**No. 04-0093C**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS SUBMITTED PURSUANT TO COURT ORDER FILED OCTOBER 30, 2006**

**BACKGROUND**

The Plaintiffs, each of whom at all relevant times was an employee of the Federal Aviation Administration ("FAA"), a division of the Department of Transportation, claim retroactive entitlement to a form of premium pay known as Law Enforcement Availability Pay ("Availability Pay") pursuant to the Law Enforcement Availability Pay Act of 1994, codified at 5 U.S.C. Section 5545a (1994) (the "Act"). Plaintiffs Vanderpool, Roberts, Funke, and Fisher claim retroactive Availability Pay for the period covering October 30, 1994 (the effective date of the Act; see 5 C.F.R. Section 550.187(a)(2006), at Defendant's Appendix, p. 18) through March 26, 2001 (see Joint Stipulation of Fact ("JSOF"), paragraph 3, pp. 4-5). Plaintiff Caven claims

retroactive Availability Pay for the period covering October 30, 1994 through January 4, 2002. (see JSOF, paragraph 4, p. 5). Plaintiff Root claims retroactive Availability Pay for the period covering June 7, 1998 through March 26, 2001. (see JSOF, paragraph 5, p. 5). Plaintiff McMullen claims retroactive Availability Pay for the period covering September 14, 1997 through March 26, 2001. (see JSOF, paragraph 6, p.5). Plaintiff Macho claims retroactive Availability Pay for the period covering August 16, 1998 through February 10, 2001. (see JSOF, paragraph 7, p.5).

Availability Pay is a form of premium pay to compensate federal criminal investigators for unanticipated unscheduled overtime. See Bradley v. United States, 42 Fed. Cl. 333, 335 (1998). ("Availability pay was primarily intended to be in lieu of premium pay for unscheduled overtime hours."). According to the Act, each qualifying criminal investigator is entitled to receive, in addition to basic pay, on a per annum basis, an additional 25% of per annum basic pay as a premium "...to ensure the availability of criminal investigators for unscheduled duty in excess of a 40-hour work week...". 5 U.S.C. Section 5545a(b) at Defendant's Appendix, p. 2. See also Bradley v. United States, supra. at p. 335. Each claim by each Plaintiff for retroactive Availability Pay covers a time each Plaintiff performed the duties of a criminal investigator with FAA, as that position is defined by the Act. See 5 U.S.C. Section 5545a(a)(2) at Defendant's Appendix, p. 1 which defines "criminal investigator" to mean "a law enforcement officer as defined under [5 U.S.C.] section 5541(3)." 5 U.S.C. Section 5541(3) (1996) (Plaintiffs' Appendix, pp. 31-39) incorporates the law enforcement officer definition at 5 U.S.C. Section 8401(17) (1986), (Plaintiffs' Appendix, pp. 41-51) which sets forth the criteria for federal law enforcement officer retirement status. (See also JSOF, paragraph 9a, p. 6). It is undisputed that

for all times relevant to each of the Plaintiffs' claims, each Plaintiff enjoyed federal law enforcement officer retirement status, and consequently, are qualified criminal investigators as contemplated by the Act. (See JSOF, at paragraphs 14 and 15, p. 7). (It is noted that the Defendant does not appear to dispute the status of each Plaintiff as a qualifying criminal investigator in the sense of the Act).

**ISSUES**

The Defendant has made a partial motion to dismiss the Plaintiffs' complaint claiming entitlement to Availability Pay on the basis that this Court lacks subject matter jurisdiction to adjudicate certain of the claims alleged in the Plaintiffs' complaint. Specifically, the issues to be addressed in this brief are as follows:

1. Whether this Court has jurisdiction to hear Plaintiffs' claims for retroactive Availability Pay which accrued during the initial year of eligibility of each Plaintiff for such premium pay.

2. Whether this Court has jurisdiction to hear Plaintiffs' claims for retroactive Availability Pay which accrued during any year subsequent to the initial year that a Plaintiff was eligible for such premium pay, and in connection with years subsequent to the initial year of eligibility of each Plaintiff (i) whether this Court is preempted by statute, that is, 5 U.S.C. Section 5545a(e)(2) (Defendant's Appendix, p. 2) from hearing Plaintiffs' claims for retroactive Availability Pay; and (ii) assuming arguendo, that this Court is not preempted by statute from hearing Plaintiffs' claims, whether this Court is precluded from hearing Plaintiffs' claims for retroactive Availability Pay on the basis that such claims are "premature."

3. Whether, pursuant to 49 U.S.C. Section 40122 (2000) (Defendant's Appendix at

7), this Court lacks jurisdiction to hear Plaintiffs' retroactive Availability Pay claims for any claim that accrued after March 31, 1996, the date of the implementation of the Federal Aviation Administration Personnel Management System, 49 U.S.C. Section 40122(g) (2000).

(Defendant's Appendix, p. 8.)

