the result of a lapse of appropriations or action by Congress); and reduction in force actions. The FAA Appeals Procedure is the only method by which employees not covered by a collective bargaining agreement may seek administrative review of claims arising out of a covered action, except for claims which may be reviewed under a statutorily mandated administrative appeal process.

- (b) Employees and supervisors involved in appeals shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.
- (c) For purposes of this section:
    - (i) "Day" means calendar day.
    - (ii) "Partisan" means an employee of the FAA who is knowledgeable of the working conditions, environment, and practices where the appeal was filed. A person cannot be designated as a partisan if they were directly involved with the case. A designated partisan cannot have served as an advocate for the FAA or employee in any phase of the disciplinary or removal action being appealed. The partisan for management cannot be the proposing official or the deciding official.
    - (iii) "Employee" means a permanent employee of the FAA who is not serving a probationary or trial period.
- (d) Employees wishing to appeal a covered action must submit the appeal to the next level above the deciding official within ten days of the date the decision is given to them. The appeal must be in writing and contain all of the supporting documentation and a statement of the specific relief requested.
- (e) A panel will be designated within ten days of receipt of the appeal by the management official. The panel shall be comprised of three persons: one partisan selected by the deciding official from within the FAA where the appeal was generated, one partisan selected by the appellant from within the FAA, and one arbitrator. Partisans shall be selected from an area as close as possible to the location of the hearing while meeting all the criteria for partisans outlined above. Partisans shall be on official time while performing their responsibilities as members of the panel. The arbitrator shall set aside a period of time to instruct the partisans in due process, how to weigh evidence and testimony, and how to judge the merits of the case.
- (f) A pool of three to five arbitrators will be selected and maintained by each servicing Human Resource Management Division for use in the appeals process. Selection of the arbitrator from the pool will be by mutual agreement of the appellant and the deciding official, or by alternative striking of names by the appellant and the deciding official until one selection remains. The servicing Human Resource Management Division will provide logistical support for program implementation and maintenance.
- (g) The hearing shall take place as soon as is practicable. There will be no discovery for either side but the parties shall exchange documents and witness lists ten days before the hearing. Hearings will be scheduled during normal administrative duty hours. If they choose a representative, the appellant and the deciding official shall designate their representatives and inform the other party in writing prior to the hearing date. If the appellant requests an FAA employee as a representative, that request can be denied if either operational considerations or the nature of the requested representative's official duties present a conflict. A decision to deny a request for representation by an appellant shall be made by the head of the requested representative's line of business or staff organization.
- (h) The panel will convene within the commuting area of the appellant whenever possible. If the hearing cannot be held in the commuting area, FAA shall pay the appellant's travel to the hearing, regardless of whether the appellant is in a paid duty status. The FAA will accommodate employees with schedule changes as necessary if the employee is otherwise in an active duty status, to attend and participate in the hearing as a witness, appellant, or representative. All time

frames may be extended by the panel with mutual written agreement of the deciding official and the appellant.

- (i) There shall be a verbatim transcript prepared of the hearing. Copies of transcripts must be ordered by the parties from the official court reporter. All appeal records and documents from the hearing will be maintained in accordance with applicable agency rules and laws.
- (j) Each party is responsible for securing their own witnesses. Each party will be responsible for paying the travel costs for their witnesses and representatives, except for employees of the FAA who are summoned to testify by the panel as witnesses. Such employees shall be on official time, including travel and per diem.
- (k) The panel will render a written decision within ten days of hearing the case. Decisions made by the panel will be final and binding, but not precedential. The panel shall have no authority to mitigate the penalty on performance cases but shall have the authority to mitigate the penalty on cases involving conduct. The panel shall be limited to ruling on the merits of the case and the application of agency rules and laws. The panel shall not reverse or mitigate an action based on a finding of violation of agency rules, unless the record demonstrates more likely than not, that absent the violation, the deciding official would have reached a different decision. The ruling will be made by majority vote of the panel.
- (l) The decision of the panel may include an award of back pay; however, no attorney or representation fees for the appellant will be ordered by the panel or paid by the FAA.
- (m) Decisions of the panel shall be issued as final orders of the Administrator under 49 U.S.C. Section 46110. An appellant may seek judicial review of the panel's order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit, or in the court of appeals of the United States for the circuit in which the appellant resides, no later than 60 days after the panel's decision is issued.
- (n) Claims of statutorily prohibited discrimination may not be raised in the FAA Appeals Procedure. The FAA Appeals Procedure shall be designated as an alternative disputes resolution process for purposes of 29 CFR Part 1614. Accordingly, if an employee wishes to raise a claim of statutorily prohibited discrimination, with respect to a matter that is subject to appeal under the FAA Appeals Procedure, the employee must:
    - (i) contact an Equal Employment Opportunity counselor no later than 45 days after the effective date of the action being appealed;
    - (ii) file an appeal under the FAA Appeals Procedure in accordance with the time limits stated above;
    - (iii) complete the FAA Appeals Procedure and receive a final decision; and
    - (iv) file a formal complaint of discrimination within ten days of receipt of the final FAA Appeals Procedure decision, or within 90 days of the first contact with the Equal Employment Opportunity counselor.

## 6. FAA NATIONAL EMPLOYEE'S FORUM

- (a) The FAA shall establish an Employee's Forum so that employees will have the opportunity to express their opinion on matters affecting their membership, regardless of job, grade series, or pay band. The Employee's Forum will serve as a vehicle to gather general input on specific issues as requested by senior management and as originated by individual employees or employee groups. Special Emphasis Groups and Employee Associations whose constituency primarily focuses on civil rights matters will have an opportunity to provide input on matters related to FAA's Equal Employment Opportunity, Affirmative Action, and diversity initiatives as mandated by law.
- (b) The Employee's Forum will have as its core members the Administrator (ex

officio), the Deputy Administrator (ex officio), the Assistant Administrator for Civil Rights, the Director of Human Resource Management, the National Special Emphasis Program Managers, and the National Presidents of the Employee Associations. Other employees may be invited to attend as deemed appropriate by the Administrator.

- (c) The FAA will provide training to members of the Forum that is designed to ensure the success of the Forum. Such training may include team building, dispute resolution, partnering for success, Equal Employment Opportunity, Affirmative Action, and other types of training.

---

## CHAPTER IV: TRAINING

1. Authorization to Expend Funds
2. Training Agreements
3. Continued Service Agreements
4. Fee for Service Plan

### 1. AUTHORIZATION TO EXPEND FUNDS

- (a) All the heads of the lines of business and staff organizations, in accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, are authorized to expend funds to provide or reimburse their employees for technical, management, or career development training. This includes: reimbursement of tuition expenses in pursuit of a formal degree or certificate program at an accredited institution of higher learning, training for the purposes of qualifying for another career field when approved under a job loss retraining program, and membership fees in professional societies. To the extent authorized by regulation of the President, contributions and awards incident to training in non-Government facilities and payment of travel, subsistence, and other expenses incident to attendance at meetings, may be made to and accepted by an FAA employee without regard to 18 U.S.C. Section 209, if the contributions, awards, and payments are made by an organization determined by the Secretary of the Treasury to be an organization described by 26 U.S.C. Section 501(c)(3), as exempt from taxation under 26 U.S.C. Section 501(a). When a contribution, award, or payment, in case or in kind, is made to an FAA employee for travel, subsistence, or other expenses, an appropriate reduction shall be made from payment by FAA to the employee for travel, subsistence or other expenses incident to training in a non-Government facility or to attendance at a meeting.

