No. 04-0093C
Judge Horn

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JAMES R. VANDERPOOL, THOMAS L. CAVEN,
MICHELLE L. ROOT, RICHARD L. ROBERTS, THOMAS J. FUNKE,
WILLIAM E. FISHER, DONALD MCMULLEN, and ROBERT MACHO,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S SUPPLEMENTAL APPENDIX-VOL I

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8TH Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0461
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:

RAYMOND A. MARTINEZ
Attorney
Federal Aviation Administration
AGC-30 Personnel and Labor Law
600 Independence Ave., S.W.
Washington, D.C. 20591

December 18, 2006

# INDEX TO SUPPLEMENTAL APPENDIX[1/]


| DOCUMENT(s) | PAGE(s) |
| --- | --- |
| FAA Human Resource Management Directives, Order No. 3550.13, Dated October 25, 1983 | 1 |
| 5 U.S.C. § 5546a, "Differential Pay for Certain Employees of the Federal Aviation Administration and the Department of Defense | 26 |
| Federal Aviation Administration Memo, Eligibility for Availability Pay, Dated August 10, 1995 | 28 |


---

1/ The copy of statute contained in this supplemental appendix was printed from Westlaw.

## AHR Directives

Human Resource Management (AHR)

**ORDER 3550.13**
**October 25, 1983**

**SUBJ: ATC REVITALIZATION PREMIUM PAY**

This order contains the agency's basic regulations and procedures necessary to implement the air traffic control revitalization premium pay provisions of Public Laws 97-276, 97-377, and 98-78. It consolidates what has already been issued in notice and memorandum format. Appendix 1 consolidates previously issued questions and answers.

This order is distributed to the division level in Washington, regions, and centers; branch level in the Office of Personnel and Training and in the Personnel Management Divisions in the regions and the Aeronautical Center; branch level in the Administrative Systems Division at the Federal Aviation Administration (FAA) Technical Center, and a limited distribution to all field office and facilities.

Public Law 97-276 gave the Federal Aviation Administrator the authority to prescribe standards for determining which air traffic controllers and other employees of the FAA are to be paid premium pay under this law, and to prescribe such rules as he determines are necessary to carry out the provisions of this law. Public Laws 97-377 and 98-78 extended certain provisions of Public Law 97-276 to eligible employees of the FAA Academy.

**TABLE OF CONTENTS**

1. PURPOSE
2. DISTRIBUTION
3. BACKGROUND
4. COVERAGE
5. PROCESSING ELIGIBILITY/INELIGIBILITY DETERMINSATIONS
6. ADMINISTRATION OF ELIGIBILITY/INELIGIBILITY DETERMINATIONS

APPENDIX 1 - QUESTIONS AND ANSWERS REGARDING AIR TRAFFIC CONTROL REVITALIZATION PREMIUM PAY
1. Coverage
2. Start/Stop Times for Eligibility
3. General

**1. PURPOSE.** This order contains the agency's basic regulations and procedures necessary to implement the air traffic control revitalization premium pay provisions of Public Laws 97-276, 97-377, and 98-78. It consolidates what has already been issued in notice and memorandum format. Appendix 1 consolidates previously issued questions and answers.

**2. DISTRIBUTION.** This order is distributed to the division level in Washington, regions, and centers; branch level in the Office of Personnel and Training and in the Personnel

Management Divisions in the regions and the Aeronautical Center; branch level in the Administrative Systems Division at the Federal Aviation Administration (FAA) Technical Center, and a limited distribution to all field office and facilities.

**3. <u>BACKGROUND</u>**. Public Law 97-276 gave the Federal Aviation Administrator the authority to prescribe standards for determining which air traffic controllers and other employees of the FAA are to be paid premium pay under this law, and to prescribe such rules as he determines are necessary to carry out the provisions of this law. Public Laws 97-377 and 98-78 extended certain provisions of Public Law 97-276 to eligible employees of the FAA Academy.

**4. <u>COVERAGE</u>**

**a. Air Traffic Coverage.**

(1) 5 percent Operational Responsibility Differential.

(a) ALL supervisory and nonsupervisory employees occupying positions classified as GS--2152 Air Traffic Control Specialists at grade GS-10 or above assigned to an operational air traffic facility (e.g., center, terminal, or flight service stations).

(b) GS-9 employees occupying positions classified as GS-2152 Air Traffic Control Specialists who are certified as operational air traffic control specialists at terminals, centers, and flight service stations. An operational air traffic control specialist, GS-9, must be certified to work independently on at least TWO positions of operation. In air traffic control centers and terminals, these operational positions must involve the separation and control of live traffic.

(c) National Terminal Field Support/Maintenance Branch (ATR-240) and National En Route Field Support Maintenance Branch (ATR-250)

1. Supervisory and nonsupervisory employees occupying positions classified as GS-2152 Air Traffic Control Specialists at grades GS-10 or above in ATR-240 and ATR-250 assigned to the FAA Technical Center.

2. GS-2152 Air Traffic Control Specialists in these organizations have, as a primary part of their duties, the operational responsibility to work onsite at air traffic control facilities to resolve problems encountered with new and modified operational assistance at air traffic facilities will receive the operational responsibility differential for each day they are in official travel status.

3. Employees in these organizations who are required to spend time in travel status providing onsite operational assistance at air traffic facilities will receive the operational responsibility differential for each day they are in official travel status.

(d) Central Flow Control

(1) ALL supervisory and nonsupervisory employees occupying positions classified as GS-2152 Air Traffic Control Specialists at grades GS-10 or above assigned to Central

Flow Control facility, ATO-120, locate in Washington, D.C.

(2) The primary duties of these employees are directly involved in and critical to the operation of the air traffic control system on a national basis.

(e) This premium pay is 5 percent of the applicable rate of basic pay.

(f) The effective date for the operational responsibility differential is retroactive to August 3, 1981.

(g) Employees determined eligible for the operational responsibility differential shall be paid all premium pay in excess of the premium pay limitation for any pay period during which the operational responsibility differential is payable.

**(2) 1.6 percent Currency Differential.**

(a) Staff air traffic control specialists and supervisors or managers above first-line supervisors in air traffic control center and terminals are eligible for the 1.6 percent currency differential. This differential will be paid provided they maintain a current medical certification and control live traffic in accordance with proficiency standards established by the Office of the Associate Administrator for Air Traffic (see Order 2130.4G, Air Traffic Training).

(b) This differential does not apply to GS-2152 Air Traffic Control Specialists in air traffic control centers or terminals officially assigned to positions requiring operational or full-performance control duties or first-level supervisory duties. These employees are required, as a conditions of employment, to be certified as proficient and medically qualified to perform duties including the separation and control of live traffic.

