No. 04-0093C
Judge Horn

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JAMES R. VANDERPOOL, THOMAS L. CAVEN, MICHELLE L. ROOT, RICHARD L. ROBERTS, THOMAS J. FUNKE, WILLIAM E. FISHER, DONALD MCMULLEN, and ROBERT MACHO,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S SUPPLEMENTAL RESPONSE BRIEF
FILED PURSUANT TO THE COURT'S JANUARY 5, 2007 ORDER

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

KATHRYN A. BLEECKER
Assistant Director

STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8TH Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0461
Fax: (202) 514-7969
Attorneys for Defendant

OF COUNSEL:

RAYMOND A. MARTINEZ
Attorney
Federal Aviation Administration
AGC-30 Personnel and Labor Law
600 Independence Ave., S.W.
Washington, D.C. 20591

February 26, 2006

# TABLE OF CONTENTS

DEFENDANT'S SUPPLEMENTAL RESPONSE BRIEF
FILED PURSUANT TO THE COURT'S JANUARY 5, 2007 ORDER . . . . . 1

ARGUMENT . . . . . 1

I. Issues And Claims That The Government Does And Does Not Concede . . . . . 1

A. Issues And Claims That The Government Concedes . . . . . 1

B. Issues And Claims The Government Does Not Concede . . . . . 2

II. Availability Pay Is Not A Form Of Operational Differential Pay . . . . . 7

III. Plaintiffs Have Failed To Establish That It Would Be Futile For Plaintiffs To Seek From The Agency The Annual Certification Is Required By Statute And Regulation Before A Plaintiff Can Receive Availability Pay Pursuant To The LEAPA . . . . . 7

A. Plaintiffs Are Not "Peremptorily Entitled" To Availability Pay . . . . . 7

B. It Is Not Futile For Each Plaintiff To Seek Certification For Availability Pay As Required By The LEAPA . . . . . 9

IV. This Court Does Not Possess Subject Matter Jurisdiction To Entertain Plaintiffs' Claims For Availability Pay Allegedly Accruing After March 31, 1996 . . . . . 15

CONCLUSION . . . . . 17

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Allen v. Merit Systems Protection Board,
127 F.3d 1074 (Fed. Cir. 1997) . . . . . . . . . . 17

Bradley v. United States,
42 Fed. Cl. 333 (1998) . . . . . . . . . . 9

Caven v. Merit Systems Protection Board,
392 F.3d 1378 (Fed. Cir. 2004) . . . . . . . . . . passim

Crowley v. United States,
398 F.3d 1329 (Fed. Cir. 2005) . . . . . . . . . . 2

Crowley v. United States,
53 Fed. Cl. 737 (2002) . . . . . . . . . . 4, 7

Diefenderfer v. Merit Systems Protection Bd.,
194 F.3d 1275 (Fed. Cir. 1999) . . . . . . . . . . 17

Doe v. United States (Doe I),
372 F.3d 1347 (Fed. Cir. 2004) . . . . . . . . . . 12, 13, 14

Doe v. United States (Doe II),
463 F.3d 1314 (Fed. Cir. 2006), petition for cert. filed Dec. 12, 2006
(No. 06-808) . . . . . . . . . . 12, 13, 14

Greenbrier v. United States,
193 F.3d 1348 (1999) . . . . . . . . . . 15

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . 13, 14, 15

Sanford v. United States,
32 Fed. Cl. 363 (1994) . . . . . . . . . . 9

Schweiker v. Hansen,
450 U.S. 785 (1981) . . . . . . . . . . 13

**TABLE OF AUTHORITIES**
**-continued-**

**CASES** **PAGE(S)**

United States v. Fausto,
484 U.S. 439 (1988) . . . . . . . . . . 2

Whitman v. Department of Transportation,
126 S. Ct. 2014 (2006) . . . . . . . . . . 8, 9

**STATUTES AND REGULATIONS**

5 U.S.C. § 5541 . . . . . . . . . . 3

5 U.S.C. § 5545a . . . . . . . . . . passim

5 U.S.C. § 5546a . . . . . . . . . . 6

5 U.S.C. § 7121 . . . . . . . . . . 10

49 U.S.C. § 40122 . . . . . . . . . . 2, 16

5 C.F.R. § 550.103 . . . . . . . . . . 3, 7

5 C.F.R. § 550.184 . . . . . . . . . . 2, 16

5 C.F.R. § 550.187 . . . . . . . . . . 2, 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JAMES R. VANDERPOOL,<br>THOMAS L. CAVEN, MICHELLE L.<br>ROOT, RICHARD L. ROBERTS,<br>THOMAS J. FUNKE, WILLIAM E.<br>FISHER, DONALD McMULLEN, and<br>ROBERT MACHO, | ) | |
| Plaintiffs,<br>v. | ) | No. 04-0093C<br>(Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RESPONSE BRIEF
FILED PURSUANT TO THE COURT'S JANUARY 5, 2007 ORDER