## DISCUSSION

### ISSUE 1. WHETHER THIS COURT HAS JURISDICTION TO HEAR PLAINTIFFS' CLAIMS FOR RETROACTIVE AVAILABILITY PAY WHICH ACCRUED DURING THE INITIAL YEAR OF ELIGIBILITY OF EACH PLAINTIFF FOR SUCH PREMIUM PAY.

The Court of Federal Claims presumptively has jurisdiction over claims such as Plaintiffs', which seeks monetary relief brought under a money mandating statute, that is, 5 U.S.C. Section 5545a, for Availability Pay which accrued during initial year of eligibility of each Plaintiff. It appears to be indisputable that Plaintiffs' claims for retroactive Availability Pay during the initial year of eligibility for such pay (as well as for each year subsequent to initial year eligibility) are "claims against the government for monetary relief brought under a money mandating statute, i.e., [5 U.S.C. Section 5545a]". Bradley v. United States, 42 Fed. Cl. 333, 335-36 (1998). Bradley held that a monetary claim under the Act for retroactive Availability Pay which accrued for hours actually worked by the plaintiffs in that case (as is the case here) establishes Tucker Act jurisdiction (28 U.S.C. Section 1491(a)(1) (2001)). Id. at 336. (Plaintiffs' Appendix at 52.) The issue is whether some other statute or statutory scheme "removes" the presumptive jurisdiction given the Court of Federal Claims under the Tucker Act to entertain Plaintiffs' claims for retroactive Availability Pay during each Plaintiffs' initial year of eligibility. Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006). The United

States Supreme Court has frequently expressed a "strong presumption" in favor of the availability of judicial review of executive branch action. Bowen v. Michigan Acad. of Family Physicians, et. al., 476 U.S. 667, 681 (1986) (quoting Dunlop v. Bachowski, 421 U.S. 560, 567 (1975)). According to the Act, "each [qualifying] criminal investigator shall be paid availability pay." 5 U.S.C. Section 5545a(c). The payment obligation is mandatory, not discretionary and has not been paid by the FAA.

There does not appear to be any statute or statutory scheme which strips the Court of Federal Claims from its presumptive jurisdiction to hear Plaintiffs' retroactive Availability Pay claims which accrued during their respective initial year of eligibility. The initial year of eligibility for Plaintiffs Vanderpool, Roberts, Funke, Fisher, and Caven is from October 30, 1994 through October 30, 1995. (See JSOF, paragraphs 3 and 4, pp. 4-5). The initial year of eligibility for Plaintiff Root is from June 7, 1998 through June 7, 1999. (See JSOF, paragraph 5, p.5). Likewise, the initial year of eligibility for Plaintiff McMullen is September 14, 1997 through September 14, 1998, (See JSOF, paragraph 6, p.5) and for Plaintiff Macho is August 16, 1998 through August 16, 1999, (See JSOF, paragraph 6, p. 5).

A monetary claim for Availability Pay which accrued during initial year eligibility is not preempted by any of the administrative and judicial remedies prescribed in the Act itself. See Caven v. Merit Systems Protection Board, 392 F.3d 1378 (Fed. Cir. 2004). The Court in Caven ruled that the administrative and judicial review procedures prescribed by Section 5545a(e)(2) of the Act which grants the Merit Systems Protection Board ("MSPB") the authority to adjudicate adverse personnel actions which result in a "reduction in pay" (see 5 U.S.C. Section 5545a(e)(2)), with the right of appellate review, are not available to an employee who has never

received Availability Pay in the first place. Id. at 1380-81. The Court rationalized that an employee who has never received Availability Pay cannot suffer a "reduction in pay," which is the predicate for MSPB jurisdiction under the Act. Id. In the instant action, it is undisputed that none of the Plaintiffs ever received Availability Pay from FAA. Indeed, during the period of time covered by Plaintiffs' retroactive Availability Pay claims, FAA never set up an initial certification procedure as contemplated by Section 5545a (e)(1) and (2) and 5 C.F.R. Section 550.184(a) (2006) (Defendant's Appendix, p. 17). "[J]udicial review of final agency action...will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbot Laboratories v. Gardner, 387 U.S. 136, 140 (1967). In light of Caven, Congress has not avowed any purpose in any legislation to strip the Court of Federal Claims from its presumptive Tucker Act jurisdiction to hear the Plaintiffs' claims for accrued Availability Pay during initial year of eligibility

Pursuant to the "annual certification" rules promulgated at 5 C.F.R. Section 550.184 (2006), the FAA Administrator in his capacity as "head of an agency" (5 C.F.R. Section 550.184(f)), was granted authority to "prescribe additional regulations necessary to administer the certification requirement," Id., which, in fact, upon information and belief, have never been so prescribed. However, the complete absence of a viable initial and annual certification program is not fatal to Plaintiffs' claims. As noted above, the Tucker Act confers jurisdiction on this Court over the Plaintiffs' claims for Availability Pay. See Bradley v. United States, supra. In Crowley v. United States, 398 F.3d 1329, 1334 (Fed. Cir. 2005), the Court observed that if the Court of Federal Claims has jurisdiction over monetary claims via the Tucker Act, "it also has jurisdiction to make the legal and factual determinations necessary to resolving those claims."