### 2. TRAINING AGREEMENTS

- (a) The head of a line of business or staff organization, or the Associate Administrator for Administrator on behalf of the Administrator, is authorized to enter into agreements with other agencies in any branch of the Government, on a reimbursable basis, for:
  - (i) use of Government facilities under the jurisdiction or control of the other agencies in any branch of Government;
  - (ii) extension to FAA employees of training programs of other agencies; and
  - (iii) use of FAA facilities and training programs by other Government agencies.
- (b) In accordance with such written guidance as the Associate Administrator for

Administration may deem appropriate, the heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, are authorized to make agreements or other arrangements for the training of FAA employees by, in, or through non-Government facilities. Agreements or arrangements may not be made for payment for training of an FAA employee:

- (i) by, in, or through a non-Government facility which teaches or advocates the overthrow of the Government of the United States by force or violence;
- (ii) by or through individuals concerning whom determination has been made by a proper Government administrative or investigatory authority that, on the basis of information or evidence developed in investigations and procedures authorized by law or Executive Order, there exists a reasonable doubt of their loyalty to the United States; or
- (iii) by, in, or through a non-Government facility a substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; or participating or intervening, including publishing or distributing statements, in a political campaign on behalf of a candidate for public office.

- (c) In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, heads of FAA training facilities and training programs are authorized to make agreements or other arrangements for the training of non-Government employees or use of FAA training facilities by non-Government organizations on a reimbursable basis when this serves as the mission of the agency and is otherwise consistent with applicable law.

## 3. CONTINUED SERVICE AGREEMENTS

- (a) The heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, may require continuous service agreements as a condition of attending training of substantial duration or cost. Employees shall agree in writing before commencing such training that they will:
    - (i) continue in the service of FAA following completion of the training for a specified period of time, not to exceed one year, for each instance of training or pay the Government the amount of the additional expense incurred by the FAA in connection with their training if they are voluntarily separated from service with FAA before the end of the period for which the employee has agreed to continue in FAA service.
- (b) The payment agreed to under Paragraph 3(a)(i) is recoverable by the FAA from employees or their estates by:
    - (i) set off against accrued pay, compensation, amount of retirement credit, or other amounts due the employee from the Government; and
    - (ii) such other methods as provided by law for the recovery of amounts owing to the Government.
- (c) The Administrator may, in an exercise of discretion, waive in whole or in part, a right of recovery under this paragraph if the Administrator decides that the recovery would be against equity and good conscience or against the public interest. A decision to deny waiver, either in whole or in part, shall not be reviewable in any forum.

## 4. FEE FOR SERVICE PLAN

- (a) No later than October 1, 1996, the Associate Administrator for Administration shall submit a Fee for Service Plan to the Administrator. This plan shall contain

recommendations on the methods by which the FAA can establish a program to provide services to private or governmental entities in exchange for a fee that will be retained by the FAA. The Administrator reserves the right to implement, either in whole or in part, any recommendation made by the Associate Administrator for Administration, provided that the recommendation is otherwise consistent with applicable law.

---

## CHAPTER V: LABOR RELATIONS

1. Employees Rights
2. Management Rights
3. FAA National Labor-Management Partnership Council

### 1. EMPLOYEES RIGHTS

- (a) The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71. Each FAA employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal; and each employee shall be protected in the exercise of such rights.

### 2. MANAGEMENT RIGHTS

- (a) Consistent with 5 U.S.C. Section 7106 and Executive Order 12871, the FAA reserves the authority of its management officials.

### 3. FAA NATIONAL LABOR-MANAGEMENT PARTNERSHIP COUNCIL

- (a) The FAA and its unions have established a National Labor-Management Partnership Council (NLMPC). This council will integrate and coordinate activities of the various labor management partnerships within the agency and will interact with the Department of Transportation's Labor Management Partnership Council.
- (b) The NLMPC shall be strategically focused and shall provide direction for agency partnerships. It will also assure that adequate resources and training are provided to the partnerships, establish policy and guidelines for measuring and evaluating the effectiveness of partnerships, and measure and evaluate responsiveness to the public.
- (c) The NLMPC will be comprised of thirteen members: four Associate Administrators or designees from lines of business with bargaining units, seven union representatives (one from each union within FAA), one representative from the Office of Civil Rights, and one Executive Advisor (Program Director of Labor and Employee Relations). All members of the NLMPC shall be current employees of the FAA.
- (d) The NLMPC will operate under the following guidelines:
  - (i) conduct the initial NLMPC organizational meeting prior to June 30, 1996 with subsequent quarterly meetings;
  - (ii) will approve and issue a Partnership Model;
  - (iii) respect institutional values of the agency, as well as each line of

business or staff organization, unions, and recognized organizations;
- (iv) assess issues to be addressed in terms of probability of success and strategic goals of the agency;
- (v) balance the interest of the public and FAA employees;
- (vi) utilize a binding consensus decision making process, (the decisions of the NLMPC are not subject to third party review); and
- (vii) publish agendas and minutes of NLMPC meetings.

---

## CHAPTER VI: EXECUTIVE SYSTEMS

1. Reassignments
2. Executive System Performance Incentive Plan
3. Adverse and Disciplinary Actions

### 1. REASSIGNMENTS

- (a) Employees in the FAA Executive System may not be involuntarily reassigned within 120 days after the appointment of the Administrator, or within 120 days after the appointment of the employee's most immediate supervisor who is a political appointee and has the authority to make an initial appraisal of the employee's performance.

### 2. EXECUTIVE SYSTEM PERFORMANCE INCENTIVE PLAN

- (a) Effective April 1, 1996, the Administrator or the head of a line of business or staff organization may pay a performance incentive to an employee in the Executive System in accordance with the criteria that were in effect for Senior Executive Service employees on March 31, 1996; no approval other than that of the Administrator's shall be necessary or required for the payment of such an incentive. The total amount available to a line of business or staff organization to pay incentives to employees in the Executive System after April 1, 1996, shall be determined solely by the Administrator.
- (b) No later than April 1, 1997, the Associate Administrator for Administration shall present a draft Executive System Performance Incentive Plan to the heads of the lines of business and staff organizations for review and comment. This plan shall design a long-term incentive plan for the Executive System that will include procedures for establishing and reporting long-term objectives.
- (c) After reviewing the comments by the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Executive Systems Incentive Plan to the Administrator no later than June 1, 1997. The Administrator reserves the right to implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final plan.

### 3. ADVERSE AND DISCIPLINARY ACTIONS

- (a) Except as provided below, effective April 1, 1996, employees in the FAA Executive System may be disciplined, downgraded, suspended, and/or removed in accordance with the procedures and standards contained in Chapter III that are applicable to all other agency employees.