(c) This premium pay is 1.6 percent of the applicable rate of basic pay.

(d) This premium pay is effective October 3, 1982.

**(3) 10 Percent On-The-Job Training (OJT) Premium Pay.**

(a) All nonsupervisory GS-2152 Air Traffic Control Specialists in air traffic control centers and terminals who are assigned to give OJT to any air traffic control specialist whose OJT directly involves the separation and control of live traffic are eligible for OJT premium pay.

(b) Withdrawn--CHG.

(c) This premium pay is 10 percent of the applicable hourly rate of basic pay for the number of hours and/or minutes during which the OJT is conducted.

(d) This premium pay is effective October 3, 1982.

**(4) Premium Pay for Working Without a Meal Period Break.**

(a) Premium pay will be paid to any supervisory or nonsupervisory air traffic control specialist assigned to an air traffic control center, terminal, or flight service station who, while working a regularly

scheduled 8-hour period of service, is required by his/her supervisor to work during the 4th through the 6th hour of such period without an uninterrupted break of 30 minutes for a meal. If, however, an employee elects and is released to take the 30 minute uninterrupted meal break either earlier or later than the 4th through the 6th hour, this break constitutes the employee's meal break for the 8-hour shift and he/she will not be eligible for the meal period premium pay. To be eligible for this premium pay, an employee must be in a duty status for the 8-hour period.

(b) This premium pay will be 50 percent of the one-half o the applicable hourly rate of basic pay.

(c) This premium pay is effective October 3, 1982.

**(5) Pay for Training in Excess of 40 Hours.**

(a) An individual training to be an air traffic controller will, during the period of such training, be paid at the applicable rate of basic pay for the hours of training ordered or approved in excess of 40 hours in an administrative workweek.

(b) This provision is effective October 3, 1982. (SEE paragraph 4e (7) for further guidance on this provision.)

**(6) Retired Military Personnel.**

(a) The retired or retainer pay of a former member if a uniformed service who is on a temporary appointment performing duties in the operation of the air traffic control system at an air traffic control center or terminal or training others to perform such duties shall not be reduced for the duration of such temporary employment with the FAA.

(b) This provision is retroactive to August 3, 1981, and ends December 31, 1988.

(c) To be eligible for no reduction in retired or retainer pay, a former member of a uniformed service must be performing covered duties at an air traffic control center or terminal or training other individuals to perform such duties. Eligibility ceases of the former member if a uniformed service is assigned to perform noncovered duties. Similarly, an otherwise eligible former member of a uniformed service becomes eligible for no reduction in retired or retainer pay when assigned covered duties.

(d) Military retirees occupying GS-2152 air traffic control positions are eligible for the operational responsibility differential, currency differential, OJT premium pay, and premium pay for working without a meal break in accordance with the same criteria applicable to other GS-2152 employees.

**(7) Reemployed Annuitants**

(a) A GS-2152 employee serving as a reemployed annuitant, who applied for retirement or retired on or before December 31, 1986, and performs duties in the operation of the air traffic control system at an air traffic control center or terminal, or trains other individuals to perform such duties, shall not have his/her salary reduced by the amount of his/her annuity.

(b) An employee serving as a reemployed annuitant shall not have his/her salary reduced by the amount of his/her annuity if he/she applied for retirement or retired on or before December 31, 1986, and performs duties vital to the successful operation and maintenance of the air traffic system and this the duties are an integral part of that system. This includes duties such as:

1. Processing flight progress strips;
2. Making entries into the air traffic control computer system;
3. Receiving and distributing weather information;
4. Receiving and transferring flight data from and to other air traffic control facilities;
5. Updating and sequencing flight progress strips; and
6. Occasionally providing instruction concerning the duties listed above.

(c) This provision is retroactive to August 3, 1981. However, effective August 15, 1985, the basic salary (excluding premium pay) plus the annuity received in any pay period is limited to the rate payable for Level V of the Executive Schedule. this limitation is calculated on hourly rates.

(d) To be eligible for no annuity offset, the reemployed annuitant must be performing covered duties at an air traffic control center or terminal or training other individuals to perform such duties. Eligibility ceases if the reemployed annuitant is assigned to perform noncovered duties. Similarly, and otherwise eligible reemployed annuitant becomes eligible for no annuity offset when assigned covered duties.

(e) The no annuity offset provision expires December 31, 1988.

(f) All reemployed annuitants occupying GS-2152 Air Traffic Control Specialist positions (regardless or whether they retired or applied for retirement on or before December 31, 1986) are eligible for the operational differential, currency differential, OJT premium pay, and premium pay for working without a meal break in accordance with the same criteria applicable to nonannuitants.

**(8) Individuals Under Contract.** Individuals under contract with the FAA are not covered by any provisions of this law.

**b. Airway Facilities Coverage.**

**(1) 5 Percent Operational Responsibility Differential**

(a) Airway facilities employees, GS-10 and above, and GS-10 and above, located at Airway Facilities Sectors and assigned system or subsystem maintenance, operations, training, or supervisory/managerial responsibility in the air traffic control system are eligible for the 5 percent operational responsibility differential.

(b) Airway facilities employees at GS-9 located at airway facilities

sectors who, as a normal part of their duties and on a regular and recurring basis, INDEPENDENTLY test, evaluate, analyze, troubleshoot, operate or maintain national airspace system (NAS) systems, subsystems, or equipment and/or NAS support systems, subsystems, or equipment. Initial eligibility determinations based on the above coverage criteria for employees at the GS-9 level will be made by the sector manager and must be approved by the regional director, who may redelegate that authority no lower than the airway facilities division manager.

(c) Procedures for determining which supervisory and nonsupervisory employees, GS-10 and above, assigned to the National Airway Engineering Field Support Sector located at the Aeronautical Center and the National Automation Engineering Field Support Sector located at the FAA Technical Center are eligible for the 5 percent operational responsibility differential.

1. Certain employees assigned to these two national sectors have, as a primary part of their duties, the operational responsibility to work onsite in airway facilities sectors to resolve problems encountered with new or modified operational equipment and maintenance of computer software programs essential to air traffic control system operations.

2. Employees in these two organizations who are required to spend time in travel status providing onsite operational assistance at airway facilities sectors will receive the operational responsibility differential for each day they are in official travel status.

(d) Occupational groups within the coverage criteria identified in paragraph 4b(1)(a), (b) and (c) may include: electronics technicians; engineers and engineering technicians; computer systems analyst; computer operators; and a variety of Wage Grade employees and their supervisors.