Pursuant to the Court's January 5, 2007 order, defendant respectfully submits its supplemental response brief. In support of our response, we rely upon the following supplemental brief, the joint stipulation of fact previously filed with the Court, the appendices filed with defendant's partial motion to dismiss and reply brief, plaintiffs' appendices filed with plaintiffs' opposition to defendant's partial motion to dismiss and plaintiffs' supplemental memorandum, and the appendix filed with this supplemental response brief.

## ARGUMENT

### I. Issues And Claims That The Government Does And Does Not Concede

#### A. Issues And Claims That The Government Concedes

The Court has ordered the Government to inform the Court of the issues and claims that it does and does not concede. In their complaint, plaintiffs allege that, pursuant to the Law

Enforcement Availability Pay Act ("LEAPA"), 5 U.S.C. § 5545a, App. 1-4,[1/] plaintiffs are entitled to availability pay for the entire period each plaintiff was a law enforcement officer. In defendant's partial motion to dismiss, and defendant's reply to plaintiffs' opposition to that motion, we established that because none of the plaintiffs were ever certified eligible to receive availability pay, pursuant to Crowley v. United States, 398 F.3d 1329 (Fed. Cir. 2005), Caven v. Merit Systems Protection Board, 392 F.3d 1378 (Fed. Cir. 2004), and 5 C.F.R. §§ 550.184 and 187, App. 17-18, the Government concedes that this Court possesses jurisdiction to entertain some of the plaintiffs' availability pay claims for the initial year of eligibility.[2/] This is the only concession the Government makes in this case.

B. Issues And Claims The Government Does Not Concede

In our partial motion to dismiss, and our reply to plaintiffs' opposition to that motion, the Government steadfastly maintained that this Court does not possess jurisdiction to entertain an availability pay claim for any year other than the initial year of eligibility because, pursuant to the LEAPA and United States v. Fausto, 484 U.S. 439 (1988), the Merit Systems Protection Board ("MSPB" or "board") possesses exclusive jurisdiction to entertain such claims.

---

1/ "App.__" refers to appendix attached to defendant's partial motion to dismiss. "Supp. App.__" refers to the supplemental appendix filed with defendant's reply to plaintiffs' opposition. "2nd Supp. App. ___" refers to the appendix submitted with this supplemental response brief. "JSOF_" refers to the joint stipulation of fact filed with defendant's partial motion to dismiss. "Pl. App.___" refers to plaintiffs' appendix filed with plaintiffs' opposition to defendant's partial motion to dismiss. "Pl. Sup. App.___" refers to the appendix submitted with plaintiffs' supplemental memorandum. "Brief_" refers to plaintiffs' supplemental memorandum submitted pursuant to the Court's January 5, 2007 order.

2/ As previously stated in our partial motion to dismiss and our response to plaintiffs' opposition, the term "initial year" refers to the initial year, prior to April 1, 1996, that a plaintiff would be eligible to receive availability pay.

Moreover, in our partial motion to dismiss, and our reply brief, we established: (1) that on April 1, 1996, pursuant to the Federal Aviation Administration's ("FAA") Personnel Management System ("PMS"), 49 U.S.C. § 40122, App. 7-9, the provisions of Title 5, United States Code, with eight exceptions, became inapplicable to the FAA, App. 8; and (2) that the LEAPA was not one of the eight exceptions. Id. Consequently, the Government does not concede that this Court possesses any subject matter jurisdiction to entertain any availability pay claim, including a claim for the first year of eligibility, that accrued after March 31, 1996.

In their supplemental memorandum, plaintiffs provide the Court with a listing that sets out: (1) the initial year each plaintiff allegedly became eligible for availability pay; and (2) the period of time each plaintiff was allegedly eligible for availability pay subsequent to that plaintiff's initial year. Brief 1-2. However, plaintiffs do not state whether the positions plaintiffs held during the relevant periods were classified as either 1801series or 1811 series. Brief 1-2.