Id. The initial year eligibility certification (as prescribed by 5 C.F.R. Section 184(a)) is wholly inapplicable to the Plaintiffs' claims in this Court, and this Court has the jurisdiction to adjudicate Plaintiffs' claims independent of the initial certification process. In order to resolve the Availability Pay claims, the Court must determine whether during any respective retroactive period covering each Plaintiffs' Availability Pay claim, "the annual average number of hours of unscheduled duty per regular workday [was] 2 hours or more..." 5 C.F.R. Section 183(a) (2006) (Defendant's Appendix, p. 16). Each of the Plaintiffs asserts that each has already performed the requisite number of unscheduled duty hours as prescribed at 5 C.F.R. Section 183(a). The instant claims seek to establish retroactively that the unscheduled duty hours have already been put in the books so to speak. In other words, the Plaintiffs' claims are "merely for unpaid salary for time actually worked," Bradley v. United States, supra, at p. 336, and therefore well within the province of this Court to adjudicate them. In contrast, the initial certification contemplated by Section 550.184(a) is prospective only and does not purport to reach or capture employee certification or ratification of past work. Section 550.184(a) captioned "Annual Certification" provides in relevant part as follows:

> Each newly hired criminal investigator who will receive availability pay and the appropriate supervisory officer...shall make an initial certification to the head of the agency attesting that the investigator is expected to meet the substantial hours requirement in Section 550.183 during the upcoming 1-year period. A similar certification shall be made for a criminal investigator who will begin receiving availability pay after a period of nonreceipt...[Emphasis Added].

The certification is merely an attestation by each qualified employee that he or she expects to meet the substantial hours requirement set forth in 550.183 in futuro, and on the strength of this

expression of expectancy, the employing agency will pay (assuming that the employee will meet the aggregate substantial requirement set forth at 5 C.F.R. Section 550.183 by the end of the year) the premium pay during the work year. In essence, the employee promises to perform the requisite work in the future and in exchange receives the premium pay at a rate figured as if the employee has fully performed, i.e. worked an annual average of two hours a day of unscheduled duty for the entire year. It would be frivolous and unnecessary to require each of the Plaintiffs, now, to submit initial certifications since none of the Plaintiffs, pursuant to 5 C.F.R. Section 550.183, could certify as to future performance, in fact, the unscheduled overtime work for which compensation is sought in this claim has already been performed by the Plaintiffs. It is not the certification which makes each Plaintiff eligible to receive Availability Pay, but rather, it is the status of "criminal investigator" as defined by 5 U.S.C. Section 5545a (a)(2) (Defendant's Appendix, p.1) which determines whether each Plaintiff is a qualified criminal investigator entitled to receive Availability Pay. See 5 U.S.C. Section 5545a (c)) (Defendant's Appendix, p. 2). The initial certification merely gives some assurance to the employing agency that it is the employee's intent to work the extra unscheduled duty hours. It must be recalled that the Act, like the internal revenue laws, generally depends upon voluntary compliance for its effective operation. "The investigator is generally responsible for recognizing, without supervision, circumstances which require the investigator to be on duty or be available for unscheduled duty based upon the needs of the agency." 5 U.S.C. Section 5545a (c). (Defendant's Appendix, p. 2) Where work performance has not yet commenced, such as the situation with a new hire or one who has not received Availability Pay in the past, a mere promise to perform in the future by an otherwise qualifying criminal investigator is enough to justify the payment of Availability Pay.

However, in a situation of full performance prior to the receipt of any compensation for such performance, it would be frivolous to the point of empty ritualism to condition the payment of Availability Pay upon an initial certification which applies only where performance has not yet commenced, and which has no application, by its plain terms, to work already performed. The statutory scheme of the Act works on a quid quo pro basis, that is, in return for a mere promise of future performance the employer will pay the employee as performance is rendered. Such pay will be paid to the employee as long as the employee continues to perform the requisite hours of unscheduled duty work. In contrast to the certification scheme of the Act, Plaintiffs each claim that he or she has already fully performed the contract, but has not been paid. None of the Plaintiffs are seeking certification, but rather are seeking retroactive payments based on alleged work already performed. There is no expectation on the part of the Agency of future performance by the Plaintiffs, thereby authorizing the incremental payments of Availability Pay commensurate with performance of duty by the employee. Initial certification is therefore superfluous, and this Court, as observed in Crowley, supra, at p. 1334, has the power to do the fact finding necessary to determine whether the Plaintiffs, each a qualifying criminal investigator, has actually met the "substantial hours" requirement as set forth in 5 C.F.R. Section 183. Since in the instant action the work has already been performed and each Plaintiff claims full performance under the Act, there is no purpose served by requiring initial certification nor is there any role for such certification when a retroactive claim for Availability Pay is involved and the requirement may be appropriately disregarded in the process of making the "legal and factual determinations necessary to resolving [the Plaintiffs' claims]," Crowley v. United States, supra, at p. 1334, for uncompensated unscheduled overtime under 5 U.S.C. Section 5545a.