- (b) The FAA Administrator or the heads of the lines of business or staff organizations, for employees in their organizations, shall be the final authority on whether any FAA Executive System employee should be disciplined, downgraded, suspended, and/or removed.
- (c) An Executive System employee wishing to appeal an adverse or disciplinary action must use the agency wide appeal procedure unless and until the Administrator approves another procedure.

QUICK PRINT PRINT EMAIL OTHER

C

Previous Section **5 U.S.C.A. § 5541** Next Section

§ 5541. Definitions
Effective: September 23, 1996Prior
Approx. 6 pages

31

5 U.S.C.A. § 5541

United States Code Annotated Currentness
Title 5. Government Organization and Employees (Refs & Annos)
Part III. Employees (Refs & Annos)
Subpart D. Pay and Allowances
Chapter 55. Pay Administration (Refs & Annos)
Subchapter V. Premium Pay (Refs & Annos)

**§ 5541. Definitions**

For the purpose of this subchapter--

**(1)** "agency" means--
**(A)** an Executive agency;
**(B)** a military department;
**(C)** an agency in the judicial branch;
**(D)** the Library of Congress;
**(E)** the Botanic Garden;
**(F)** the Office of the Architect of the Capitol; and
**(G)** the government of the District of Columbia;
**(2)** "employee" means--
**(A)** an employee in or under an Executive agency;
**(B)** an individual employed by the government of the District of Columbia; and
**(C)** an employee in or under the judicial branch, the Library of Congress, the Botanic Garden, and the Office of the Architect of the Capitol, who occupies a position subject to chapter 51 and subchapter III of chapter 53 of this title;

but does not include--
**(i)** a justice or judge of the United States;
**(ii)** the head of an agency other than the government of the District of Columbia;
**(iii)** a teacher, school official, or employee of the Board of Education of the District of Columbia, whose pay is fixed under chapter 15 of title 31, District of Columbia Code;
**(iv)** a member of--
**(I)** the Metropolitan Police or the Fire Department of the District of Columbia; or
**(II)** a member of the United States Secret Service Uniformed Division, a member of the United States Park Police, other than for purposes of section [FN1] 5545(a) and 5546;
**(v)** a student-employee as defined by section 5351 of this title;
[**(vi)** Repealed. Pub.L. 91-375, § 6(c)(16), Aug. 12, 1970, 84 Stat. 776]
**(vii)** an employee outside the continental United States or in Alaska who is paid in accordance with local native prevailing wage rates for the area in which employed;
**(viii)** an employee of the Tennessee Valley Authority;
**(ix)** an individual to whom section 1291(a) of title 50, appendix, applies;
**(x)** an employee of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives;
**(xi)** an employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates under subchapter IV of chapter 53 of this title, or by a wage board or similar administrative authority serving the same purpose, except as provided by section 5544 of this title;
**(xii)** an employee of the Transportation Corps of the Army on a vessel operated by the United States, a vessel employee of the Environmental Science Services Administration, or a vessel employee of the Department of the Interior;
**(xiii)** a "teacher" or an individual holding a "teaching position" as defined by section 901 of title 20;
**(xiv)** a Foreign Service officer;
**(xv)** a member of the Senior Foreign Service;
**(xvi)** member of the Senior Executive Service; or
**(xvii)** a member of the Federal Bureau of Investigation and Drug Enforcement Administration Senior Executive Service; and

32

**(3)** "law enforcement officer" means an employee who--

**(A)** is a law enforcement officer within the meaning of section 8331(20) or 8401(17);

**(B)** in the case of an employee who holds a supervisory or administrative position and is subject to subchapter III of chapter 83, but who does not qualify to be considered a law enforcement officer within the meaning of section 8331(20), would so qualify if such employee had transferred directly to such position after serving as a law enforcement officer within the meaning of such section;

**(C)** in the case of an employee who holds a supervisory or administrative position and is subject to chapter 84, but who does not qualify to be considered a law enforcement officer within the meaning of section 8401(17), would so qualify if such employee had transferred directly to such position after performing duties described in section 8401(17)(A) and (B) for at least 3 years; and

**(D)** in the case of an employee who is not subject to subchapter III of chapter 83 or chapter 84--

**(i)** holds a position that the Office of Personnel Management determines would satisfy subparagraph (A), (B), or (C) if the employee were subject to subchapter III of chapter 83 or chapter 84; or

**(ii)** is a special agent in the Diplomatic Security Service.

CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 485; Pub.L. 90-83, § 1(4), Sept. 11, 1967, 81 Stat. 196; Pub.L. 91-375, § 6(c)(16), Aug. 12, 1970, 84 Stat. 776; Pub.L. 92-392, § 4, Aug. 19, 1972, 86 Stat. 573; Pub.L. 94-183, § 2(22), Dec. 31, 1975, 89 Stat. 1058; Pub.L. 95-105, Title IV, § 412(a)(1), Aug. 17, 1977, 91 Stat. 855; Pub.L. 95-426, Title II, § 204(b)(5)(B), Oct. 7, 1978, 92 Stat. 974; Pub.L. 95-454, Title IV, § 408(a)(2), Oct. 13, 1978, 92 Stat. 1173; Pub.L. 96-70, Title III, § 3302(e)(1), Sept. 27, 1979, 93 Stat. 498; Pub.L. 96-465, Title II, § 2304, Oct. 17, 1980, 94 Stat. 2165; Pub.L. 100-325, § 2(i)(1), May 30, 1988, 102 Stat. 582; Pub.L. 101-509, Title V, § 529 [Title IV, § 411(a)], Nov. 5, 1990, 104 Stat. 1427, 1469; Pub.L. 102-378, § 2(40)(A) to (C), Oct. 2, 1992, 106 Stat. 1351; Pub.L. 104-201, Div. C, Title XXXV, § 3548(a)(6), Sept. 23, 1996, 110 Stat. 2869.)

[FN1] So in original. Probably should be "sections".

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

**1966 Acts.**

| United States Code | Revised Statutes and Statutes at Large |
| --- | --- |
| 5 U.S.C. 901(a), (d), (e) | June 30, 1945, ch. 212, § 101(a), (d), (e), 59 Stat. 295, 296.<br>Sept. 1, 1954, ch. 1208, § 202(a), 68 Stat. 1109. |
| 5 U.S.C. 902 (less clause (1) and last sentence of (a) ) | June 30, 1945, ch. 212, § 102 (less clause (1) and last sentence of (a) ), 59 Stat. |

33

| | | |
|---|---|---|
| | | 296. |
| Derivation: | | May 24, 1946, ch. 270, § 8(a), 60 Stat. 218.<br>Aug. 4, 1947, ch. 452, § 1, 61 Stat. 727.<br>Aug. 18, 1959, Pub.L. 86-168, § 202(c), 73 Stat. 389. |
| | 5 U.S.C. 2358(a) (as applicable to the Federal Employees Pay Act of 1945, as amended). | July 17, 1959, Pub.L. 86-91, § 10(a) (as applicable to the Federal Employees Pay Act of 1945, as amended), 73 Stat. 217. |

The section is revised as a definition section. The provisions of former section 901(d) are omitted as unnecessary because the sections referred to state their application and there is no need to restate the application here.