(e) Airway facilities sector employees whose primary duties do not directly involve the operation or maintenance of NAS systems, subsystems, or equipment and/or NAS support systems, subsystems, or equipment are not covered by the operational responsibility differential. The noncovered employees include facilities and equipment and field maintenance party/special maintenance project personnel responsible for construction and installation, maintenance of buildings, grounds and structures, and other employees engaged in various nonoperational support functions such as supply, administrative support, etc.

(f) To ensure agencywide consistency of coverage determinations, regions and centers will be required to identify all airway facilities employees to be covered except those who clearly meet the criteria in paragraph 4b(1). These determinations will be reviewed for consistency by the Director, Systems Maintenance Service (ASM-1).

(g) Withdrawn--CHG.

(h) Employees determined eligible for the operational responsibility differential shall be paid all premium pay in excess of the premium

pay limitation for any pay period during which the operational responsibility differential is payable.

c. **Aviation/Flight Standards Coverage.**

(1) 5 Percent Operational Responsibility Differential

(a) Permanently assigned flight inspection crewmembers occupying positions classified at GS-11 and above at a flight inspection field office are eligible for this differential. This includes only the following designed crewmembers:

1. Flight Inspection Pilots.

2. Co-Pilots

3. Airborne Technicians

4. Flight Engineers.

(b) Coverage determinations of flight inspection crewmembers must be approved by the Directors, Aviation Standards National Field Office (AVN-1).

(c) Procedures for determining which flight test pilots are eligible for the operational responsibility differential.

1. Flight Test Pilots, GS-2181, both supervisory and nonsupervisory, occupying positions classified at GS-12 or above and located in the regions, the Aeronautical Center, or the Technical Center. Coverage determinations for flight test pilots must be approved by the Associate Administrator for Aviation Standards (AVS-1).

2. Employees to be covered are those occupying positions with duties which are unusually taxing and critical to the advancement of aviation safety, and which involve flight tests necessary in the course of aircraft certification to evaluate and establish the design limits of the vehicle.

(d) The effective date for the operational responsibility differential is August 3, 1981.

(e) Employees determined eligible for the operational responsibility differential shall be paid all premium pay in excess of the premium pay limitation for any pay period during with the operational responsibility differential is payable.

d. **FAA Academy Coverage.**

(1) Coverage Determination and Eligibility Criteria. In accordance with section 156 of Public Law 97-377, employees of the Academy may be eligible for the operational responsibility differential of they occupy positions which require them to be actively engaged in, or directly responsible for, training employees to perform the duties of a covered position as described in paragraph 4a, b, or c. Coverage applies to individual instructors actively engaged in training controllers for work at an air traffic control center, tower, or flight service station; or training airway facilities employees for work at a sector; or training flight inspection crewmembers for work at a sector; or training airway facilities employees for work at a sector; or training flight inspection crewmembers for work at a flight inspection field office. Coverage also extends to Academy

managers and supervisor who have direct responsibility for the types of training identified above. Employees directly responsible for the development and revision of course materials for these types of training are also covered. In order to be eligible, these employees must have occupied a covered field position, as described in paragraph 4a, b, or c, immediately prior to assuming a covered position at the Academy.

(2) **Employees Covered.** Employees occupying the following positions at the Academy should be covered if they otherwise meet he criteria defined in paragraph 4d(1).

(a) GS-2152 positions in the Air Traffic Branch through the branch manager level. This includes supervisors and managers in the branch who have direct responsibility for covered work but may currently be classified in positions outside the GS-2152 series.

(b) GS-1710 and GS-1712 positions in instructor or development/revision functions in the Air Traffic and Airway Facilities Branches.

(c) GS-802, GS-850, GS-856 positions in the Airway Facilities Branch through the branch manager level. This includes supervisors and managers who have direct responsibility for covered work but may currently be classified outside the above series.

(d) GS-2181 and GS-856 positions in the Airspace Systems Section, Flight Inspection Unit, Flight Standards Branch.

(3) **Employees Not Covered.** Employees occupying the following positions are excluded from coverage:

(a) Managerial positions above the branch level.

(b) Special assistant and staff positions which are not actively engaged in, nor directly responsible for, covered work.

(c) Administrative and technical support positions; e.g., GS-301, GS-303, GS-312, GS-318, GS-322, and GS-1702 positions.

(d) All positions in the following organizational units: International Liaison and Student Services Staff, Training Methods and Operations Branch, Airport and Logistics Branch, and Superintendent's Staff.

(4) **Guidance.**

(a) If an employee in a covered position at the Academy has a permanent change in assignment to a noncovered position (e.g., return and, if the employee should later return to the Academy, he/she would not become eligible. In effect, eligibility has been lost by that permanent change in assignment.

(b) The provisions on details are the same as those applicable to her employees covered by this order. If an employee is detailed to a noncovered position, the employee retain his/her eligibility for the 90-day grade period. If at any time that eligibility is lost due to a detail to a noncovered position exceeding 90 days, the employee, upon return to a covered position at the Academy, regain his/her eligibility.

(c) An employee who is reassigned or promoted at the Academy from a covered position to another covered position continued eligibility for coverage. An employee who is reassigned or promoted to a noncovered position loses eligibility and, even if subsequently reassigned or promoted at the Academy to a covered position, he/she is no longer eligible for coverage.

(5) **Effective Date.** The effective date for FAA Academy coverage is retroactive to August 3, 1981.

e. **Other Coverage Conditions.**

(1) **General.** The following regulations apply to "covered" position or duties (i.e., eligible for the 5 percent operational responsibility differential and other provisions of the law, as appropriate) and "noncovered" positions or duties (i.e., not eligible for the 5 percent operational responsibility differential, or other provisions of the law, as appropriate).

(2) **Reassignments, Downgrade, or Promotions.**

(a) Employees being reassigned, downgraded, or promoted from one covered position to another covered position will be covered by all provisions of the law for which the new position makes them eligible.

(b) Employees being reassigned, downgraded, or promoted from a covered to a noncovered position will lose their coverage on the effective date of the personnel action.

(c) Employee being reassigned, downgraded, or promoted from a noncovered to a covered position will be covered by all the provisions of the law for which the new position makes them eligible on the effective date of the personnel action.

(d) Operational air traffic control specialists (i.e., certified on at least two positions of operation) who are reassigned or demoted to GS-2152 positions under the agency's "Up or Out" policy (Order 330.30B, Employment Policy for Developmental Air Traffic Control Specialists) will continue to receive the operational responsibility differential unless such reassignment or demotion places the employee in a noncovered position.

(e) Air traffic control specialists who have not achieved operational status and are reassigned or demoted to another air traffic control facility as a result of failure to achieve operational status under the agency's "Up or Out" policy will not be entitled to an operational responsibility differential until they have attained operational status or been certified at no lower then GS-9 in a flight service station.