It is beyond dispute that, in order for a plaintiff to be eligible for availability pay, that plaintiff must be a law enforcement officer ("LEO") who is a criminal investigator. 5 U.S.C. §§ 5545a(a) (2) and (b); App. 1-2. The regulations concerning the payment of premium pay, which includes availability pay, see 5 U.S.C. § 5545a(b); App. 2, provide that a criminal investigator means "a [LEO] as defined in 5 U.S.C. § 5541(3) and this section–(1) Whose position is properly classified under the GS-1811 or GS-1812 series in the General Schedule classification system based on OPM classification standards (or would be so classified if covered under that system). . . ." 5 C.F.R. § 550.103; 2nd Sup. App. 1 (emphasis supplied). This Court, after reviewing the LEAPA and 5 C.F.R. § 550.103, has specifically held that: "The defendant

has asserted, and the plaintiff has not denied, that [the plaintiff] has been classified as either in the GS-1801 or the GS-1810 series, but not in the GS-1811 or the GS-1812 series. Thus, by the plain terms of the regulation, the plaintiff does not qualify for availability pay." Crowley v. United States, 53 Fed. Cl. 737, 792 (2002) (emphasis supplied), aff'd in part on other grounds and rev'd in part on other grounds, 398 F.3d 1329, cert. denied, 126 S. Ct. 73 (2005).

In order to determine what the Government was willing to concede concerning each plaintiff, information concerning each plaintiff was extracted from FAA personnel records. 2nd Supp. App. 3-4, 11. The extracted information reveals the following:

(1) That, from October 31, 1994, through May 28, 1995, plaintiff James R. Vanderpool was a supervisory criminal investigator, series 1811.[3/] 2nd Supp. App. 5. From May 29, 1995 through March 26, 2001, Mr. Vanderpool was a supervisory investigator and internal security specialist, series 1801. Id. Therefore, the Government concedes only that this Court possesses jurisdiction to entertain Mr. Vanderpool's availability pay claim for the period October 30, 1994 through May 28, 1995, his initial period of eligibility;

---

[3/] The joint stipulation of fact previously filed with the Court states: (1) that Mr. Vanderpool was a series 1801 for the entire period he claims entitlement to availability pay; (2) that plaintiff Richard L. Roberts was a criminal investigator, series 1811, for the entire period he claims entitlement for availability pay; and (3) that plaintiff Thomas J. Funke was a criminal investigator, series 1811, for the entire period he claims entitlement to availability pay. Based upon the information provided at the time the joint stipulation of fact was prepared, defendant believed this information was correct. However, Ms. Susan J. Underwood reviewed the FAA's personnel records for this supplemental response. 2nd Supp. App. 3-4. She discovered that information concerning the classification series contained the stipulation of fact for these three plaintiffs was in error. As certified by Ms. Underwood, 2nd Supp. App. 4, 11, the information contained in defendant's submission, 2nd Supp. App. 5-11, which she personally extracted from the FAA's personnel records, 2nd Supp. App. 4, 11 , to best of defendant's knowledge and belief, accurately reflect the classification series for each position that each plaintiff held during the relevant period of time. 2nd Supp. App. 4, 11. Defendant apologizes for its inadvertent error.

(2) That, from October 31, 1994, through October 30, 1995, plaintiff Richard L. Roberts was a civil aviation security specialist, series 1801. 2nd Supp. App. 6. Consequently, because Mr. Roberts did not become a criminal investigator, series 1811, until on or about November 9, 1997, or more than one year after the LEAPA was no longer applicable to the FAA, the Government does not concede that this Court possesses jurisdiction to entertain any of Mr. Roberts's availability pay claims, including his claim for his initial year of eligibility;

(3) That, from October 31, 1994, through April 1, 1995, plaintiff Thomas J. Funke was a supervisory civil aviation security specialist, series 1801. 2nd Supp. App. 7. From April 2, 1995, through March 31, 1996, Mr. Funke was a criminal investigator, series 1811. Id. Consequently, the Government concedes only that this Court possesses subject matter jurisdiction to entertain Mr. Funke's claim for availability pay for his initial period of eligibility, i.e., April 2, 1995, through March 31, 1996;

(4) That, from October 31, 1994, through January 5, 2002, plaintiff Thomas L. Caven was a criminal investigator, series 1811. 2nd Supp. App. 8. Thus, the Government concedes only that this Court possesses subject matter jurisdiction to entertain Mr. Caven's claim for the initial period of eligibility, October 31, 1994, through October 30, 1995;