**Issue 2 (i) WHETHER THIS COURT HAS JURISDICTION TO HEAR PLAINTIFFS' CLAIMS FOR RETROACTIVE AVAILABILITY PAY WHICH ACCRUED DURING ANY YEAR SUBSEQUENT TO THE INITIAL YEAR THAT A PLAINTIFF WAS ELIGIBLE FOR SUCH PREMIUM PAY.**

Plaintiffs' claims for Availability Pay for any year subsequent to an initial year of eligibility for Availability Pay do not constitute a claim for a "reduction in pay" as contemplated by 5 U.S.C. Section 5545a(e)(2) (Defendant's Appendix, p. 2) and therefore the MSPB has no jurisdiction to hear the Plaintiffs' claims.

The United States Supreme Court in Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006), observed:

> "In deciding the question of jurisdiction and preclusion, the Court would be required first to ascertain where [the claimant's] claims fit within the statutory scheme, as the [Civil Service Reform Act of 1978, 5 U.S.C. Section 7101, et seq.] provides different treatment for grievances depending on the nature of the claim.

Like the claims of each Plaintiff for Availability Pay during the initial year of eligibility, the claims for such pay which accrued during any year subsequent to the initial year that a Plaintiff was allegedly eligible for Availability Pay does not "fit" within the statutory scheme of the Act or the Civil Service Reform Act of 1978, 5 U.S.C. Section 7101, et. seq. ("CSRA") (Plaintiffs' Appendix, p. 40), (1978), as Defendant argues, and therefore this Court is not preempted from exercising jurisdiction over those claims via the Tucker Act. First, according to the plain text of 5 U.S.C. Section 5545a(e)(1) (Defendant's Appendix, p. 2), only those criminal investigators who are "receiving availability pay" under 5545a are entitled to make "an annual certification

...that the investigator has met, and is expected to meet," the substantial hours requirements of the Act prescribed at 5 U.S.C. Section 5545a(d) (Defendant's Appendix, p. 2) [Emphasis Added].

To belabor the obvious, Plaintiffs' claims seek retroactive relief; none of the Plaintiffs have ever received Availability Pay, nor have they ever made initial certifications for the reasons stated above, and in light of full performance, under Section 5545a, such initial certifications are now superfluous and irrelevant to the claims. Likewise, the annual certification requirement set forth at Section 5545a(e)(1), which applies to years subsequent to the initial year of eligibility, obligates each Plaintiff to certify that he or she has met, "and is expected to meet" in the future the substantial hours requirement of the Act. [Emphasis Added.] None of the Plaintiffs could ever so certify because none of the Plaintiffs will ever be able to promise compliance with the substantial hour requirement in the future. Plaintiffs' claims are rooted in the past, they have already performed the unscheduled overtime work, and , there is no expectation of future performance. The Plaintiffs' claims are appropriately characterized as claims for work already performed rather than as claims based on denial of certification of future work. It is obvious that the Act requires that the certifications be prospective, not retrospective, and if there is no prospect of future performance upon which an agency may extract a promise to perform in exchange for compensation contemporaneous with the real time performance of the unscheduled overtime work, there is no function for the certifications. Section 5545a(e)(1) confines its provisions to a criminal investigator actually "receiving availability pay," who certifies that the investigator "is expected to meet" in the future the substantial hours requirements in the Act. Likewise, and more important to the point, 5 C.F.R. Section 550.184 (2006) (Defendant's

Appendix, p. 17), the regulation which implements the annual certification requirement of the Act, dictates that the annual certification attested to after initial year eligibility (550.184(a)), must certify that the investigator "currently meets, and is expected to continue to meet during the upcoming 1-year period" the substantial hours requirement in Section 550.183. (Defendant's Appendix, p. 16.) Of course, none of the Plaintiffs could ever validly certify that he or she "currently meets" the substantial hours requirement because they are temporally far removed from time of actual performance, having completed performance years ago. The certification requirements are designed to apply to real time performance, contemporaneous with events, and there is no authority in either statute or rule which burdens the certification process with capturing performance which occurred well in the past.

The jurisdiction of the MSPB is expressed in the Act at 5 U.S.C. Section 5545a(e)(1) and (2) and its implementing regulation at 5 C.F.R. Section 550.184(e). The CSRA creates entitlements, and appeal rights to enforce those entitlements, but the rights conferred remain dependent upon the statute creating them. The Federal Circuit noted of MSPB jurisdiction in King v. Jerome, 42 F.3d 1371, 1374 (Fed. Cir. 1994):

> [T]he board has no plenary jurisdiction [citation omitted]. We construe its jurisdiction narrowly. It includes only those actions specifically granted by some law, rule, or regulation. [Citations omitted].