In paragraph (1), the terms "Executive agency" and "military department" are substituted for the references in former section 901(a) and (e) to the executive branch, including Government-owned or controlled corporations, and the General Accounting Office in view of the definitions in sections 105 and 102.

In paragraph (2)(iii), the words "chapter 15 of title 31, District of Columbia Code" are substituted for the reference in former section 902(a)(4) to "the Teachers Salary Act of June 4, 1924, as amended" on authority of the provisions contained therein. Enumeration of the individuals to which the provisions apply are added.

In paragraph (2)(iv), the provisions of former section 902(a)(5) and (b)(6) are combined.

In paragraph (2)(v), the words "student-employee as defined by section 5351 of this title" are coextensive with and substituted for the enumeration of the employees in former section 902(a)(6).

In paragraph (2)(iv), (vi), (vii), (viii), (ix), (xi), and (xii), the reference to former section 947 is omitted as that section was repealed by the Act of Sept. 12, 1950, ch. 946, § 301(85), 64 Stat. 843.

In paragraph (2)(xii), the reference to former section 946 is omitted as unnecessary since that section is not carried into this subchapter. The words "Panama Canal Company" are substituted for "Panama Railroad Company" on authority of the Act of Sept. 2, 1950, ch. 1049, § 2(a)(2), 64 Stat. 1038.

In paragraph (2)(xiii), the words "as defined by section 901 of title 20" are added on authority of former section 2351, which section is scheduled for transfer to section 901 of title 20.

The exception for officers and employees of the Inland Waterways Corporation in former section 902 (b)(3) is omitted on authority of the Act of July 19, 1963, Pub.L. 88-67, 77 Stat. 81.

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

1967 Acts. Senate Report No. 482, see 1967 U.S. Code Cong. and Adm. News, p. 1538.

1970 Acts. House Report No. 91-1104 and Conference Report No. 91-1363, see 1970 U.S. Code Cong. and Adm. News, p. 3649.

1972 Acts. Senate Report No. 92-791 and Conference Report No. 92-1275, see 1972 U.S. Code Cong. and Adm. News, p. 2980.

1975 Acts. Senate Report No. 94-540, see 1975 U.S. Code Cong. and Adm. News, p. 2141.

1977 Acts. Senate Report No. 95-194 and House Conference Report No. 95- 537, see 1977 U.S. Code Cong. and Adm. News, p. 1625.

1978 Acts. House Report No. 95-1160 and House Conference Report No. 95- 1535, see 1978 U.S. Code Cong. and Adm. News, p. 2424.

Senate Report No. 95-969 and House Conference Report No. 95-1717, see 1978 U.S. Code Cong. and Adm. News, p. 2723.

1979 Acts. House Report No. 96-98(Parts I and II) and House Conference Report No. 96-473, see 1979 U.S. Code Cong. and Adm. News, p. 1034.

1980 Acts. Senate Report No. 96-913 and House Conference Report No. 96- 1432, see 1980 U.S. Code Cong. and Adm. News, p. 4419.

1988 Acts. House Report No. 100-608, see 1988 U.S. Code Cong. and Adm. News, p. 634.

1990 Acts. Statement by President, see 1990 U.S. Code Cong. and Adm. News, p. 2930-4.

1996 Acts. House Report No. 104-563 and House Conference Report No. 104- 724, see 1996 U.S. Code Cong. and Adm. News, p. 2948.

Amendments

1996 Amendments. Par. (2)(xii). Pub.L. 104-201, § 3548(a)(6), struck out reference to Panama Canal Commission vessel employee.

1992 Amendments. Par. (3). Pub.L. 102-378, § 2(40)(C), added par. (3).

1990 Amendments. Par. (2)(iv). Pub.L. 101-509 amended cl. (iv) generally. Prior to amendment, cl. (iv) read as follows: "a member of the Metropolitan Police, the Fire Department of the District of Columbia, the United States Park Police, or the Executive Protective Service;".

1988 Amendments. Par. (2)(xvii). Pub.L. 100-325 added cl. (xvii).

1980 Amendments. Par. (2)(xiv). Pub.L. 96-465 struck out "within the meaning of section 401 of the Foreign Service Act of 1946" following "officer".

Par. (2)(xv). Pub.L. 96-465 substituted "a member of the Senior Foreign Service; or" for "a 'Foreign Service information officer' as provided for by the first section of the Act entitled 'An Act to promote the foreign policy of the United States by strengthening and improving the Foreign Service personnel system of the International Communication Agency through establishment of a Foreign Service Information Officer Corps', approved August 20, 1968; or".

1979 Amendments. Par. (2)(xii). Pub.L. 96-70, § 3302(e)(1), substituted "Commission" for "Company".

1978 Amendments. Par. (2)(xv). Pub.L. 95-426 substituted "International Communication Agency" for

"United States Information Agency".

Par. (2)(xvi). Pub.L. 95-454 added cl. (xvi).

1977 Amendments. Par. (2)(xiv), (xv). Pub.L. 95-105 added cls. (xiv) and (xv).

1975 Amendments. Subsec. (2)(iv). Pub.L. 94-183 substituted "Executive Protective Service" for "White House Police".

1972 Amendments. Par. (2)(xi). Pub.L. 92-392 substituted "pay" for "basic pay" and provided for determination of pay under subchapter IV of chapter 53 of this title.

1970 Amendments. Par. (2)(vi). Pub.L. 91-375 repealed cl. (vi) excluding an employee in the postal field service from the definition of "employee".

1967 Amendments. Subsec. (2)(xii). Pub.L. 90-83 substituted "Environmental Science Services Administration" for "Coast and Geodetic Survey". See Revision Notes and Legislative Reports under section 2101 of this title.

Pub.L. 90-83 made general changes to codify and improve enactment by Pub.L. 89-554.

Effective and Applicability Provisions

1992 Acts. Amendment by Pub.L. 102-378 effective as of the first day of the first applicable pay period beginning on or after Oct. 2, 1992, see section 9(b)(9) of Pub.L. 102-378, set out as a note under section 6303 of this title.

1990 Acts. Section 529 [Title IV, § 411(b)] of Pub.L. 101-509 provided that: "The amendment made by this section [amending par. (2)(iv) of this section] shall be effective on January 1, 1992."

1980 Acts. Amendment by Pub.L. 96-465 effective Feb. 15, 1981, except as otherwise provided, see section 2403 of Pub.L. 96-465, as amended, set out as a note under section 3901 of Title 22, Foreign Relations and Intercourse.

1979 Acts. Amendment by Pub.L. 96-70 effective Oct. 1, 1979, the date on which the Panama Canal Treaty of 1977 entered into force, see section 3304 of Pub.L. 96-70, set out as a note under section 3601 of Title 22, Foreign Relations and Intercourse.

1978 Acts. Amendment by Pub.L. 95-454 effective 9 months after Oct. 13, 1978, and congressional review of provisions of sections 401 through 412 of Pub.L. 95-454, see section 415 of Pub.L. 95-454, set out as a note under section 3131 of this title.

Section 204(b)(5)(B) of Pub.L. 95-426 provided in part that amendment of par. (2)(xv) of this section by Pub.L. 95-426 is effective Oct. 1, 1978.