(3) **Details and Temporary Assignments.**

(a) Employees detailed or temporarily assigned from a covered to a noncovered position will continue to receive the provisions of the law for which eligible for a period not to exceed 90 calendar days.

(b) Employees detailed from a noncovered to a covered position will receive the operational responsibility differential and other provisions of the law for which they are eligible while performing duties of the covered position, beginning on the effective date of the personnel action and terminating with the effective date of the

personnel action returning them to their position of record, provided that the detail is for at least 30 days.

(c) These rules will also apply to employees who worked temporarily in covered positions on or after August 3, 1981, and who have returned to their positions of record.

(4) **Periods Away From Official Duties.**

(a) Employees in covered positions who are assigned to attend technical or management training specifically intended to improve performance of their duties will continue to be covered by the provisions of the law for which they are eligible for the duration of such training.

(b) Employees assigned to training of a more general nature, such as long-term, full-time academic education, will not be covered by the provisions of the law for the duration of the training.

(c) Employees on leave without pay (LWOP) or absence without leave (AWOL) are not covered by the provisions of the law for the duration of the LWOP and AWOL.

(5) **Effect of Extended Absence.**

(a) This states the effect of extended absence upon an employee's continuing eligibility to receive the 5 percent operational responsibility to receive the 5 percent operational responsibility differential. It also establishes the requirements that regional and center human resource management officers take the necessary steps to identify employees whose 5 percent differential should be terminated in accordance with the criteria herein contained.

(b) Commencing August 3, 1981, if an employee eligible to receive the 5 percent operational responsibility differential has been, or will be, on extended absence (paid or unpaid) for 90 or more consecutive calendar days, his/her eligibility to continue receiving the 5 percent differential will cease at the end of the workweek during which the 90th day occurs.

(c) If an otherwise eligible employee had been on extended absence from or before May 5, 1981, through August 3, 1981, the employee would NOT be eligible to receive the 5 percent differential on August 3, 1981.

(d) Human resource management officers are responsible for identifying any employees who should have their eligibility for the 5 percent operational responsibility differential discontinued in conformance with the above criteria. Personnel officers are also responsible for identifying any employees whose eligibility should have terminated while they were in facilities within their region and who have since left their region.

(e) Once affected employees have been identified, regional personnel management information system (PMIS) managers should coordinate with appropriate managers in their respective human resource management divisions to assure that the updated eligibility dates for these affected employees are reflected in the

PMIS and passed to the Uniform Payroll System (UPS).

(f) An employee's eligibility for the 5 percent operational responsibility differential will be reestablished as of the beginning of the workweek following his/her return to a covered position (if the return to duty in the covered position is other than a Sunday? and the meeting of any applicable criteria for eligibility.

(6) **Withdrawn--CHG.**

(7) **Pay for Air Traffic Controller Training in Excess of 40 Hours Per Week.**

(a) The authority provided by this provision does not apply to the training of flight service station specialists.

(b) The provision is applicable to training both at the FAA Academy and at an employee's facility.

(c) The first 40 hours in the administrative workweek need not have been spent in training; the test is whether training is conducted beyond the first 40 hours of the administrative workweek.

(d) If overtime under the Fair Labor Standards Act (FLSA) is otherwise available to an individual, the special authority of this provision should not be used since the "straight time" rate payable to an individual is less than the employee would be entitled to under the overtime rates provided by FLSA.

5. <u>PROCESSING ELIGIBILITY/INELIGIBILITY DETERMINATIONS.</u>

a. Request for Personnel Action, SF-52. There are a number of instances where eligibility for a differential under Public Law 97-276 may change. A Request for Personnel Action, SF-52, and the resulting Notice of Personnel Action, SF-50, should be prepared when eligibility changes. The SF-52 should be authorized, reviewed, and transmitted to the servicing human resource management division in accordance with established procedures. Changes in eligibility will include, but will not be limited to, the following circumstances. Standards remarks are to be included on the SF-52 in these instances. In addition, other personnel actions such as promotions, reassignments, demotions, details, etc., may be included. The remarks regarding eligibility for a differential should be applied to:

(1) Air traffic control specialists, GS-9 and above.

(2) Airway facilities employees, GS-9 and above and GS-10 and above.

(3) Aviation standards flight inspections crewmembers, GS-11 and above, and Flight Test Pilots, GS-2181-12 and above.

(a) <u>Remarks.</u>

1. <u>Differential Based on Position</u>.

a. <u>Remark for Eligibility: " Individual occupies covered position and is eligible for the 5-percent operational responsibility differential</u>.

b. <u>Explanation</u>: This remark should be used only for:

(1) Supervisory and nonsupervisory air traffic control specialists, GS-10 and above, assigned to an operational air traffic facility or central flow control function located in Washington, D.C. or

Jacksonville, Florida.

(2) Airway facilities employees, GS-10 and above, or GS-10 and above, located at airway facilities sectors and assigned system or subsystem maintenance, operations, training, or supervisory/managerial responsibility in the air traffic control system.

(3) Permanently assigned flight inspection crewmembers (i.e., flight inspection pilots, copilots, airborne technicians, or flight engineers), GS-11 and above, at a flight inspection field office (AVN-1 approval required for eligibility or ineligibility)

2. Differential Based on Position and Individual Certification.

a. Remarks for Eligibility.

(1) "Air Traffic Control Specialists, GS-2152-9, checked out on two positions of operational and eligible for the 5-percent operational responsibility differential."

(2) "Airway facilities sector employee, GS-9, who on a regular and recurring basis independently performs operational work and is eligible for the 5-percent operational responsibility differential."

(3) "Employee eligible for the 5-percent operational responsibility differential due to duties requiring at least 40 percent of employee's time in a quarters to be spent in a travel status providing on-site operational assistance to air traffic facilities or airway facilities sectors." (NOTE: This remark applies only to certain Aeronautical Center and Technical Center employees.)

(4) "Employee eligible for the 1.6 percent currency differential as a result of meeting operational proficiency and medical currency requirements."

(5) "Flight Test Pilot, GS-2181, either supervisory or nonsupervisory, GS-12 or above, eligible for the 5-percent operational responsibility differential due to duties which are unusually taxing and critical to the advancement of aviation safety and which involve flight tests necessary in the course of aircraft certification to evaluate and establish the design limits of the vehicle. AVS-1 approval obtained."

b. Remarks for Ineligibility:

(1) Air Traffic Control Specialists, GS-2152, not checked out on two positions of operation, and therefore, not eligible for the 5-percent operational responsibility differential."