(5) That from June 7, 1998, through June 6, 1999, Ms. Michelle Root was a criminal investigator, series 1811. 2nd Supp. App. 9. However, because Ms. Root's initial year of eligibility for availability pay was more than two years after the LEAPA, was no longer applicable to the FAA, the Government does not concede that this Court possesses subject matter jurisdiction to entertain any of Ms. Root's claims, including her availability pay claim for her initial year of eligibility;

(6) That from October 31, 1994, through March 25, 2001, plaintiff William E. Fisher was a criminal investigator, series 1811. 2nd Supp. App. 10. Therefore, the Government concedes only that the Court possesses subject matter jurisdiction to entertain Mr. Fisher's availability pay claim for his initial period of eligibility, October 31, 1994, through October 30, 1995;

(7) That, from September 14, 1997, through October 8, 2000, plaintiff Donald McMullen was a criminal investigator, series 1811. Supp. App. 10. From October 9, 2000, through March 26, 2001, Mr. McMullen was a civil aviation security specialist, series 1801. Because Mr. McMullen's alleged initial year of eligibility began more than one year after the LEAPA was no longer applicable to the FAA, the Government does not concede that this Court possesses jurisdiction to entertain any of Mr. McMullen's claims, including his availability pay claim for his initial year of eligibility; and

(8) That, from August 16, 1998, through August 15, 1999, plaintiff Robert Macho was a criminal investigator, series 1811. 2nd Supp. App. 11. Because Mr. Macho's alleged initial year of eligibility began more than two years after the LEAPA was no longer applicable to the FAA, the Government does not concede that this Court possesses subject matter jurisdiction to entertain any of Mr. Macho's claims, including his availability pay claim for his initial year of eligibility.

Finally, even though the Government concedes that this Court possesses subject matter jurisdiction to entertain some of the claims alleged in the complaint, the Government does not concede that the Government is liable to any of the plaintiffs for availability pay. Despite the fact that some of the plaintiffs were employed prior to April 1, 1996, as criminal investigators,

GS series 1811, the burden is still upon those plaintiffs to prove that they met the other statutory and regulatory requirements entitling them to availability pay for their initial year of eligibility.

## II. Availability Pay Is Not A Form Of Operational Differential Pay

In defendant's reply to plaintiffs' opposition to our partial motion to dismiss, defendant, pursuant to 5 U.S.C. § 5546a, Supp. App. 26-27, and the October 25, 1983 FAA order implementing that statute, Supp. App. 1-25, established: (1) that air traffic controllers are the primary recipients of operational differential pay; and (2) that neither criminal investigators nor LEOs are entitled to operational differential pay. Supp. App. 2-11, 26-27. As a result, in their response memorandum, plaintiffs specifically "waive any previous claim by them that Availability Pay is a form of operational differential pay." Brief 9. Consequently, there is no need for the Government to respond further upon this issue.

## III. Plaintiffs Have Failed To Establish That It Would Be Futile For Plaintiffs To Seek From The Agency The Annual Certification Is Required By Statute And Regulation Before A Plaintiff Can Receive Availability Pay Pursuant To The LEAPA

### A. Plaintiffs Are Not "Peremptorily Entitled" To Availability Pay

In their supplemental memorandum, plaintiffs assert that it "appears undisputed that at all times relevant to Plaintiffs' claims for [availability] pay, each Plaintiff was a criminal investigator as specifically contemplated by 5 U. S.C. § 5545a (a)(2) of the Act." Brief 3. Thus, according to plaintiffs, each plaintiff "therefore occupied positions, that by virtue of the statute, peremptorily entitled the incumbent to Availability Pay." Id. Plaintiffs are wrong.

We established above, and in our other pleadings, that, for a plaintiff to be eligible for availability pay, he or she had to be a criminal investigator, series 1811. See, 5 C.F.R. § 550.103, 2nd Supp. App. 1-2; see also, Crowley, 53 Fed. Cl. at 791-92. Mr. Caven and Mr.