The Plaintiffs' retroactive claims as presented here are outside the scope of MSPB jurisdiction because the claims are outside the scope of the certification process prescribed by 5 C.F.R. Section 550.184(a), which is a predicate for MSPB jurisdiction. 5 U.S.C. Section 5545a (e)(2). According to the Act an "involuntary reduction in pay resulting from a denial of certification"

...shall be a reduction in pay for purposes of [MSPB jurisdiction]. 5 U.S.C. Section 5545a(e)(2). On a threshold basis, the MSPB can only assert jurisdiction over a pay reduction which is a direct result of a "denial of certification." However, if the certification process applies only to prospective but not retroactive performance and is therefore inapplicable to the Plaintiffs' instant claims, the predicate for MSPB jurisdiction can never be met here and this Court is not preempted by the Act or the CSRA to assert its jurisdiction via the Tucker Act. Further, the Federal Circuit Court in Chaney v. Veterans Administration, 906 F.2d 697, 698 (Fed. Cir. 1990), held that the jurisdiction of the MSPB is confined to "an ascertainable lowering, at the time of the personnel action, of an employee's present or future pay..." In contrast, the Plaintiffs' claims are for unpaid Availability Pay for time already worked, and not for the loss of current or future pay. The regulations implementing the Act further undermine any claim that the MSPB can assert jurisdiction over Plaintiffs' claims, and further support the view that the certification process applies only prospectively and not retroactively. In relevant part, 5 C.F.R. Section 550.184(d) provides as follows:

> If a certification is denied or canceled, the investigator's entitlement to availability pay shall be suspended for an appropriate period, consistent with agency policies. If the investigator's certification was valid when made, the suspension of availability pay shall be effected prospectively.

5 C.F.R. Section 550.184(d) provides that if an agency finds that an investigator failed to perform unscheduled duty as assigned or reported or is unable to perform such duty in the future the agency may cancel or deny a "certification." The penalty paid by the employee, upon the denial or cancellation of certification, is that his or her future entitlement to Availability Pay is

"suspended for an appropriate period." It is the suspension of the opportunity to earn Availability Pay in the future, based on a denial or cancellation of certification that constitutes a "reduction in pay" for the purpose of MSPB jurisdiction. See 5 U.S.C. Section 5545a(e)(2). The statutory definition of "reduction in pay" does not encompass a claim to entitlement to Availability Pay already earned for "unscheduled" duty hours already worked, which cannot be altered or affected by any "suspension." King v. Jerome, supra, at p. 698.

Based on the foregoing, the MSPB has no jurisdiction to hear Plaintiffs' claims. First, the MSPB does not have broad jurisdiction to adjudicate any and all claims regarding entitlement to Availability Pay. The jurisdiction of the MSPB is narrowly confined to an involuntary suspension of Availability Pay "resulting from a denial or cancellation of certification" under 5 C.F.R. Section 550.184(d). See 5 C.F.R. Section 550.184(e). Only if a certification as contemplated by 550.184(a) or (b) is denied or cancelled does the MSPB have jurisdiction. However, as discussed above, in light of the claims of the Plaintiffs for retroactive compensation and the fact that the certifications are confined to representations that unscheduled duty hours will be performed in the future or are "currently" being performed (as opposed to certifying past performance), the certifications are inapplicable and are unnecessary in the context of the instant claims here, and in the absence of a requirement to fruitlessly certify to a series of non-events (such as "currently meeting" the substantial hours requirement or expectation that such requirements shall be met in the future, both of which are impossible to certify), the MSPB has no basis to exercise jurisdiction. If the certifications are to be dispensed with, as the Plaintiffs argue here, then the MSPB has no jurisdiction to hear this matter and this Court is not precluded from exercising its jurisdiction via the Tucker Act.

Further, since the only remedy afforded the FAA by statute and rule, upon denial or cancellation of a certification is to suspend entitlement to future payments, for work not yet performed, and it is the act of suspension which triggers MSPB jurisdiction, via the “reduction in pay” language of Section 5545a(e)(2), it is impossible for the MSPB to exercise jurisdiction over Plaintiffs’ retroactive claims, since such claims cannot be suspended, only the entitlement to work in the future for Availability Pay can be suspended.

The Plaintiffs seek a far different remedy in this action, which cannot be effected by the MSPB. Plaintiffs do not seek entitlement to future Availability Payments suspended for lack of certification, or an entitlement to earn Availability Pay in the future, but merely seek full compensation for all unscheduled duty hours already worked retroactively. There has been no suspension of entitlement to Availability Pay, nor could such a personnel action ever be effected, nor could certifications as defined by statute or rule be validly given as discussed above. In light of the current posture of each of the Plaintiffs as full performers, no certification could be valid because events have passed both the FAA and Plaintiffs by. At the time that the Plaintiffs performed their unscheduled duty hours, the FAA had no certification system in place to capture those hours. This is so even though all of the Plaintiffs were actually functioning as criminal investigators toiling in the field overtime to make criminal cases. The failure of FAA (which reaped the rewards of criminal investigations and prosecutions) to implement a certification system to properly compensate the Plaintiffs for their arduous overtime hours worked should not redound to the detriment of the Plaintiffs who only worked the hours they reasonably believed were required of them by virtue of their criminal investigator duties and functions. In the absence of any obligation to certify pursuant to 5545a(e)(1), because the certifications do not

reach retroactive claims for Availability Pay, the MSPB has no jurisdiction to decide this case. Guided by the U.S. Supreme Court in Whitman v. Department of Transportation, supra, Plaintiffs' claims do not "fit" within the statutory scheme of 5545a and the regulations promulgated thereto, and therefore the presumptive jurisdiction of this Court via the Tucker Act has not been demonstrated to be overcome by an unequivocal expression to the contrary by Congress.