1977 Acts. Section 412(a)(2) of Pub.L. 95-105 provided that: "The amendments made by paragraph (1) [amending par. (2) of this section] shall take effect on October 1, 1978."

1972 Acts. Amendment by Pub.L. 92-392 effective first day of first applicable pay period beginning on or after the 90th day after Aug. 19, 1972, see section 15(a) of Pub.L. 92-392, set out as a note under section 5341 of this title.

1970 Acts. Amendment by Pub.L. 91-375 effective within 1 year after Aug. 12, 1970, on date established therefor by the Board of Governors of the United States Postal Service and published by it in the Federal Register, see section 15(a) of Pub.L. 91-375, set out as a note preceding section 101 of Title 39, Postal Service.

Transfer of Functions

36

For transfer of the functions, personnel, assets, and obligations of the United States Secret Service, including the functions of the Secretary of the Treasury relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see 6 U.S.C.A. §§ 381, 551(d), 552(d) and 557, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under 6 U.S.C.A. § 542.

The Environmental Science Services Administration in the Department of Commerce, including the offices of the Administrator and Deputy Administrator thereof, were abolished by Reorg. Plan No. 4 of 1970, eff. Oct. 3, 1970, 35 F.R. 15627, 84 Stat. 2090, set out in the Appendix to this title, which created the National Oceanic and Atmospheric Administration in the Department of Commerce and transferred the personnel, property, records, and unexpended balances of funds of the Environmental Science Services Administration to such newly created National Oceanic and Atmospheric Administration. The components of the Environmental Science Services Administration thus transferred included the Weather Bureau [now the National Weather Service], the Coast and Geodetic Survey [now the National Ocean Survey], the Environmental Data Service, the National Environmental Satellite Center, and the ESSA Research Laboratories.

Savings Provisions

All actions made, issued, undertaken, entered into, or taken under the authority of any law repealed, modified or affected by the Foreign Service Act of 1980, Pub.L. 96-465, Oct. 17, 1980, 94 Stat. 2071, to continue in full force and effect until modified, revoked, or superseded by appropriate authority, see section 4172 of Title 22, Foreign Relations and Intercourse.

Short Title

1994 Amendments. Pub.L. 103-329, Title VI, § 633(a), Sept. 30, 1994, 108 Stat. 2425, provided that: "This section [enacting section 5545a of this title, amending sections 5542 and 5547 of this title and section 213 of Title 29, Labor, and enacting provisions set out as notes under this section and section 5545a of this title] may be cited as the 'Law Enforcement Availability Pay Act of 1994'."

Authority of Secretary of State

Except as otherwise provided, Secretary of State to have and exercise any authority vested by law in any official or office of Department of State and references to such officials or offices deemed to refer to Secretary of State or Department of State, as appropriate, see section 2651a of Title 22, Foreign Relations and Intercourse, and section 161(d) of Pub.L. 103-236, set out as a note under section 2651a of Title 22.

Omission of Section 3302(e)(1) of Pub.L. 96-70

Section 3302(e)(1) of Pub.L. 96-70, which amended par. (2)(xii) of this section, was omitted in the general revision of section 3302 of Pub.L. 96-70 by Pub.L. 104-201, Div. C, Title XXXV, § 3547, Sept. 23, 1996, 110 Stat. 2868.

Department of Justice Attorney Pay

Pub.L. 106-113, Div. B, § 1000(a)(1) [Title I, § 115], Nov. 29, 1999, 113 Stat. 1535, 1501A-21, provided that:

"**(a)** None of the funds made available by this or any other Act may be used to pay premium pay under title 5, United States Code, sections 5542-5549, to any individual employed as an attorney, including an Assistant United States Attorney, in the Department of Justice for any work performed on or after the date of the enactment of this Act [Nov. 29, 1999].

"**(b)** Notwithstanding any other provision of law, neither the United States nor any individual or entity acting on its behalf shall be liable for premium pay under title 5, United States Code, sections 5542-

37

5549, for any work performed on or after the date of the enactment of this Act [Nov. 29, 1999] by any individual employed as an attorney in the Department of Justice, including an Assistant United States Attorney."

[Pub.L. 106-553, § 1(a)(2) [Title I, § 111], Dec. 21, 2000, 114 Stat. 2762, 2762A-68, provided that: "Section 115 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 2000 (as enacted into law by section 1000(a)(1) of Public Law 106-113 [Pub.L. 106-113, Div. B, § 1000(a)(1) [Title I, § 115], Nov. 29, 1999, 113 Stat. 1535, 1501A-21]) [this note] shall apply hereafter."]

Payment of Bonuses for Foreign Language Capabilities

Pub.L. 100-690, Title VI, § 6401, Nov. 18, 1988, 102 Stat. 4370, as amended Pub.L. 101-509, Title V, § 529 [Title IV, § 408(c) ], Nov. 5, 1990, 104 Stat. 1427, 1468, provided that:

**"(a) In general.**--Notwithstanding any other provision of law, the Drug Enforcement Administration and the Federal Bureau of Investigation are authorized on and after October 1, 1988, to pay bonuses up to 25 percent of base pay to employees of the Drug Enforcement Administration and the Federal Bureau of Investigation who possess and make substantial use of one or more languages, other than English, in the performance of their official duties. The Administrator of the Drug Enforcement Administration and the Director of the Federal Bureau of Investigation shall develop such policies as necessary to implement the payment of these bonuses.

**"(b) Limitation.**--The provisions of this section shall apply only to an employee who has received a bonus under this section before January 1, 1992. The provisions of subchapter III of chapter 45 of title 5, United States Code, shall apply to any employee who would otherwise be eligible to receive a bonus under this section, on and after such date."

Sense of Congress Relating to Law Enforcement Officer Provisions

Section 2(40)(D) of Pub.L. 102-378 provided that: "It is the sense of the Congress that--

**"(i)** the provisions of section 5541(3) of title 5, United States Code (as added by section 2(40)(C) of this Act) [par. (3) of this section]--

**"(I)** are enacted only for the purposes of pay and not for the purposes of retirement;
**"(II)** do not reflect any intent of the Congress to change retirement eligibility standards for law enforcement officers; and

**"(ii)** law enforcement officers in primary positions have different retirement eligibility standards than employees in supervisory or administrative positions because of the different requirements in their responsibilities."

CROSS REFERENCES

Compensation of--
Federal judges, see 28 USCA §§ 5, 44, 135, 172, and 252.
Tennessee Valley Authority officers and employees, see 16 USCA §§ 831a and 831b.
United States Secret Service Uniformed Division, see 3 USCA § 204.
Employee defined as not including individual excluded under this section for purposes of--
Hours of work, see 5 USCA § 6101.
Pay periods and computation of pay, other than a member of Senior Executive Service, see 5 USCA § 5504.
Law enforcement officer defined within meaning of this section for purposes of awards for foreign language capabilities, see 5 USCA § 4521.

CODE OF FEDERAL REGULATIONS

Administrative personnel, see 5 CFR § 550.101 et seq.

LIBRARY REFERENCES

American Digest System

United States ⚷39(1) et seq., 39(4, 5).
Key Number System Topic No. 393.