(2) "Airway facilities sector employee, GS-9, who does not , on a regular and recurring basis, independently perform operational work and therefore is not eligible for the 5 percent operational responsibility differential."

(3) "Employee not eligible for the 5-percent operational responsibility differential because duties assigned do not require at least 40- percent of employee's time in a quarter to be spent in a travel status providing on-site operational assistance to air traffic

facilities or airway facilities sectors." (NOTE: This remark applies only to certain Aeronautical Center and Technical Center employees.)

(4) "Employee not eligible for the 1.6 percent currency differential as a result of not meeting operational proficiency or medical currency requirements."

(5) "Flight Test Pilot, GS-2181, either supervisory or nonsupervisory, GS-12 or above, not eligible for the 5-percent operational responsibility differential. Positions does not have duties which are unusually taxing and critical to the advancement of aviation safety, and position does not require flight tests to evaluate and establish the design limits of the vehicle, which are necessary in the course of aircraft certification."

3. Differential Based on Detail.

a. Remark for Eligibility: "Employee eligible for the 5-percent operational responsibility differential based on detail to a covered position in excess of 30 calendar days."

b. Remarks for Ineligibility:

(1) "Employee not eligible for (the 5-percent operational responsibility and/or the 1.6-percent currency differential, as appropriate) due to termination of detail from a covered position and return to a noncovered position." (NOTE: This remark will be used only when and SF-52 terminating a detail is necessary.)

(2) "Employee has been detailed from a covered to a noncovered position, and therefore, is not eligible for the 5-percent operational responsibility differential beginning on (provide the proper date) the 91st calendar day of this detail."

4. Differential Based on long-term Training.

a. Remark for Eligibility: Employee eligible for the 5-percent operational responsibility differential due to return from long-term training a covered position."

b. Remark for Ineligibility: "Employee not eligible for (the 5-percent operational responsibility and/or the 1.6-percent currency differential, as appropriate) due to assignment to long-term training."

5. Differential Based on Extended Leave.

a. Remark for Eligibility: "Employee eligible for the 5-percent operational responsibility differential due to return to a covered position from extended leave."

b. Remark for Ineligibility: "Employee not eligible for the 5-percent operational responsibility differential beginning on (provide the proper date), the 91st calendar day of extended leave."

c. Notice of Personnel Action, SF-50. A Notice of Personnel Action, SF-50, will be prepared documenting changes in eligibility for the operational and/or

currency differentials. Remarks on the Notice of Personnel Action will indicate eligibility/ineligibility for differentials as follows:

(1) Remarks

(a) Differential Based on Position.

1. Remark for Eligibility: "Employee eligible for the 5-percent operational responsibility differential under P.L. 97-276."

2. Remark for Ineligibility: "Employee not eligible for the 5-percent operational responsibility differential under P.L. 97-276."

(b) Differential Based on Position and Individual Certification.

1. Remarks for Eligibility:

a. "Air Traffic Control Specialists, GS-2152-9, eligible for the 5-percent operational responsibility differential under P.L. 97-276."

b. "Airway facilities employee, GS-9, eligible for the 5-percent operational responsibility differential under P.L. 97-276."

c. "Employee eligible for the 5-percent operational responsibility differential due to duties requiring at least 40 percent of time in a quarter to be spent in travel status providing on-site operational assistance to air traffic facilities sectors under P.L. 97-276."

d. "Employee eligible for the 1.6-percent currency differential under P.L. 97-276."

e. "Flight Test Pilot, GS-2181, eligible for the 5-percent operational responsibility differential under P.L. 97-276."

2. Remarks for Ineligibility:

a. "Air Traffic Control Specialist, GS-2152, not eligible for the 5-percent operational responsibility differential under P.L. 97-276."

b. "Airway facilities employee, GS-9, not eligible for the 5-percent operational responsibility differential under P.L. 97-276."

c. "Employee not eligible for the 5-percent operational responsibility differential due to duties requiring less than 40 percent of time in a quarter to be spent in travel status providing on-site operational assistance to air traffic facilities or airway facilities sectors under P.L. 97-276."

d. "Employee not eligible for the 1.6-percent currency differential under P.L. 97-276."

e. "Flight Test Pilot, GS-2181, not eligible for the 5-percent operational responsibility differential under P.L. 97-276.

(c) Differential Based on Detail.

1. Remark for Eligibility: "Employee eligible for the 5 percent operational responsibility differential based on a detail to a covered position under P.L. 97-276."

2. Remarks for Ineligibility:

a. "Employee not eligible for (the 5-percent operational responsibility and/or the 1.6-percent currency differential, as appropriate)under P.L. 97-276, due to termination of a detail to a covered position."

b. "Employee not eligible for the 5-percent operational responsibility differential under P.L. 97-276, based on reaching (provide the proper date), the 91st calendar day of a detail to a noncovered position."

(d) Differential Based on Long-Term Training.

1. Remark for Eligibility: "Employee eligible for the 5-percent operational responsibility differential under P.L. 97-276, based on return to a covered position from long-term training."

2. Remark for Ineligibility: "Employee not eligible for (the 5-percent operational responsibility and/or the 1.6-percent currency differential, as appropriate) under P.L. 97-276, due to assignment to long-term training."

(e) Differential Based on Extended Leave.

1. Remark for Eligibility: Employee eligible for (the 5-percent operational responsibility and/or the 1.6-percent currency differential, as appropriate) under P.L. 97-276, due to return to a covered position from extended leave."

2. Remark for Ineligibility: "Employee not eligible for the 5-percent operational responsibility differential under P.L. 97-276 on (provided the proper date), the 91st calendar day of extended leave."

NOTE: The Personnel Management Division at the Aeronautical Center is delegated the authority to develop determinations for employees at the FAA Academy.

**6. ADMINISTRATION OF ELIGIBILITY/INELIGIBILITY DETERMINATIONS.**

a. Periodic Recertification of Eligibility. Some of the employees who may be eligible to receive the operational responsibility differential require an individual certification that they are performing certain duties in order to receive that differential. Employees in the positions listed below must receive recertification as to eligibility or ineligibility as follows:

(1) Flight Test Pilots, GS-2181 (annual recertification).

(2) Supervisory and nonsupervisory air traffic control specialists, GS-10 or above, in the National Automation Support Branch, Technical Center (quarterly recertification).