Fisher were criminal investigators, GS series 1811, for the entire period that they claim entitlement to availability pay. 2nd Supp. App. 8, 10. However, while Ms. Root and Mr. Macho were criminal investigators, series 1811, for the entire period they claim entitlement to availability pay, 2nd Supp. App. 9, 11, they did not become FAA employees until after April 1, 1996, or subsequent to the date the LEAPA was no longer being applicable to FAA employees. 2nd Supp. App. 9, 11. At sometime during the period to which they claim entitlement to availability pay, Mr. Vanderpool, Mr. Roberts, and Mr. Funke were not criminal investigators, series 1811, but were security specialists, series 1801. 2nd Supp. App. 5-7. For the entire period that he claims entitlement to availability pay, Mr. Mcmullen was a security specialist, series 1801. 2nd Supp. App. 10. Moreover, Mr. McMullen did not become an FAA employee until after April 1, 1996, or subsequent to the date the LEAPA was no longer applicable to FAA employees.

Once again, plaintiffs allege that the position they held automatically, i.e., "peremptorily," entitles them to availability pay. Brief 3, 9. The fact that plaintiffs now refer to the position of criminal investigator does not make this argument any less "fallacious," Caven, 392 F.3d at 1391, than when they referred to the position of law enforcement officer.

In response to plaintiffs' claim that being a LEO automatically entitled them to availability pay, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") specifically ruled that receiving availability pay "is not automatic, however, but requires compliance with the requirements of section 5545a. . . ." Caven, 392 F.3d at 1381 (emphasis supplied). Consequently, the fact that a plaintiff may have been a LEO who was a criminal investigator does result in that plaintiff being "peremptorily entitled" to availability pay. Plaintiffs must still comply with all the requirements of 5 U.S.C. § 5545a, App. 1-4, and the

applicable regulations. App. 16-18; 2nd Supp. App. 1-2.

B. It Is Not Futile For Each Plaintiff To Seek Certification For Availability Pay As Required By The LEAPA

In their supplemental memorandum, plaintiffs allege there are two reasons why it is futile to impose the certification requirement upon plaintiffs. Brief 3. First, plaintiffs take the extraordinary position that, as far as certification is concerned, neither the statute nor the regulations apply to plaintiffs. Id. Plaintiffs' second contention is that the FAA "has made it sufficiently clear that, in [the FAA's] view, the certification process does not apply to Plaintiffs' claims for retroactive Availability Pay. . . ." Brief 3-4 (emphasis supplied). Plaintiffs' arguments and contentions are without merit.

Plaintiffs' allegation that the LEAPA's certification requirement does not apply to plaintiffs has no basis in law. Plaintiffs argue that this Court has "presumptive subject matter jurisdiction to hear Plaintiffs' claims," Brief 4, because plaintiffs' claims are "rooted in a money mandating statute, [i.e., the LEAPA]." Brief 4. Plaintiffs cite Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006), to support their contention that there is "no statute or statutory scheme which strips [this Court] from its presumptive jurisdiction to hear [all of] Plaintiffs' retroactive Availability Pay claims. . . ." Brief 4.

We established above, as well as in our partial motion to dismiss, and our reply to plaintiffs' opposition to our partial motion to dismiss, that the Government concedes: (1) that the LEAPA is a money mandating statute; and (2) that this Court has limited subject matter jurisdiction to entertain some of the plaintiffs' claims for availability pay during the initial year of eligibility. Bradley v. United States, 42 Fed. Cl. 333, 335-36 (1998); see also Sanford v. United States, 32 Fed. Cl. 363, 365 (1994) (Court of Federal Claims has subject matter

jurisdiction to consider claim of a military reservist provided that the reservist qualifies, under the pertinent statute, for payment of money). The reason this Court's jurisdiction is limited is due to the fact that, once it is determined that a criminal investigator is initially entitled to availability pay, and that individual is subsequently denied certification for a follow-on year, Congress specifically mandated that the "[i]nvoluntary reduction in pay resulting from a denial of certification . . . shall be a reduction in pay for purposes of section 7512(4) of this title," i.e., the MSPB has exclusive jurisdiction to entertain an appeal from that reduction in pay. 5 U.S.C. § 5545a(e)(2), App. 2.

For this reason, there is a statutory scheme that "stripped" this Court of subject matter jurisdiction for availability pay claims beyond the initial year of eligibility. Indeed, in Whitman, the United States Supreme Court, considering the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7121, specifically ruled that: "The question . . . is not whether 5 U.S.C. § 7121 confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction given to the federal courts." Whitman, 126 S. Ct. at 2015. After the initial year of eligibility, the LEAPA removes "the jurisdiction given to [the Court of Federal Claims]." Whitman, 126 S. Ct. at 2015.