**Issue 2 (ii). PLAINTIFFS' CLAIMS FOR AVAILABILITY PAY FOR THE YEARS SUBSEQUENT TO THE INITIAL YEAR OF ELIGIBILITY ON THE BASIS THAT SUCH CLAIMS ARE PREMATURE**

The Plaintiffs' claims are not "premature" because for reasons stated under Issue 2(i) above. The certification process has no application to the claims for retroactive relief for accrued Availability Pay claims, and therefore the Plaintiffs' claims can never ripen sufficiently for adjudication through the certification process. The Plaintiffs are not obligated by any statute or rule to exhaust a remedy with the FAA prior to invoking Tucker Act jurisdiction to address the claims. The cases cited by Defendant, that is, Duszak v. United States, 58 Fed. Cl. 518 (2003), and Hamzik v. United States, 64 Fed. Cl. 766 (2005), are inapposite. In Duszak, there appeared to be no dispute that there was available to the plaintiff/claimant a viable and applicable mechanism to seek relief prior to filing her Federal Claims Court case. Likewise, in Hamzik, there was no dispute that a statute applicable to the plaintiff/claimant barred his claim. Both Duszak and Hamzik are distinguishable from the instant claims of the Plaintiffs because unlike the applicable statutory procedures involved in those cases, the certification process as prescribed by 5545a and the rules promulgated thereto, have no application to the claims raised here, since

the certification procedure does not reach the retroactive claims here. The certification process reaches prospective entitlement to Availability Pay which has yet to be earned, and where, as in the instant case, the pay has already been earned and the work performed, the certification process has no relevance, is an empty ritual, and Plaintiffs' claims are not premature because the certification process can never ripen the claims for adjudication by this Court

**Issue 3. WHETHER, PURSUANT TO 49 U.S.C. SECTION 40122 (2000), THIS COURT LACKS JURISDICTION TO HEAR PLAINTIFFS' RETROACTIVE AVAILABILITY PAY CLAIMS FOR ANY CLAIM THAT ACCRUED AFTER MARCH 31, 1996, THE DATE OF IMPLEMENTATION OF THE FEDERAL AVIATION ADMINISTRATION PERSONNEL MANAGEMENT SYSTEM. 49 U.S.C. SECTION 40122(g)(2000)**

The Defendant argues that by virtue of Congressional enactment codified at 49 U.S.C. Section 40122(g) (2000) (Defendant's Appendix at 7) neither the Act (5 U.S.C. Section 5545a) nor the Back Pay Act (5 U.S.C. Section 5595) (Defendant's Appendix at 5) have applied to FAA employees such as Plaintiffs, since April 1, 1996, and hence, any claim for Availability Pay which accrued after that date are precluded, as a matter of law. However, this claim by Defendant is inapposite. The FAA personnel management system developed by the FAA pursuant to 49 U.S.C. Section 40122(g)(1), reincorporated, albeit indirectly, as binding on the FAA, the mandatory Availability Pay provisions of the Act, or at a minimum those provisions of the Act which deal with the mandatory payment of overtime for unscheduled irregular work. The Tucker Act waives sovereign immunity for "actions brought pursuant to money mandating constitutional provisions, statutes, regulations, and executive orders." Martinez v. United States, 333 F.3d 1295. It is therefore necessary to look to the FAA personnel management system developed pursuant to 40122(g) to determine whether that system, as developed, prohibits

Tucker Act jurisdiction. Whitman v. Department of Transportation, supra.

Congress has directed the FAA to develop its own personnel management system, (FAA PMS) (Plaintiffs' Appendix, pp. 1-30), 49 U.S.C. 40122(g)(1), and has provided that "[t]he provisions of Title 5," which is where the Act is codified, "shall not apply to the new personnel management system," with certain exceptions. Id. Section 40122(g)(2). In promulgating the FAA PMS, the Administrator noted his decision to adopt the substance of any provision of Title 5 that he deems appropriate. See Plaintiffs' Appendix, II p. 2.

Pursuant to this legislation, the FAA developed the FAA PMS system. The system incorporates certain provisions of the CSRA required under the enabling legislation, as well as additional CSRA provisions the FAA administrator deemed appropriate for the FAA. Id. at II, p. 2. Additionally, Congress further constrained the FAA by enacting the following "Employee protections" provision:

> (e) Employee protections. - Until July 1, 1999, basic wages... and operational differential pay provided employees of the Administration shall not be involuntarily adversely affected by reason of enactment of this section..." 49 U.S.C. Section 40122(e) [Emphasis added].