RESEARCH REFERENCES

Encyclopedias

Am. Jur. 2d Civil Service § 43, Compensation, Generally.

NOTES OF DECISIONS

Employee 1
Hazardous duty 2

1. Employee

The plaintiff, being included by the language of former § 901 et seq. of this title [now this subchapter], which became effective July 1, 1945, was entitled to the benefits of said sections. Barker v. U.S., Ct.Cl.1950, 117 Ct.Cl. 221. United States ⚷ 39(4)

2. Hazardous duty

Exposure to second-hand cigarette smoke does not constitute "hazardous duty" within meaning of statute requiring payment of hazardous duty pay to federal employees. Adair v. U.S., Fed.Cl.2006, 70 Fed.Cl. 65. United States ⚷ 39(2)

5 U.S.C.A. § 5541, 5 USCA § 5541

Current through P.L. 109-367 (excluding P.L. 109-304, P.L. 109-351, P.L. 109-364 to P.L. 109-366) approved 10-26-06
Copr. © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

39

5 U.S.C.A. § 7101

United States Code Annotated Currentness
Title 5. Government Organization and Employees (Refs & Annos)
Part III. Employees (Refs & Annos)
Subpart F. Labor-Management and Employee Relations
Chapter 71. Labor-Management Relations (Refs & Annos)
Subchapter I. General Provisions

**§ 7101. Findings and purpose**

**(a)** The Congress finds that--

**(1)** experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them--
**(A)** safeguards the public interest,
**(B)** contributes to the effective conduct of public business, and
**(C)** facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and
**(2)** the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

**(b)** It is the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

CREDIT(S)

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1192.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1978 Acts. Senate Report No. 95-969 and House Conference Report No. 95- 1717, see 1978 U.S. Code Cong. and Adm. News, p. 2723.

Effective and Applicability Provisions

1978 Acts. Section effective 90 days after Oct. 13, 1978, see section 907 of Pub.L. 95-454, set out as a note under section 1101 of this title.

Prior Provisions

A prior section 7101, Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 523; Pub.L. 91-375, § 6(c)(19), Aug. 12, 1970, 84 Stat. 776, which related to right of postal employees to organize, was omitted in the general amendment of this chapter by Pub.L. 94-454.

Employee Surveys

40

5 U.S.C.A. § 8401

United States Code Annotated Currentness
Title 5. Government Organization and Employees (Refs & Annos)
Part III. Employees (Refs & Annos)
Subpart G. Insurance and Annuities (Refs & Annos)
Chapter 84. Federal Employees' Retirement System (Refs & Annos)
Subchapter I. General Provisions

**§ 8401. Definitions**

For the purpose of this chapter--

**(1)** the term "account" means an account established and maintained under section 8439(a) of this title;
**(2)** the term "annuitant" means a former employee or Member who, on the basis of that individual's service, meets all requirements for title to an annuity under subchapter II or V of this chapter and files claim therefor;
**(3)** the term "average pay" means the largest annual rate resulting from averaging an employee's or Member's rates of basic pay in effect over any 3 consecutive years of service or, in the case of an annuity under this chapter based on service of less than 3 years, over the total service, with each rate weighted by the period it was in effect;
**(4)** the term "basic pay" has the meaning given such term by section 8331(3);
**(5)** the term "Board" means the Federal Retirement Thrift Investment Board established by section 8472(a) of this title;
**(6)** the term "Civil Service Retirement and Disability Fund" or "Fund" means the Civil Service Retirement and Disability Fund under section 8348;
**(7)** the term "court" means any court of any State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, or the Virgin Islands, and any Indian court;
**(8)** the term "Director" means the Director of the Office of Personnel Management;
**(9)** the term "dynamic assumptions" means economic assumptions that are used in determining actuarial costs and liabilities of a retirement system and in anticipating the effects of long-term future--
**(A)** investment yields;
**(B)** increases in rates of basic pay; and
**(C)** rates of price inflation;
**(10)** the term "earnings", when used with respect to the Thrift Savings Fund, means the amount of the gain realized or yield received from the investment of sums in such Fund;
**(11)** the term "employee" means--
**(A)** an individual referred to in subparagraph (A), (E), (F), (H), (I), (J), or (K) of section 8331(1) of this title;
**(B)** a Congressional employee as defined in section 2107 of this title, including a temporary Congressional employee and an employee of the Congressional Budget Office; and
**(C)** an employee described in section 2105(c) who has made an election under section 8461(n)(1) to remain covered under this chapter;

whose civilian service after December 31, 1983, is employment for the purposes of title II of the Social Security Act and chapter 21 of the Internal Revenue Code of 1986, except that such term does not include--
**(i)** any individual referred to in--
**(I)** clause (i), (vi), or (ix) of paragraph (1) of section 8331;
**(II)** clause (ii) of such paragraph; or
**(III)** the undesignated material after the last clause of such paragraph;
**(ii)** any individual excluded under section 8402(c) of this title;
**(iii)** a member of the Foreign Service described in section 103(6) of the Foreign Service Act of 1980; or
**(iv)** an employee who has made an election under section 8461(n)(2) to remain covered by a retirement system established for employees described in section 2105(c);

**(12)** the term "former spouse" means a former spouse of an individual--
**(A)** if such individual performed at least 18 months of civilian service creditable under section 8411 as an employee or Member; and
**(B)** if the former spouse was married to such individual for at least 9 months;
**(13)** the term "Executive Director" means the Executive Director appointed under section 8474(a);
**(14)** the term "firefighter" means--
**(A)** an employee, the duties of whose position--
**(i)** are primarily to perform work directly connected with the control and extinguishment of fires; and
**(ii)** are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the Director considering the recommendations of the employing agency; and
**(B)** an employee who is transferred directly to a supervisory or administrative position after performing duties described in subparagraph (A) for at least 3 years;
**(15)** the term "Government" means the Federal Government, Gallaudet College, and, in the case of an employee described in paragraph (11)(C), a nonappropriated fund instrumentality of the Department of Defense or the Coast Guard described in section 2105(c);
**(16)** the term "Indian court" has the meaning given such term by section 8331(24);
**(17)** the term "law enforcement officer" means--
**(A)** an employee, the duties of whose position--
**(i)** are primarily--
**(I)** the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or
**(II)** the protection of officials of the United States against threats to personal safety; and
**(ii)** are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the Director considering the recommendations of the employing agency;
**(B)** an employee of the Department of the Interior or the Department of the Treasury (excluding any employee under subparagraph (A)) who occupies a position that, but for the enactment of the Federal Employees' Retirement System Act of 1986, would be subject to the District of Columbia Police and Firefighters' Retirement System, as determined by the Secretary of the Interior or the Secretary of the Treasury, as appropriate;
**(C)** an employee who is transferred directly to a supervisory or administrative position after performing duties described in subparagraph (A) and (B) for at least 3 years; and
**(D)** an employee--
**(i)** of the Bureau of Prisons or Federal Prison Industries, Incorporated;
**(ii)** of the Public Health Service assigned to the field service of the Bureau of Prisons or of the Federal Prison Industries, Incorporated; or
**(iii)** in the field service at Army or Navy disciplinary barracks or at any other confinement and rehabilitation facility operated by any of the armed forces;