(3) Supervisory and nonsupervisory airway traffic control specialists, GS-10 or above, assigned to the National Airway Engineering Field Support Sector, Aeronautical Center, or the

National Automation Engineering Field Support Sector, Technical Center (quarterly recertification).

b. New Positions/Reencumbered Positions. Personnel management divisions shall determine the coverage of positions established subsequent to initial coverage determinations or for which an initial coverage determination was not made because the position was vacant. Determinations will be in accordance with coverage guidance and approval requirements published in this order. Positions for which published coverage guidance is not applicable shall be forwarded to the Director, Office of Personnel and Training, APT-1, for a determination.

c. Documentation. The personnel management divisions shall maintain all records necessary to establish eligibility. This shall include:

(1) Documentation required to certify eligibility (e.g., Associate Administrator for Aviation Standards, AVS-1, certification of Flight Test Pilots, GS-2181).

(2) Documentation necessary for the effective application of differentials and for compliance with the provisions of Public Laws 97-276, 97-377, and 98-78 and FAA implementation guidance.

H. R. Richardson
Acting Director of Personnel and Training

---

## APPENDIX 1. QUESTIONS AND ANSWERS REGARDING AIR TRAFFIC CONTROL REVITALIZATION PREMIUM PAY

1. **COVERAGE.**

a. Question. Is an annuity offset required for reemployed annuitants meeting applicable coverage criteria who, prior to August 3, 1981, retired, applied for retirement, or separated from the service while being entitled to an annuity?

Answer. No. As specified in the law, there will be no annuity offset for these individuals. This provision of the law shall be in effect for ant period ending not later than December 31m 1984, during which the Administrator determines there is an unusual shortage of air traffic controllers performing duties under the administrative authority of the Administrator.

b. Question. Are the Computer Programmers, GS-334, assigned to the air traffic service in air route traffic control centers, covered by the pay law?

Answer. No. The language of the pay law required that employees in centers and towers must be in positions classified in the GS-2152 series to be eligible for coverage.

c. Question. Are field maintenance party employees covered by the law?

Answer. No. The duties performed by these employees do not meet the intent of the law.

d. Question. Do any of the provisions of the law apply to individual on contract with the FAA?

Answer. No. This includes contract instructors in air traffic facilities.

e. Question. Are Aerospace Engineers, GS-861, who is on flight test flight eligible for the 5-percent operational responsibility differential.

Answer. No. The employee must be a flight test pilot whose position involves the performance of duties which are unusually taxing and critical to the advancement of aviation safety, and involve flight tests necessary in the course of aircraft certification to evaluate and establish the design limits of the vehicle.

f. Question. Does that provision of the law providing for payment at the employee's basic rate of pay for time spent training beyond 40 hours in an administrative workweek to be an air traffic controller apply to flight service station specialists.

Answer. No. This provision of the law applied only to those training to be air traffic controllers in the center and terminal options where there may be a need to train beyond 40 hours in an administrative workweek, either at the FAA Academy or at the facility, in order to rebuild the air traffic control system.

g. Question. Are employees located at the National Communications Center (NATCOM) covered by any of the provisions of the law?

Answer. Only those airway facilities employees in the NATCOM sector to meet the applicable coverage criteria are covered by appropriate provisions of the law.

h. Question. Are procedures specialists who periodically ride on flight inspection flights covered by the 5-percent operational responsibility differential?

Answer. No. These employees are not assigned to a flight inspection crew member position as required by the law.

I. Question. Are employees in the GS-2181 series who perform logistics flights eligible to receive the 5-percent operational responsibility differential?

Answer. No. To be eligible for the differential, employees must be either flight test pilots who meet applicable coverage criteria or assigned to a flight inspection crewmember position.

j. Question. If a reemployees annuitant who retired or applied for retirement prior to August 3, 1981, was brought back into a position making the reemployed annuitant eligible for the no annuity offset provision, but has not actually been performing the duties of the covered position, does he/she continue to be covered by the no annuity offset provision?

Answer. No. In order to be eligible for continued coverage under this provision of the law, the employee must perform the duties of the covered position for which he/she was reemployed.

k. Question. What are the requirements for receiving the 1.6-percent currency differential?

Answer. T receive the 1.6-percent differential an employee must be a GS-2152 in an air traffic facility, either terminal or center. The employee must remain medically certified and proficient in accordance with Order 3120.4F, Air Traffic Training, and any changes thereto. These provisions apply only to those employee in paragraph 140a in the same document.

l. Question. Does an otherwise eligible employee lose eligibility for the 1.6-percent currency differential when he/she control live traffic?

Answer. An otherwise eligible employee continued to receive the 1.6-percent currency differential so long as he/she occupies the position of record for which the differential was payable. If reassigned to a position requiring the employee to be operationally proficient and medically current, he/she would continue to receive the 1.6-percent currency differential through the end of the workweek during which the reassignment was effective, if the reassignment was effective on other than a Sunday.

m. Question. When an employee is detailed or temporarily assigned from a noncovered to a covered position at a higher grade level, does the employee receive the 5-percent operational responsibility differential?

Answer. In order to receive the 5-percent differential, the employee's own grade level must be at least as high as the minimum grade level specified for coverage for the position to which detailed or temporarily assigned. This, for example, a GS-7 employee detailed to a GS-2152-9 position would not receive the 5-percent differential.

n. Question. Under what circumstance does an air traffic controller stop receiving the 5 percent operational responsibility differential when promoted, reassigned, or moved to another GS-2152 position at grade GS-9 or above?

Answer. An air traffic controller

o. Question. Does the pay legislation cover only full-time, permanent employees?

Answer. No. The legislation does not limit coverage to full-time, permanent employees. Part-time FAA employees, and those with other than permanent appointments, are eligible to receive the benefits of those parts of the law for which the Administrator had determined that they are eligible.

p. Question. If an employee is temporarily promoted into a covered position, is the employee eligible for applicable premiums?

Answer. Yes. Employees temporarily promoted into a position which satisfied the requirements for coverage, and who meet any additional eligibility criteria, receive applicable benefits of the law. A temporary promotion is distinguished from a detail, where the employee's own grade level does not change.

q. Question. Does the position of clearance delivers satisfy one of the "two positions of operation" criterion for a GS-2152-9?

Answer. No. The position of clearance delivery is not a position of operation.

r. Question. Are air traffic facility managers eligible to receive the 1.6-percent currency differential.?

Answer. Provided such employees are not required to be medically current and operationally proficient in order to occupy their positions, they would be eligible for the 1.6-percent currency differential if they become medically current and operationally proficient in accordance with the requirements established by the Air Traffic Service. However, employees in facility managers positions covered by P.L. 92-297 would not be eligible for this differential, since a condition of coverage under P.L. 92-297 is that the employees be medically current and operationally proficient.

s. Question. What position(s) in a terminal or center must a reemployed annuitant, who retired or applied for retirement prior to August 3, 1981, occupy and perform the duties of, in order to be eligible for the no annuity offset provision of the legislation?