The Government has established that plaintiffs' claims clearly fit within the statutory scheme of the LEAPA. Plaintiffs were never certified eligible for availability pay. Therefore, as the Federal Circuit specifically held in Caven, the MSPB does not possess jurisdiction. Caven, 392 F.3d at 1382. Consequently, under those circumstances, the LEAPA has not removed jurisdiction from this Court. However, once a criminal investigator receives availability pay, the LEAPA and applicable regulations require the agency to annually certify that the criminal investigator is eligible to receive availability pay for each subsequent year. App. 2, 16-18.

Thus, if this Court determines that a plaintiff should receive availability pay for his or her initial year of eligibility, it is incumbent upon plaintiffs to meet the certification requirements of the LEAPA and implementing regulations, see Caven 392 F.3d at 1381, and seek certification from the agency for each follow-on year. If that certification is denied, the LEAPA has removed jurisdiction from this Court and given exclusive jurisdiction to the MSPB to entertain that reduction in pay. See 5 U.S.C. § 5545a(e)(2); App. 2.

The remainder of plaintiffs' arguments propounds the theory that it would be futile to require plaintiffs to annually certify entitlement to availability pay because plaintiffs' claims are retroactive and the FAA has no certification process in place. Brief 4-7. However, Mr. Vanderpool, Mr. Funke, Mr. Roberts, Ms. Root, Mr. Fisher, and Mr. Macho all submitted letters to the Department of Transportation's Director of the Human Resources Division seeking availability pay, i.e., seeking certification for availability pay.[4/] Pl. Supp. App. 3-12. Also, on or about April 17, 2000, Mr. Caven submitted a request for availability pay to the FAA. JSOF 17. Therefore, with the exception of Mr. McMullen, it is undisputed that all of the plaintiffs employed a process to be certified as eligible for availability pay.

It is also undisputed that neither the Department of Transportation nor the FAA certified plaintiffs as eligible to receive availability pay. Pl. Supp. App. 13-15; JSOF 18-23, Supp. App. 28-29.[5/] Plaintiffs allege that this demonstrates that the FAA has determined never to certify plaintiffs eligible for availability pay. Brief 6-7. However, because plaintiffs were never

---

[4/] The FAA is part of the Department of Transportation.

[5/] It is assumed for the purposes of this supplemental response that all plaintiffs received a written denial.

certified, these denials can only be considered the equivalent of a denial of initial certification. Therefore, if this Court finds that denial to be in error, it is then incumbent upon a plaintiff to follow the statute, and regulations, and seek certification for each follow-on year. Moreover, as plaintiffs have clearly demonstrated, it would not be difficult for a process to be established that would allow plaintiffs, as required by the LEAPA and regulations, to seek certification for a subsequent year. Pl. Supp. App. 3-12; JSOF 17.

Plaintiffs also continue to assert that, because their claims are retroactive, it would be futile to require them to comply with the certification requirements of the LEAPA and the regulations. Brief 5-6. However, as we established above, the Federal Circuit, in considering Mr. Caven's retroactive claim for availability pay, unequivocally held that the payment of availability pay "requires compliance with the requirements of section 5545a, which include certification to the agency by both the law enforcement officer criminal investigator and his superior that the officer has met the statutory requirements." Caven, 392 F.3d at 1381. There can be little doubt that facts and circumstances surrounding Mr. Caven's MSPB appeal, which resulted in the Federal Circuit's decision, are very similar, if not identical, to the facts and circumstances alleged in the complaint filed with this Court. Therefore, regardless of the fact that plaintiffs' claims are retroactive, the law of this Circuit is that, in order to receive availability pay, each plaintiff must comply with the requirements of the LEAPA, including the certification requirement. Caven, 392 F.3d at 1381.

In our reply to plaintiffs' opposition, the Government cited Doe v. United States (Doe I), 372 F.3d 1347 (Fed. Cir. 2004), and Doe v. United States (Doe II), 463 F.3d 1314 (Fed. Cir. 2006), petition for cert. filed Dec. 12, 2006 (No. 06-808). Those claims, like plaintiffs' claims,

were retroactive. Nonetheless, the Federal Circuit, consistent with its holding in Caven, held that, in order to be entitled to the compensation sought, the plaintiffs in Doe I and Doe II had to meet the requirements mandated by regulation. Doe I, 372 F.3d at 1364; Doe II, 463 F.3d at 1325.