Further, according to the "Compensation" provisions of the FAA PMS (See Plaintiffs' Appendix, Chapter ll, p. 13):

> (b) Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996. Plaintiffs' Appendix, Chapter ll, 1(b), p. 13. [Emphasis added].

According to the FAA PMS, it was contemplated that on or about September 30, 1997, a revised FAA PMS "compensation" plan be devised and implemented (See Plaintiffs' Appendix, Chapter ll, 1(d)), at p. 13). The FAA PMS does not contain a definition of the phrases "personnel compensation" or "benefits," but a plain language approach would certainly encompass Availability Pay as defined at 5 U.S.C. Section 5545a, which was in existence as of March 31, 1996, as a form of "personnel compensation" or one of the "benefits" due to FAA criminal investigators, for irregular unanticipated overtime. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) ("...our analysis begins with the language of the statute.") The plain meaning of "compensation" is "money paid for ...work." Encarta World Dictionary, St. Martins Press, 1999, p. 370. "Benefits" includes "money paid ... to an entitled person by an employer." Id. At p. 161. Neither definition distinguishes between money paid by an employer for basic wages as opposed to payment for either scheduled or unscheduled overtime work. FAA management, having enjoyed the benefit of the fruits of the criminal investigations undertaken by each of the Plaintiffs, even if their de jure status as criminal investigators was belatedly recognized by the FAA, would be hard pressed to assert that management affirmatively intended not to compensate each Plaintiff in accordance with its obligations under statute and rule for the actual unscheduled overtime work necessary to facilitate the investigations; had they even thought about it. One of FAA's statutory "compensation" obligations as of March 31, 1996 was its obligation to pay Availability Pay to its criminal investigators under 5 U.S.C. Section 5545a.

Any personnel compensation due to FAA employees as of March 31, 1996 (such as Availability Pay), would by the express terms of the FAA PMS, continue to be due after March 31, 1996, unless specifically superseded by some other FAA PMS provision. Availability Pay, as

provided for at 5 U.S.C. Section 5545a, as a form of payment for irregular unscheduled overtime, was not superseded by any other provision of the FAA PMS and hence constitutes one of the forms of "personnel compensation" or "benefits" which survived the development of the FAA PMS. Although the FAA had the privilege and discretion to submit a revision of the FAA PMS plan as of September 30, 1997, it is unclear whether any such plan was submitted, and if so whether Availability Pay as a component of "personnel compensation" or "benefits" in existence as of March 31, 1996 was expressly or impliedly eliminated, superseded, or was impliedly maintained in the FAA PMS by virtue of omission to qualify the definition of "personnel compensation" or "benefits" to exclude overtime for irregular unscheduled work (even if subsequently approved) in contrast to scheduled work. Additionally, despite the 1997 revision date, Congress mandated that, as a matter of law, as a protection of previously acquired employee rights, until July 1, 1999, "operational differential pay" shall not be "involuntarily adversely affected" by reason of the enactment of the FAA PMS. 49 U.S.C Section 40122(e). The phrase "operational differential pay" is not a defined term in the FAA PMS. However, this phrase is set forth in contrast to "basic wages," and therefore contemplates pay in addition to or different from basic wages. Availability pay under 5545a is a form of additional or premium pay differentiated from base pay and is paid as a result of fulfilling the operational mission of the FAA by the working of unanticipated unscheduled overtime hours. The phrase "operational differential pay" therefore encompasses Availability Pay payable to criminal investigators.

According to Congress, whatever pay was due to the Plaintiffs as of March 31, 1996 would continue to be due at least until July 1, 1999, at which time, presumably, the FAA may eliminate such pay. It does not appear that Availability Pay as either a form of "personnel

compensation" or part of a criminal investigators "benefits" in existence as of March 31, 1996 has ever been expressly or impliedly revised by the FAA out of existence, either before or after September 30, 1997, including July 1, 1999. Of course, it makes sense that FAA indirectly incorporated availability pay into its FAA PMS, along with other compensation and benefits, as of March 31, 1996, and did not explicitly excise it as of 1997 or 1999 because FAA, until 1999, for whatever reason, refused to acknowledge that it even employed criminal investigators who would be entitled to receive availability pay. Upon information and belief, the FAA, has since its awareness in late 1999 that it employed criminal investigators since the time the Act was effective in 1994, never revised the FAA PMS system to retroactively eliminate Availability Pay as a form of compensation in its FAA PMS. To the extent that the "personnel compensation" and "benefits" payable to all FAA employees as of March 31, 1996, which would by the plain and broad generic terms of those phrases be inclusive of both base and additional pay for overtime or otherwise, was not directly nor impliedly superseded by a revised FAA PMS compensation system developed after September 30, 1997, or by July 1, 1999, the entitlement of Plaintiffs to Availability Pay by virtue of 5545a survived the implementation of FAA PMS by its plain terms, and is an enforceable claim via the Tucker Act.