whose duties in connection with individuals in detention suspected or convicted of offenses against the criminal laws of the United States or of the District of Columbia or offenses against the punitive articles of the Uniform Code of Military Justice (chapter 47 of title 10) require frequent direct contact with these individuals in their detention and are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the head of the employing agency;
**(18)** the term "loss", as used with respect to the Thrift Savings Fund, includes the amount of any loss resulting from the investment of sums in such Fund, or from the breach of any responsibility, duty, or obligation under section 8477. [FN1]
**(19)** the term "lump-sum credit" means the unrefunded amount consisting of--
**(A)** retirement deductions made from the basic pay of an employee or Member under section 8422(a) of this title (or under section 204 of the Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983);
**(B)** amounts deposited by an employee or Member under section 8422(e);
**(C)** amounts deposited by an employee, Member, or survivor under section 8411(f); and
**(D)** interest on the deductions and deposits which, for any calendar year, shall be equal to the overall average yield to the Fund during the preceding fiscal year from all obligations purchased

by the Secretary of the Treasury during such fiscal year under section 8348(c), (d), and (e), as determined by the Secretary (compounded annually);

but does not include interest--
**(i)** if the service covered thereby aggregates 1 year or less; or
**(ii)** for a fractional part of a month in the total service;
**(20)** the term "Member" has the same meaning as provided in section 2106, except that such term does not include an individual who irrevocably elects, by written notice to the official by whom such individual is paid, not to participate in the Federal Employees' Retirement System, and who (in the case of an individual who is a Member of the House of Representatives, including a Delegate or Resident Commissioner to the Congress) serves as a Member prior to the date of the enactment of the Legislative Branch Appropriations Act, 2004;
**(21)** the term "net earnings" means the excess of earnings over losses;
**(22)** the term "net losses" means the excess of losses over earnings;
**(23)** the term "normal-cost percentage" means the entry-age normal cost of the provisions of the System which relate to the Fund, computed by the Office in accordance with generally accepted actuarial practice and standards (using dynamic assumptions) and expressed as a level percentage of aggregate basic pay;
**(24)** the term "Office" means the Office of Personnel Management;
**(25)** the term "price index" has the same meaning as provided in section 8331(15);
**(26)** the term "service" means service which is creditable under section 8411;
**(27)** the term "supplemental liability" means the estimated excess of--
**(A)** the actuarial present value of all future benefits payable from the Fund under this chapter based on the service of current or former employees or Members, over
**(B)** the sum of--
**(i)** the actuarial present value of deductions to be withheld from the future basic pay of employees and Members currently subject to this chapter pursuant to section 8422;
**(ii)** the actuarial present value of the future contributions to be made pursuant to section 8423 (a) with respect to employees and Members currently subject to this chapter;
**(iii)** the Fund balance as of the date the supplemental liability is determined, to the extent that such balance is attributable--
**(I)** to the System, or
**(II)** to contributions made under the Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983 by or on behalf of an individual who became subject to the System; and
**(iv)** any other appropriate amount, as determined by the Office in accordance with generally accepted actuarial practices and principles;
**(28)** the term "survivor" means an individual entitled to an annuity under subchapter IV of this chapter;
**(29)** the term "System" means the Federal Employees' Retirement System described in section 8402(a);
**(30)** the term "military technician (dual status)" means an employee described in section 10216 of title 10;
**(31)** the term "military service" means honorable active service--
**(A)** in the armed forces;
**(B)** in the commissioned corps of the Public Health Service after June 30, 1960; or
**(C)** in the commissioned corps of the National Oceanic and Atmospheric Administration, or a predecessor entity in function, after June 30, 1961;

but does not include service in the National Guard except when ordered to active duty in the service of the United States or full-time National Guard duty (as such term is defined in section 101(d) of title 10) if such service interrupts creditable civilian service under this subchapter and is followed by reemployment in accordance with chapter 43 of title 38 that occurs on or after August 1, 1990;
**(32)** the term "nonforfeitable account balance" means any amounts in an account, established and maintained under subchapter III, which are nonforfeitable (as determined under section 8432(g));
**(33)** "Nuclear materials courier" has the meaning given that term in section 8331(27);
**(34)** the term "Government physician" has the meaning given such term under section 5948; and

**(35)** the term "air traffic controller" or "controller" means--
**(A)** a controller within the meaning of section 2109(1); and
**(B)** a civilian employee of the Department of Transportation or the Department of Defense who is the immediate supervisor of a person described in section 2109(1)(B).

CREDIT(S)

(Added Pub.L. 99-335, Title I, § 101(a), June 6, 1986, 100 Stat. 517, and amended Pub.L. 99-556, Title I, §§ 107, 109, 119, Oct. 27, 1986, 100 Stat. 3132, 3134; Pub.L. 100-238, Title I, §§ 103(a)(2), (c), (d)(2), 113(b)(1), Jan. 8, 1988, 101 Stat. 1744, 1745, 1750; Pub.L. 100-679, § 13(a)(2), Nov. 17, 1988, 102 Stat. 4071; Pub.L. 101-335, § 6(a)(1), July 17, 1990, 104 Stat. 322; Pub.L. 101-474, § 5(o), Oct. 30, 1990, 104 Stat. 1100; Pub.L. 101-508, Title VII, § 7202(k)(1), Nov. 5, 1990, 104 Stat. 1388-338; Pub.L. 103-337, Div. A, Title XVI, § 1677(a)(4), Oct. 5, 1994, 108 Stat. 3019; Pub.L. 103-353, § 5(c), (e)(1), Oct. 13, 1994, 108 Stat. 3174; Pub.L. 104-208, Div. A, Title I, § 101(f) [Title VI, § 659] [Title II, § 206(a)(1)], Sept. 30, 1996, 110 Stat. 3009-378; Pub.L. 105- 261, Div. C, Title XXXI, § 3154(f), Oct. 17, 1998, 112 Stat. 2255; Pub.L. 106-65, Div. A, Title V, § 522(c)(2), Oct. 5, 1999, 113 Stat. 597; Pub.L. 106-571, § 3(c)(2), Dec. 28, 2000, 114 Stat. 3056; Pub.L. 108-83, Title I, § 104(a), Sept. 30, 2003, 117 Stat. 1017; Pub.L. 108-176, Title II, § 226(a)(2), Dec. 12, 2003, 117 Stat. 2529.)

[FN1] So in original. The period probably should be a semicolon.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1986 Acts. Senate Report No. 99-166, House Conference Report No. 99-606, and Statement by President, see 1986 U.S. Code Cong. and Adm. News, p. 1405.

1988 Acts. House Report No. 100-374 and Statement by President, see 1987 U.S. Code Cong. and Adm. News, p. 3217.

Senate Report No. 100-424, see 1988 U.S. Code Cong. and Adm. News, p. 5687.

1990 Acts. House Report No. 101-452, see 1990 U.S. Code Cong. and Adm. News, p. 250.

House Report No. 101-770, see 1990 U.S. Code Cong. and Adm. News, p. 1709.