Answer. To be eligible for the no annuity offset provision of the legislation, the reemployed annuitant must occupy, and perform the duties of, a GS-2152 position in a terminal or center for which the 5-percent operational responsibility differential is payable.

t. Question. If a reemployed annuitant, who retired or applied from retirement prior it August 3, 1981, is assigned from a noncovered to a covered GS-2152 position in a terminal or center, and performs the duties of, operational responsibility differential is payable.

Answer. Yes. In the situation described, the reemployed annuitant would be eligible for the no annuity offset provision of the legislation beginning on the Sunday following the effective date of the action, if the action is effective on other than a Sunday.

---

2. **START/STOP TIMES FOR ELIGIBILITY**. The questions and answers in this section pertain to the commencement and termination dates for employees to receive applicable premiums.

a. Question. What is the effective date for coverage of applicable premiums when an employee is detailed, temporarily assigned, or permanently assigned from a noncovered to a covered position?

Answer. Coverage of applicable premiums provided by the law commences on the Sunday following the effective date of the detail, temporary assignment or permanent assignment, if effective on other than a Sunday. Coverage ceases as of the end of the workweek during which the effective data of the personnel action terminating the detail, temporary assignment or permanent assignment occurs. Therefore, whenever possible, personnel actions resulting in entitlement to a differential premium either commencing or terminating should be effective on a Sunday.

b. Question. In the rare instance when an employee's detail of 30 days or more from a noncovered to a covered position must be terminated prior to the employee having spent 30 days in the covered position, does the employee keep any applicable premium pay earned, or must the employee refund the money?

Answer. While we would expect is to be very unusual for a detail intended to last at least 30 days to be terminated early, if it did happen, the employee keeps the money for the days worked in the covered position if the detail was documented by an SF-52 and was expected to have lasted for at least 30 days. The employee continues to be covered by applicable premium until the end of the workweek during which the detail or temporary assignment is terminated. The termination of the detail should be accomplished by an SF-52.

c. Question. When does an employees, detailed or temporarily assigned from a covered position to one which is not covered, stop receiving the benefits of the covered position?

Answer. The employee continues to receive the applicable premiums associated with the covered position for a period of up to 90 calendar days. However, if the employee is still in the noncovered position beyond the 90th calendar day, the employee will remain

covered by the applicable premium through the end of the administrative workweek within which the 90th day falls.

d. Question. What criteria must be met in order for an employee detailed or temporarily assigned from a noncovered to a covered position during the retroactive period to be eligible for he 5-percent operational responsibility differential?

Answer. For this purpose, the retroactive period will run from August 3, 1981, through November 5, 1982. If during this time frame, and employee worked a total of at least 30 days in one or more covered positions, he/she will be paid the 5-percent differential for all days worked in the covered position(s).

e. Question. When does an employee stop receiving the 1.6-percent currency differential if he/she cannot meet proficiency requirements or maintain medical certification?

Answer. Coverage for the 1.6-percent currency differential continued through the end of the workweek during which either the employee is not able to meet proficiency requirements or loses his/her medical certification, either on a temporary or permanent basis.

f. Question. When does an employee at the GS-9 level, who is in a covered position but has not met the necessary eligibility criteria, begin to received the 5-percent operational responsibility differential?

Answer. The employee begins to receive the 5-percent operational responsibility differential the Sunday following the determination that he/she has met the eligibility criteria.

g. Question. When does coverage of applicable premiums cease for employees assigned to training of a general nature, such as long-term, full-time academic training?

Answer. Coverage of applicable premiums will continue through the end of the workweek during which the effective data of the training assignment occurs, if that date is other than a Sunday. Therefore, whenever possible, such training assignments should commence on a Sunday.

h. Question. Does time spent detailed from a noncovered position to a covered position, prior to August 3, 1981, count towards the 30-day aggregate total necessary for eligibility during the time frame August 3, 1981, through November 5, 1982?

Answer. No. Only time detailed from a noncovered position to a covered position since August 3, 1982, counts toward meeting the minimum eligibility criteria of 30 aggregate days in a covered position during the retroactive period of August 3, 1981, through November 5, 1982.

i. Question. When do applicable premiums cease for an employee on an undocumented detail from a covered to a noncovered position?

Answer. Just as in the case of a documented detail, the employee's premiums cease at the end of the workweek during which the 90th day of the undocumented detail occurs. (Regulations require that all details in excess of 3- days must be documented, but this was not always possible during the period following the controller's strike.)

j. Question. If an employee is temporarily promoted from a covered position to a noncovered position, does the employee continue to be eligible for applicable

premiums for 90 days.

Answer. No. The employee's eligibility ceases as of the end of the workweek during which the action occurs, if the actions is effective on other than a Sunday.

k. Question. Is there a 90-day grace period associated with the no annuity offset provision of the legislation if a reemployed annuitant, not having his/her annuity offset, is assigned to a noncovered position?

Answer. No. The reemployed annuitant's eligibility for the no annuity offset provision of the legislation ceases at the end of the workweek during which the action is effective, is effective on other than a Sunday.

l. Question. Do eligible employees continue to receive the 5-percent operational responsibility differential when they are on leave?

Answer. Employees continue to receive the 5 percent operational responsibility differential while they are in a paid leave status of less than 90 consecutive days. However, if an employee is on extended absence for 90 or more consecutive days, eligibility will stop at the end of the workweek during which the 90th day occurs. Unpaid leave is counted as part of the 90-day period. Eligibility will recommence when the employee returns to duty and meets any applicable criteria for eligibility. Employees on extended absence for 90 or more consecutive days prior to August 3, 1981, will not be eligible for the 5-percent operational responsibility differential on August 3, 1981.

---

3. **GENERAL**. The questions and answers in this section address various areas and topics.

a. Question. What premiums are payable during period of overtime?

Answer. The 10-percent OJT premium and, provided the employee's 8-hour period of service is regularly scheduled overtime for that employee, the half-hour lunch premium is also payable. The 5-percent operational, responsibility differential and the 1.6-percent currency differential are NOT paid during overtime hours, including regular days off.

b. Question. When do eligible members of the "Tiger Teams" of the National Airway Engineering Field Support Sector at the Aeronautical Center and the National Automation Engineering Field Support at the FAA Technical Center, or GS-2152 employees at grades GS-10 or above of the National Automation Support Branch at the FAA Technical Center, who meet the 40-percent criterion for coverage, receive the 5-percent operational responsibility differential?