Plaintiffs attempt to distinguish Doe I upon the grounds that there was a process in place for those plaintiffs to receive approval for their overtime. Brief 9-10. Plaintiffs also try to distinguish Doe II by asserting that those plaintiffs did not occupy a position entitling them to administratively unaccountable overtime.[6/] Brief 10. However, in Doe I and Doe II, the Federal Circuit clearly held that this Court cannot override the statutory and regulatory requirements even though a plaintiff's claim is for overtime performed in the past. Moreover, plaintiffs' own actions establish that plaintiffs did seek from the agency the certification required by the LEAPA and implementing regulations. App. 1-4, 16-18; Pl. Supp. App. 3-12; JSOF 17. Further, as discussed in detail above, the fact that a plaintiff was a criminal investigator does not relieve that plaintiff of complying with the requirements of LEAPA, including certification. Caven, 392 F.3d at 1381.

While plaintiffs attempt to distinguish the Doe cases, plaintiffs do not attempt to distinguish Schweiker v. Hansen, 450 U.S. 785 (1981) or Office of Personnel Management v. Richmond, 496 U.S. 414, 426 (1990). In the former, the Supreme Court held that the failure to comply was a failure to comply with a statutory procedural requirement "[did] not justify estopping [the Government]," because a court is not authorized to overlook a valid statute and/or

---

[6/] Indeed, during the periods they seek availability pay, some of the plaintiffs did not occupy a position that would entitle them to availability pay. 2nd Supp. App. 5-7, 10.

regulation requirement. Schweiker, 450 U.S. at 790. In Richmond, the Supreme Court ruled that "funds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute." Richmond, 496 U.S. at 432 (emphasis supplied). Therefore, the Supreme Court "[could not] accept the suggestion [like plaintiffs propound here], that the terms of a statute should be ignored based on the facts of individual cases." Id. (emphasis supplied). Consequently, when "the relevant statute by its terms excludes [a] claim, [the] remedy must lie with Congress." Id.

Based upon the above, plaintiffs' attempts to distinguish Doe I and Doe II avail them nothing. The clear and unambiguous language of the LEAPA, App. 1-4, and the implementing regulations, App. 16-18, require that plaintiffs and their supervisor certify that they met, and expect to meet, the statute's and regulation's substantial hour requirements. Thus, plaintiffs must perform the calculations set out in the statute and regulation in order to establish that they will perform an average of two hours per day of unscheduled overtime during a one year period. App. 2-3, 16. Accordingly, plaintiffs are not "peremptorily" entitled to availability pay without complying with the certification requirements of LEAPA, Caven, 392 F.3d at 1381, and, therefore, the LEAPA and implementing regulations, App. 1-4, 16-18, "by [their] terms exclude [plaintiffs'] claim[s] [for the subsequent years.]" Richmond, 496 U.S. at 432.

Finally, plaintiffs cite no authority establishing that, if this Court determines that a plaintiff should have been initially certified eligible for availability pay, it would be futile to seek certification in accordance with the statute for the follow-on years. The Federal Circuit considered the question of futility in a constitutional takings case. The court held that:

> [W]here a government entity provides procedures for obtaining . . . a final decision, a takings claim will not be ripe until the property

> Owner complies with those procedures. The failure to follow all applicable administrative procedures can only be excused in the limited circumstance in which the administrative entity has no discretion regarding the regulation's applicability and its only option is enforcement. The reason for this exception is that in such circumstances, no uncertainty remains regarding the impact of the regulation, certainty being the basis for the ripeness requirement.

Greenbrier v. United States, 193 F.3d 1348, 1359 (1999) (emphasis supplied) (citations omitted).

If this Court determines that a plaintiff should receive availability pay for the initial year of eligibility, it is not futile for that plaintiff to seek certification for a subsequent year because it is not a *fait accompli* that the agency will not certify that plaintiff as eligible for availability pay for a subsequent year. Moreover, if the agency denies certification, a plaintiff, pursuant to the LEAPA, can appeal that reduction in pay to the MSPB.

For all of these reasons, and in accordance with Greenbrier, it would not be futile for plaintiffs to comply with the LEAPA certification requirements. Accordingly, this Court cannot ignore the terms of the LEAPA "based on the facts of individual cases." Richmond, 496 U.S. at 432.

## IV. This Court Does Not Possess Subject Matter Jurisdiction To Entertain Plaintiffs' Claims For Availability Pay Allegedly Accruing After March 31, 1996

Although not required by the Court's January 5, 2007 order, plaintiffs again contend that, pursuant to the FAA's PMS, this Court possesses jurisdiction to entertain their claims for availability pay accruing after March 31, 1996. We fully briefed this issue in our partial motion to dismiss and our reply to plaintiffs' opposition to that motion. Consequently, defendant, for the most part, will not repeat those arguments here.