The universe of "personnel compensation" and "benefits" existing as of March 31, 1996, including Availability Pay as defined in 5545a, and carried forward by the FAA PMS is not undermined by the part of the FAA PMS, chapter 11, part 5 (a) captioned "Eligibility for Overtime Pay" (See Plaintiffs' Appendix at p. 15). This section merely provides that "[o]vertime work will include officially ordered and approved hours of work in excess of an employee's scheduled tour of duty..." The <u>inclusion</u> of "ordered and approved" hours of work as overtime

does not necessarily exclude overtime hours not approved in advance, or were otherwise approved even if unanticipated or unscheduled. The provision does not appear to regard "ordered and approved" overtime as exclusive of all other overtime, such as overtime not scheduled in advance but work. Nor does the provision exclude unscheduled overtime hours "ordered and approved" by oral utterance of a manager as opposed to a written order. Nor does it exclude standing orders or approval by management that the FAA criminal investigators need work as many hours as necessary to get the job done, even if in excess of the employee's core hours, and even if wholly unscheduled or unanticipated and not controllable administratively. Unless the Defendant can demonstrate that Availability Pay as a component of the broader category of "personnel compensation" or "benefits" in existence as of March 31, 1996, has somehow been specifically superseded, then to the extent that the "personnel compensation" and "benefits" in existence as of March 31, 1996 continues to abide in the FAA PMS, and not modified, the Plaintiffs' entitlement to availability pay continues to subsist from the effective date of the Act in October 1994, through the enactment of the FAA PMS, effective April 1, 1996, through purported revisions, if any, in or about September 30, 1997, through July 1, 1999 (the safe harbor protection of previously acquired rights) and thereafter (in the absence of superseding rules) to the lapse of entitlement pursuant to the conversion of each of the Plaintiffs to a non-criminal investigator position. Additionally, the "personnel compensation" and "benefits" to which each of the Plaintiffs were entitled to as of March 31, 1996 as well as the obligation of the Agency to pay to the Plaintiffs "operational differential pay" would include the benefits of the Back Pay Act (5 U.S.C. Section 5595), as an incident to providing whole relief to the Plaintiffs if they prevail on their availability pay claim. See Crowley v. United States, 398 F.3d 1329, 1334

(Fed. Cir. 2005). The back pay provisions of the FAA PMS do not reach the Plaintiffs' claims here. See Plaintiffs' Appendix, Chapter ll, Section 9, p. 16.

Nor do the internal grievance procedures promulgated pursuant to the FAA PMS bar Plaintiffs' claims in this Court. According to FAA PMS, Chapter III, Section 4c (Plaintiffs' Appendix, p. 22), the FAA Grievance procedure does not apply to "certification" matters (4(c)(vi)) or to claims regarding "overtime entitlement" (4(c)(ix)), which are both involved I nthe instant claims. Allen v. Merit Systems Protection Board, 127 F.3d 1074 (Fed. Cir. 1997) and Diefenderfer v. Merit Systems Protection Board, 194 F.3d 1275 (Fed. Cir. 1999), cited by Defendant do not conflict with Plaintiffs' claims that entitlement to Availability Pay after March 31, 1996, have been incorporated into the FAA PMS. Allen addressed the narrow issue of whether an FAA employee could appeal an adverse employment action to the MSPB under Section 347 of the Transportation and Related Agencies Appropriations Act, Pub. L. No. 104-50 109 Stat. 436, 460 (1995) (49 U.S.C. Section 106 Note) (Defendant's Appendix p. 10-11). This statute, at the time of the Allen decision, did not authorize appeals to the MSPB nor did the FAA PMS promulgated pursuant to that statute (Plaintiffs' Appendix pp. 1-30) authorize appeals to the MSPB. (The statute was amended by 49 U.S.C. Section 40122(g)(3), Defendant's Appendix p. 8 in 2000 to allow MSPB appeals). Likewise, the employee in Diefenderfer, fared no better under the statute prior to its amendment in his claim that the Office of Special Counsel ("OSC") had jurisdiction to consider his prohibited personnel practice claim under 5 U.S.C. Section 2302(b). The Court ruled that the portions of Title 5, which applied to OSC had been excised by the statute and did not apply to FAA. The FAA PMS had not preserved the right to appeal to OSC in its FAA PMS. Unlike the plaintiffs in Allen and Diefenderfer, the Plaintiffs in the

instant case, continued to enjoy entitlement to Availability Pay by virtue of its incorporation into the FAA PMS system as discussed above.

In light of the foregoing, Defendant's assertion that Availability Pay claims which accrued after March 31, 1996 are not subject to Tucker Act jurisdiction is without merit.

**CONCLUSION**

For all of the foregoing reasons set forth in this opposition to the Motion, Plaintiffs respectfully request that Defendant's partial motion to dismiss be denied.

Respectfully submitted,
s/Lawrence Berger, Esq.
Mahon & Berger, Esqs.
21 Glen Street, Suite D
Glen Cove, New York 11542
Phone: 516-671-2688
Fax: 516-671-1148
Attorney for the Plaintiffs