House Report No. 101-881, House Conference Report No. 101-964, and Statement by President, see 1990 U.S. Code Cong. and Adm. News, p. 2017.

1994 Acts. House Report No. 103-499 and House Conference Report No. 103- 701, see 1994 U.S.Code Cong. and Adm.News, p. 2091.

House Report No. 103-65 and Joint Explanatory Statement, see 1994 U.S.Code Cong. and Adm.News, p. 2449.

1998 Acts. House Conference Report No. 105-736 and Statement by President, see 1998 U.S. Code Cong. and Adm. News, p. 513.

1999 Acts. House Conference Report No. 106-301 and Statement by President, see 1999 U.S. Code Cong. and Adm. News, p. 94.

2003 Acts. House Conference Report No. 108-279, see 2003 U.S. Code Cong. and Adm. News, p. 1138.

House Conference Report No. 108-334 and Statement by President, see 2003 U.S. Code Cong. and

YY

Adm. News, p. 2212.

References in Text

The Social Security Act, referred to in par. (11), is Act Aug. 14, 1935, c. 531, 49 Stat. 620, as amended. Title II of the Social Security Act is classified generally to subchapter II (section 401 et seq.) of chapter 7 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see section 1305 of Title 42 and Tables.

Chapter 21 of the Internal Revenue Code of 1986, referred to in par. (11), is classified to chapter 21 (section 3101 et seq.) of Title 26, Internal Revenue Code.

Section 103(6) of the Foreign Service Act of 1980, referred to in par. (11)(iii), is classified to section 3903(6) of Title 22, Foreign Relations and Intercourse.

The Federal Employees' Retirement System Act of 1986, referred to in par. (17)(B), is Pub.L. 99-335, June 6, 1986, 100 Stat. 514, as amended. For complete classification of this Act to the Code, see Short Title of 1986 Acts note set out under this section and Tables.

The Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983, referred to in pars. (19)(A) and (27)(B)(iii)(II), is Pub.L. 98-168, Title II, Nov. 29, 1983, 97 Stat. 1106, as amended, which is set out as a miscellaneous note under section 8331 of this title.

The date of the enactment of the Legislative Branch Appropriations Act, 2004, referred to in par. (20), is Sept. 30, 2003, the date of enactment of Pub.L. 108-83, 117 Stat. 1007, which enacted that Act.

Amendments

2003 Amendments. Par. (20). Pub.L. 108-83, § 104(a), inserted ", and who (in the case of an individual who is a Member of the House of Representatives, including a Delegate or Resident Commissioner to the Congress) serves as a Member prior to the date of the enactment of the Legislative Branch Appropriations Act, 2004" following "Federal Employees' Retirement System".

Par. (33). Pub.L. 108-176, § 226(a)(2)(A), struck out "and" at the end.

Par. (34). Pub.L. 108-176, § 226(a)(2)(B), struck out the period at the end and inserted "; and".

Par. (35). Pub.L. 108-176, § 226(a)(2)(C), added par. (35).

2000 Amendments. Par. (34). Pub.L. 106-517, § 3(c)(2), added par. (34).

1999 Amendments. Par. (30). Pub.L. 106-65, § 522(c)(2), rewrote par. (30) which formerly read:

"**(30)** the term 'military reserve technician' means a member of one of the reserve components of the armed forces specified in section 10101 of title 10 who--

"**(A)** is assigned to a civilian position as a technician in the administration and training of such reserve components or in the maintenance and repair of supplies issued to such reserve components; and
"**(B)** as a condition of employment in such position, is required to be a member of one of such reserve components serving in a specified military grade;".

1998 Amendments. Par. (33). Pub.L. 105-261, § 3154(f), added par. (33).

1996 Amendments. Par. (4). Pub.L. 104-208, § 101(f) [§ 659, (§ 206(a)(1))], struck out "except as provided in subchapter III of this chapter," preceding "the term".

1994 Amendments. Par. (11). Pub.L. 103-353, § 5(e)(1), substituted reference to the Internal

Revenue Code of 1986 for reference to the Internal Revenue Code of 1954.

Par. (30). Pub.L. 103-337, § 1677(a)(4), substituted "section 10101 of title 10" for "section 261(a) of title 10" in introductory provisions.

Par. (31). Pub.L. 103-353, § 5(c), excluded full-time National Guard duty which interrupts creditable civilian service and is followed by reemployment under chapter 43 of Title 38, Veterans' Benefits, that occurs on or after Aug. 1, 1990, from the definition of military service.

1990 Amendments. Par. (11)(C). Pub.L. 101-508, § 7202(k)(1)(A)(i) to (iii), added subpar. (C).

Par. (11)(i)(I). Pub.L. 101-474, § 5(o), substituted "clause (i), (vi), or (ix)" for "clause (i), (v), (vi), or (ix)".

Par. (11)(iv). Pub.L. 101-508, § 7202(k)(1)(A)(iv) to (iv), added cl. (iv).

Par. (15). Pub.L. 101-508, § 7202(k)(1)(B), added provisions relating to an employee described in par. (11)(C).

Par. (32). Pub.L. 101-335, § 6(a)(1), added par. (32).

1988 Amendments. Par. (11)(A). Pub.L. 100-679, § 13(a)(2), added reference to subpar. (K) of section 8331(1) of this title.

Par. (11)(i)(II). Pub.L. 100-238, § 103(d)(2), struck out "(other than an employee of the United States Park Police, or the United States Secret Service, whose civilian service after December 31, 1983, is such employment)" after "clause (ii) of such paragraph".

Par. (11)(iii). Pub.L. 100-238, § 113(b)(1), added cl. (iii).

Par. (14)(A)(ii). Pub.L. 100-238, § 103(a)(2), substituted "should be" for "are required to be".

Par. (14)(B). Pub.L. 100-238, § 103(c)(2), substituted "for at least 3 years" for "for at least 10 years".

Par. (17)(A)(ii). Pub.L. 100-238, § 103(a)(2), substituted "should be" for "are required to be".

Par. (17)(B). Pub.L. 100-238, § 103(c)(1)(B), added subpar. (B). Former subpar. (B) was redesignated (C).

Par. (17)(C). Pub.L. 100-238, § 103(c)(1)(A), redesignated subpar. (B) as (C). Former subpar. (C) was redesignated (D).

Pub.L. 100-238, § 103(c)(1)(C), substituted "performing duties described in subparagraph (A) and (B) for at least 3 years" for "performing duties described in subparagraph (A) for at least 10 years".

Par. (17)(D). Pub.L. 100-238, § 103(c)(1)(A), redesignated subpar. (C) as (D).

Pub.L. 100-238, § 103(a)(2), substituted "should be" for "are required to be" in the provisions following cl. (iii).

1986 Amendments. Par. (11). Pub.L. 99-556, § 119, in provisions following subpar. (B), struck out "any of" preceding "whose civilian service".

Par. (11)(i)(II). Pub.L. 99-556, § 119, struck out "any of" preceding "whose civilian service".

Par. (18). Pub.L. 99-556, § 109, included within the definition of "loss" any loss resulting from the breach of any responsibility, duty, or obligation under section 8477 of this title.

Y6