Answer. The 5-percent operational responsibility differential is based upon an employee's applicable rate of basic pay. It is payable for all 8 hours of an employee's regularly scheduled shift, provided the employee performs covered work during the 24-hours calendar day within which the 8-hour shift occurs. It is not payable during overtime hours, including regular days off. These employees, however, would earn overtime pay for such hours.

c. Question. What premiums are included in am employee's lump sum annual leave payment?

Answer. The 5-percent operational responsibility differential and the 1.6-percent currency differential are included in an eligible employee's differential at the time of retirement or separation.

d. Question. What premiums are included in the FISA overtime pay computation?

Answer. The 5-percent operational responsibility premium, the 1.6-percent currency premium, the 10-percent OJT premium, and the half-hours lunch premium are all included in the FISA overtime pay computation.

e. Question. Do the four categories of premium pay affect deductions for retirement and life insurance?

Answer. No. Deductions for retirement and life insurance are based upon the basic rate of pay.

f. Question. Do the four categories of premium pay have any effect on the amount to be offset from a reemployed annuitant's salary?

Answer. No. The amount to be offset is based upon the basic rate of pay of those employees who had not retired or applied for retirement before August 3, 1981.

g. Question. Do any of the four premiums affect an employee's high-3 average pay for retirement purposes.

Answer. No. An employee's retirement pay is computed on basic pay and the four premiums are in addition to basic pay.

h. Question. The law provides a 5-percent operational responsibility differential for certain employees at WG-10 and above: What wage leader (WL) and wage supervisor (WS) grade is equivalent to WG-10?

Answer. The equivalent WL or WS grade is the lowest grade on the applicable WL or WS wage schedule which has a representative rate (step two) equal to or greater than the representative rate (step two) of the wage schedule applicable to the WG-10 differential?

i. Question. ARE GS-2152 employees below the journeyman level eligible to receive the 10-percent OJT differential?

Answer. Yes. Employees below the journeyman level are eligible to receive the 10-percent OJT differential provided they meet the applicable criteria.

j. Question. If an employee is reassigned from a covered to a noncovered position, and retires or separates while in the noncovered position, does the employee have any of the premiums provided by the law included in his/her lump sum leave payment?

Answer. No. The employee's position of record governs what premiums are included in the lump sum annual leave payment.

k. Question. When an employee's shift overlaps workweeks, will any earned premium pay for an interrupted meal break or for giving OJT during that sift be credited to the week during which the shift began or ended?

Answer. In the situation described, the applicable premiums would be credited to the

week during which the shift overlapping workweeks began.

l. Question. What is the relationship between receipt of the 5-percent operational responsibility differential and the pay cap?

Answer. The pay cap is lifted for each pay period, retroactive to August 3, 1981, during which an employee is paid the 5-percent operational responsibility differential.

m. Question. Is the requirement that a GS-2152-9 check out on tow position of operation before being eligible for the 5-percent for the 5-percent operational responsibility differential affected in cases where the employee is on grade retention retaining a grade above GS-9?

Answer. No. Since entitlement to premium pay is based upon the duties performed, the employee must still check out on two position of operation at the GS-9 level before being eligible for the 5-percent operational responsibility differential. When the employee becomes eligible, the 5-percent operational responsibility differential is based upon the employee's salary for his/her retained grade.

n. Question. Is it appropriate to use operational differentials in computing severance pay for eligible employees who were separated after August 3, 1981?

Answer. No. Severance pay is predicated upon bay only, and all of the extra pay provided for by the pay legislation is considered premium pay.

o. Question. Is it appropriate to pay is predictated upon based pay only, and all of the extra pay provided for by the pay legislation is considered premium pay.

Answer. No. The agency has made the determination not to include the 5-percent operational responsibility differential in the lump sum annual leave payment of fired controllers.

p. Question. If the answer to question o is no, does the same answer apply to striking controllers who were subsequently rehired?

Answer. If, by the question, you mean is the 5-percent operational responsibility differential included in the lump sum annual leave payment for controllers whose firing was reversed by FAA/DOT or the Merit Systems Protection Board, and who some time in the future retire, the answer is that their eligibility for having the differential included is the same as for any other eligible employee.

q. Question. Is it appropriate to pay operational differential on lump sum annual leave to employees in covered positions on August 3, 1981, who resigned or retired soon after that date? (These employees were not considered strikers.)

Answer. Yes, if not considered strikers, and if they meet the criterion for conclusion of the differential in their lump sum annual leave payment; i.e., the employee is receiving the differential at the time of retirement or separation.

---

4. MEAL BREAK PREMIUM. The questions and answers in this section are related to the premium for an interrupted meal break.

a. Question. Is an employee eligible for the half hour meal break premium if he/she was in a leave status for part of his/her shift?

Answer. No. The employee must be in a duty status for the full 8-hour shift in order to be eligible for the premium.

b. Question. Is there a minimum grade level which must be reached before an employee in the GS-2152 series at a center, tower, or flight service station becomes eligible for the meal break premium?

Answer. No. As long as the employee is in the GS-2152 series at a center, tower, or flight service station, he/she meets the eligibility criteria.

c. Question. If, in response to his/her request, the employee receives permission to take his/her 30-minute meal break outside of the 4th through the 6th hours of his/her shift, and that meal break is interrupted, can management reschedule the employee's meal break to the 4th through the 6th hour?

Answer. Yes. The employee's meal break can be rescheduled to the 4th through the 6th hour. However, if during these hours the employee still does not get an uninterrupted 30-minute meal break, the employee would receive the meal break premium.

d. Question. If, in response to his/her request, the employee receives permission to take his/her 30-minute meal break outside of the 4th through employee then work through the 4th the 6th hours of his/her shift, is the employee paid the lunch shift premium?

Answer. No. In accordance with the employee's request, management has met its obligation by giving the employee an uninterrupted 30-minute meal break.

e. Question. If a supervisor, without the employee's requesting it, schedules the employee for a meal break outside of the 3 hours period encompassed by the 4th through the 6th hours of the employee's shift, does the employee receive the interrupted meal break premium?

Answer. Yes. The employee will be paid the meal break premium unless the 30-minute uninterrupted meal break occurred during the 4th through the 6th hour of the employee's shift or meets the situation described in d above.

f. Question. If management offers the employee a 30-minute meal break between the 4th the 6th hours of his/her shift, and the employee chooses not to take the meal break, is the employee paid the meal break premium?

Answer. No. The employee was NOT required by management to work from the 4th through the 6th hour of his/her shift without a 30 -minute meal break but rather chose to do so.

g. Question. What hours of a schedules tour are intended by the legislation's reference to the 4th through he 6th hour?

Answer. It is the 3-hour period near the middle of an employee's 8-hour period of service, as illustrated below.

Back to AHR Policy and Guidance Homepage