Plaintiffs, as they did in their opposition to our motion to dismiss, allege that no "new FAA PMS plan dealing with employee 'compensation' was promulgated at any time on or after

September 13, 1997,"[7] Brief 8, and, pursuant to the FAA PMS, personnel compensation and benefits would continue to be determined with the standards and procedures in effect on March 31, 1996. Brief 9-10. As with their other arguments, plaintiffs' contentions are without merit.

On September 30, 1997, the FAA promulgated the 1997 core compensation plan. 2nd Supp. App. 12-30. Therefore, "a new FAA PMS plan dealing with employee 'compensation' was promulgated" on September 30, 1997. Also, a portion of this core plan was devoted to premium pay and overtime. 2nd Supp. App. 24-25. There was no mention of unscheduled overtime or availability pay. 2nd Supp. App. 24-30.

We previously established that, as far as availability pay was concerned, pursuant to the 5 C.F.R. §§ 550.184 and 187, the standards and procedures in effect on March 31, 1996 required plaintiffs and their supervisor to certify that, for the initial year of eligibility, a plaintiff would meet the substantial hour requirement of the statute and the implementing regulations, App. 17-18. For each subsequent year, pursuant to the LEAPA and implementing regulation, the standards and procedures in effect on March 31, 1996, required plaintiffs and their supervisors to annually certify that a plaintiff had met, and would meet, the substantial hour requirement. App. 2, 17. However, beginning on April 1, 1996, pursuant to 49 U.S.C. § 40122, Title 5, United States Code, with eight exemptions, was no longer applicable to FAA employees. App. 8. The LEAPA was not one of the eight exceptions. Id. Therefore, on April 1, 1996, as far as FAA employees were concerned, the money mandating statute required for this Court to possess jurisdiction to entertain plaintiffs' claims, i.e., the LEAPA, no longer existed. See Allen v. Merit Systems Protection Board, 127 F.3d 1074, 1076 (Fed. Cir. 1997); see also Diefenderfer v. Merit

---

[7] We believe that plaintiffs mean September 30, 1997.

Systems Protection Bd., 194 F.3d 1275, 1278 (Fed. Cir. 1999) (only the specific sections of title 5 set out in the enumerated exceptions apply to FAA employees). Consequently, FAA Order 3550.10, Pay Administration, 2nd Supp. App. 31-35, which was in effect on March 31, 1996, set out the standards and procedures for the payment of compensation to FAA employees after that date. Id. Order 3550.1 specifically established that: "Overtime work means all hours of officially ordered or approved work performed either in excess of 8 hours in a day, OR in excess of 40 hours within the administrative workweek." 2nd Supp. App. 31, 32 (emphasis supplied) (capitalization in original). The order further set out: (1) the types of overtime that were compensable; and (2) who was entitled to overtime payment. 2nd Supp. App. 32-33. Neither unscheduled overtime, nor availability pay, nor criminal investigators, nor LEOs were included. 2nd Supp. App. 32-33.

For these reasons, pursuant to Congress's mandate, and FAA Order 3550.10, availability pay was neither a compensation nor a benefit that would have continued in full force and effect after March 31, 1996. Accordingly, for this reason, as well as all of the other reasons established in our previous pleadings, this Court does not possess jurisdiction to entertain any availability pay claim accruing after March 31, 1996, including Ms. Root's, Mr. McMullen's, and Mr. Macho's claims for their initial year of eligibility.

## CONCLUSION

For all of the reasons set forth in this supplemental response, as well as our partial motion to dismiss, and our reply to plaintiffs' opposition to our partial motion to dismiss, defendant respectfully requests that the Court grant defendant's partial motion to dismiss.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

/s/Steven J. Abelson
STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 616-0461

Attorneys for Defendant

OF COUNSEL:

RAYMOND A. MARTINEZ
Attorney
Federal Aviation Administration
AGC-30 Personnel and Labor Law
600 Independence Ave, S.W.
Washington, D.C. 20591

February 26, 2007

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, the foregoing "DEFENDANT'S SUPPLEMENTAL RESPONSE BRIEF FILED PURSUANT TO THE COURT'S JANUARY 5, 2007 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

\s\ Steven J. Abelson