# In the United States Court of Federal Claims

**No. 04-93C**
**Filed: May 6, 2008**

| | | |
|---|---|---|
| **JAMES R. VANDERPOOL, THOMAS L. CAVEN, MICHELLE L. ROOT, RICHARD L. ROBERTS, THOMAS J. FUNKE, WILLIAM E. FISHER, DONALD A. McMULLEN, and ROBERT MACHO,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | * | **Partial Motion to Dismiss; Jurisdiction; Availability Pay Claims; Law Enforcement Availability Pay Act of 1994, 5 U.S.C. § 5545a; Federal Aviation Administration Personnel Management System, 49 U.S.C. § 40122(g).** |

**Lawrence A. Berger**, Mahon & Berger, Glen Cove, New York, for the plaintiffs.

**Steven J. Abelson**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Jeanne E. Davidson**, Director, Commercial Litigation Branch, and **Kathryn A. Bleecker**, Assistant Director. Of counsel, **Raymond A. Martinez**, Federal Aviation Administration, Washington, D.C.

## O P I N I O N

**HORN, J.**

Plaintiffs have filed claims in this court for availability pay, which is "a form of premium pay for law enforcement officers designed to provide compensation for unscheduled overtime work that the employee performs or is available to perform." Caven v. Merit Sys. Prot. Bd., 392 F.3d 1378, 1379 (Fed. Cir. 2004).[1] Plaintiffs rely on the Law Enforcement Availability Pay Act of 1994 (LEAPA), Pub. L. No. 103-329, § 633, 108 Stat. 2425 (codified as amended at 5 U.S.C. § 5545a (2000)) for jurisdiction in this court.

---

[1] Thomas L. Caven is one of the eight plaintiffs in this case.

In response to the plaintiffs' complaint, the government filed a partial motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The government contends that this court lacks subject matter jurisdiction over plaintiffs' claims for availability pay accruing after their initial year of eligibility for such availability pay, because the Merit Systems Protection Board possesses exclusive jurisdiction over subsequent year claims pursuant to LEAPA provisions found at 5 U.S.C. § 5545a. Defendant also asserts that plaintiffs' claims have not been the subject of the required agency certification of entitlement to availability pay and, therefore, are premature; that availability pay is properly paid only to a federal Law Enforcement Officer who is a Criminal Investigator, and not all of the plaintiffs were Criminal Investigators for all of the periods of time claimed. Finally, defendant argues that this court does not possess jurisdiction over plaintiffs' availability pay claims accruing after March 31, 1996, the effective date of the Federal Aviation Administration Personnel Management System, Department of Transportation and Related Agencies Appropriations Act of 1996, Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (codified as amended at 49 U.S.C. § 40122 (2000)), because the FAA Personnel Management System legislation removed availability pay from the FAA pay system.

**BACKGROUND**

Congress enacted the Law Enforcement Availability Pay Act of 1994 (LEAPA), "to provide premium pay to criminal investigators to ensure the availability of criminal investigators for unscheduled duty in excess of a 40 hour work week based on the needs of the employing agency." 5 U.S.C. § 5545a(b). Availability pay under LEAPA provided premium pay to Criminal Investigators for unscheduled overtime work an officer performs, or is available to perform. See Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1379. For federal Criminal Investigators, LEAPA replaced other forms of premium pay, such as administratively uncontrollable overtime (AUO) pay, 5 U.S.C. § 5545(c)(2) (1994) and standby duty pay, 5 U.S.C. § 5545(c)(1) (1994). See 59 Fed. Reg. 66149 (Dec. 23, 1994) ("Availability pay replaces AUO pay for covered criminal investigators."); 5 C.F.R. § 550.186(a) (1995) ("Standby duty pay under [5 C.F.R.] § 550.141 and administratively uncontrollable overtime pay under [5 C.F.R.] § 550.151 may not be paid to a criminal investigator receiving availability pay.").[2]

After LEAPA's enactment on September 30, 1994, the Federal Aviation Administration (FAA) published an August 10, 1995 memorandum, in response to a question from the field on entitlement to availability pay, which stated that Criminal Investigators, a job classification all of the plaintiffs in the case currently before the court held at some point, were not entitled to availability pay. The memorandum stated:

> We recently received a request from the field for a determination on the eligibility of our employees classified in the Criminal Investigating, GS-1011, series for a new form of premium pay called "availability pay". For covered criminal

[2] This language in LEAPA's implementing regulations at 5 C.F.R. § 186(a) has remained unchanged since December 23, 1994. See 5 C.F.R. § 550.186(a) (2008).

> investigators, availability pay replaces AUO pay.
>
> Briefly stated, the implementing regulations require that three conditions must be met in order for an employee to receive availability pay: (1) the employee must be classified in the GS-1811 [criminal investigator] series; (2) the employee must be occupying a position covered by the early retirement provisions for law enforcement officers;[3] and (3) a determination must be made that the employee is expected to work, or is available to work, an annual average of 2 hours of unscheduled duty per regular work day. (bracketed material added).
>
> * * *
>
> Since none of our positions are covered under law enforcement retirement it is apparent that no position within ACS is eligible for availability pay. (While a determination under requirement number three above becomes moot, it does not appear likely, based on our experience under AUO, that a positive determination could have been made.)

Memorandum, from the Director, Office of Civil Aviation Security Operations, Federal Aviation Administration, United States Department of Transportation, subject: INFORMATION: Eligibility for Availability Pay (Aug. 10, 1995).

The FAA knew that it had personnel in Criminal Investigator positions, such as the plaintiffs in this case, but believed at the time it issued its memorandum that the positions were not covered under early retirement provisions, the second test listed immediately above, and concluded that unavailability pay, therefore, was not authorized for these positions.[4] The FAA also believed that the third requirement listed immediately above, the amount of unscheduled duty hours necessary to justify unavailability pay, was unlikely to be met by FAA Criminal Investigators.

With respect to LEAPA, defendant argues that this court lacks subject matter jurisdiction over plaintiffs' claims for availability pay accruing after their initial year of eligibility

---

[3] Congress has established a special retirement system for federal law enforcement officers (LEOs), granting LEOs entitlement to retirement pay at a younger age and with fewer years of service than other federal employees. See 5 U.S.C. § 8336(c)(1) (2000); Caven v. MSPB, 392 F.3d at 1379.

[4] Subsequent to the FAA memorandum, the Merit Systems Protection Board determined that plaintiff Thomas L. Caven was entitled to Law Enforcement Officer (LEO) status, satisfying the second condition on the FAA's list. See Caven v. Dep't of Transp., No. SE-0831-99-0270-I-1 (M.S.P.B. Oct. 15, 1999). The remainder of the plaintiffs in this case received LEO status pursuant to a Settlement Agreement with the agency. See Vanderpool, et al. v. Dep't of Transp., SE-0831-00-0350-I-1, et al., Settlement Agreement (Jan. 29, 2001).

for availability pay, because only the Merit Systems Protection Board possesses exclusive jurisdiction over subsequent year claims; that plaintiffs' claims have not been the subject of the required agency certification of entitlement to availability pay; and that not all of the plaintiffs were Criminal Investigators, eligible for availability pay, for all of the periods of time claimed by each plaintiff.

In 1996, Congress authorized the Administrator of the FAA to create a new personnel system "that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel." 49 U.S.C. § 40122(g)(1). The United States Court of Appeals for the Ninth Circuit, in the Whitman case, likened the FAA Personnel Management System legislation to the earlier Civil Service Retirement Act (CSRA) of 1978, 5 U.S.C. § 7101 et seq. (2000):

> Although the government argued, and the district court apparently agreed, that Whitman's employment rights are governed by the CSRA, the government now clarifies that it is actually the FAA Personnel Management System ("FAA System") that governs the employment rights of FAA employees. The FAA System incorporates certain relevant provisions of the CSRA through a series of laws enacted by Congress in 1996. See 49 U.S.C. § 40122(g)(2). Congress also made other CSRA provisions inapplicable to FAA employees and directed the FAA to develop a unique system of regulations to fill in the gaps, see id. § 40122(g)(1), thus establishing a "single unified personnel policy" for FAA employees. Saul v. United States, 928 F.2d 829, 833 (9th Cir. 1991) (discussing the CSRA).
>
> Like the CSRA, the FAA System is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." United States v. Fausto, 484 U.S. 439, 445, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1998) (describing the CSRA).

Whitman v. Dep't of Transp., 382 F.3d 938, 941 (9th Cir. 2004) (footnote omitted), vacated and remanded on other grounds, 547 U.S. 512 (2006) (per curiam). With respect to the FAA Personnel Management System, defendant argues that this court does not possess jurisdiction over plaintiffs' availability pay claims accruing after March 31, 1996, the effective date of the FAA legislation.

## FINDINGS OF FACT

The eight plaintiffs before this court all claim entitlement to availability pay, but have dissimilar employment histories at the FAA. The parties have stipulated to the following employment histories. James R. Vanderpool was employed as a Criminal Investigator (1811

series)[5] from October 31, 1994 through May 28, 1995, and then as an Investigations and Internal Security Specialist (1801 series)[6] from May 29, 1995 through March 25, 2001. Richard L. Roberts was employed as a Civil Aviation Security Specialist (1801 series) from October 31, 1994 through November 8, 1997, as a Criminal Investigator (1811 series) from November 9, 1997 through March 25, 2001, and again as a Civil Aviation Security Specialist (1801 series) on March 26, 2001. Thomas J. Funke was employed as a Civil Aviation Security Specialist (1801 series) from October 31, 1994 through April 2, 1995, as a Criminal Investigator (1811 series) from April 2, 1995 through March 25, 2001, and again as a Civil Aviation Security Specialist (1801 series) on March 26, 2001. Thomas L. Caven was employed as a Criminal Investigator (1811 series) from October 31, 1994 through January 6, 2002, and as a Civil Aviation Security Specialist (1801 series) on January 6, 2002. Michelle L. Root was employed as a Criminal Investigator (1811 series) from June 7, 1998 through March 25, 2001, and as a Civil Aviation Security Specialist (1801 series) on March 26, 2001. William E. Fisher was employed as a Criminal Investigator (1811 series) from October 31, 1994 through March 26, 2001. Donald A. McMullen was employed as a Criminal Investigator (1811 series) from September 14, 1997 through October 8, 2000, and as a Civil Aviation Security Specialist (1801 series) from October 9, 2000 through March 26, 2001. Robert Macho was employed as a Criminal Investigator (1811 series) from August 16, 1998 through February 10, 2001.

---

[5] The GS-1811 classification series is the Criminal Investigating Series. "This series includes positions that involve planning and conducting investigations relating to alleged or suspected violations of criminal laws. These positions require primarily a knowledge of investigative techniques and a knowledge of the laws of evidence, the rules of criminal procedure, and precedent court decisions concerning admissibility of evidence, constitutional rights, search and seizure and related issues; the ability to recognize, develop and present evidence that reconstructs events, sequences, and time elements, and establishes relationships, responsibilities, legal liabilities, conflicts of interest, in a manner that meets requirements for presentation in various legal hearings and court proceedings; and skill in applying the techniques required in performing such duties as maintaining surveillance, performing undercover work, and advising and assisting the U.S. Attorney in and out of court." U.S. Office of Personnel Management, Handbook of Occupational Groups and Families 103 (Jan. 2008); see also 5 C.F.R. § 550.103 (definition, Criminal Investigator).

[6] The GS-1801 classification series is the General Inspection, Investigation, and Compliance Series. "This series includes positions the primary duties of which are to administer, coordinate, supervise or perform inspection, investigative, analytical, or advisory work to assure understanding of and compliance with Federal laws, regulations, or other mandatory guidelines when such work is not more appropriately classifiable in another series either in the Investigation Group, 1800 or to another occupational group." U.S. Office of Personnel Management, Handbook of Occupational Groups and Families 102 (Jan. 2008).

This stipulated employment history is summarized in the following chart:

| Employee | Series | LEAPA Period Claimed |
|---|---|---|
| James R. Vanderpool | 1811 | 10/31/94 - 05/28/95 |
| | 1801 | 05/29/95 - 03/25/01 |
| Richard L. Roberts | 1801 | 10/31/94 - 11/08/97 |
| | 1811 | 11/09/97 - 03/25/01 |
| | 1801 | 03/26/01 |
| Thomas J. Funke | 1801 | 10/31/94 - 04/02/95 |
| | 1811 | 04/02/95 - 03/25/01 |
| | 1801 | 03/26/01 |
| Thomas L. Caven | 1811 | 10/31/94 - 01/06/02 |
| | 1801 | 01/06/02 |
| Michelle L. Root | 1811 | 06/07/98 - 03/25/01 |
| | 1801 | 03/26/01 |
| William E. Fisher | 1811 | 10/31/94 - 03/26/01 |
| Donald A. McMullen | 1811 | 09/14/97 - 10/08/00 |
| | 1801 | 10/09/00 - 03/26/01 |
| Robert Macho | 1811 | 08/16/98 - 02/10/01 |

On September 22, 1991, Thomas L. Caven was appointed a series GS-1811 Criminal Investigator in the Department of Transportation. On September 30, 1994, LEAPA, the Law Enforcement Availability Pay Act of 1994, was enacted to provide availability pay to Criminal Investigators for unscheduled overtime which the officer performs or is available to perform. See 5 U.S.C. § 5545a(b). On August 10, 1995, the FAA advised its employees that Criminal Investigators were not entitled to availability pay, primarily because LEAPA required that employees have law enforcement officer (LEO) retirement status, and the FAA took the position that Criminal Investigators did not meet the requirements for LEO retirement coverage. See Memorandum, from the Director, Office of Civil Aviation Security Operations, Federal Aviation Administration, United States Department of Transportation, subject: INFORMATION: Eligibility for Availability Pay (Aug. 10, 1995). On February 5, 1999, Mr. Caven petitioned the agency for LEO status, but LEO status was denied.[7]

[7] The parties have stipulated that, subsequent to Mr. Caven's request for LEO status, each of the other plaintiffs in this case also petitioned the FAA for LEO status, and all were denied LEO status by the FAA.

On July 7, 1999, Mr. Caven appealed the agency's final decision denying LEO credit to the Merit Systems Protection Board and, in an October 15, 1999 bench decision, the Board overruled the agency's final decision and concluded that Mr. Caven was entitled to LEO retirement status. See Caven v. Dep't of Transp., No. SE-0831-99-0270-I-1 (M.S.P.B. Oct. 15, 1999).[8] The agency did not appeal the Board's decision.

With the LEO retirement credit issue decided in his favor, on April 17, 2000, Mr. Caven requested availability pay pursuant to LEAPA, retroactively to LEAPA's enactment, October 1, 1994. The parties have stipulated that the FAA did not respond to Mr. Caven's initial request for availability pay. On May 22, 2000, Mr. Caven submitted a second request to the agency for availability pay. The FAA, again, did not respond.

On September 1, 2000, Mr. Caven filed an appeal with the Merit Systems Protection Board, alleging that the FAA had constructively denied his claim for availability pay. On October 10, 2000, the Board dismissed Mr. Caven's appeal, without prejudice, finding that a sufficient period of time had not yet elapsed for it to rule that the agency had constructively denied his claim. See Caven v. Dep't of Transp., No. SE-3443-00-0360-I-1 (M.S.P.B. Oct. 10, 2000).

On March 21, 2002, Mr. Caven filed a second appeal to the Merit Systems Protection Board, again contending that his claim had been constructively denied by the FAA. See Caven v. Dep't of Transp., No. SE-0752-02-0194-I-1, 2003 M.S.P.B. LEXIS 1041, at *4 (M.S.P.B. June 10, 2003). This time, Mr. Caven limited his claim for availability pay to the period from October 1, 1994 to January 4, 2002:

> the appellant stated that on March 26, 2001, the agency had converted him from his position as a GS-1811-13 Senior Criminal Investigator to a position as a GS-1801-13 Civil Aviation Security Specialist. The appellant stated, therefore, he was seeking only retroactive compensation for hours of uncompensated overtime he had worked between October 1, 1994,[9] and January 4, 2002,[10] and conceded he was not currently entitled to pay.

---

[8] Like Mr. Caven, the other seven plaintiffs in this case had sought LEO status from the agency, were denied LEO status, and appealed the agency denials to the Merit Systems Protection Board. On January 29, 2001, the FAA and the other seven plaintiffs in this case entered into a Settlement Agreement which stated that their service as Series 1811 Criminal Investigators and as Series 1801 Civil Aviation Security Specialists/Criminal Investigators, would receive LEO retirement credit. See Vanderpool, et al. v. Dep't of Transp., No. SE-0831-00-0350-I-1, et al. (Settlement Agreement Jan. 29, 2001).

[9] Mr. Caven subsequently claimed entitlement to availability pay beginning October 31, 1994, as a Series 1811 Criminal Investigator.

[10] Subsequently, the parties stipulated that Mr. Caven's position was converted from the Series 1811 Criminal Investigator to the Series 1801 Civil Aviation Security Specialist

Caven v. Dep't of Transp., 2003 M.S.P.B. LEXIS 1041, at *4 (citations omitted).

The MSPB initially found, as Mr. Caven had argued, a constructive denial of availability pay by the agency. Id. at *4. The FAA argued that Mr. Caven still did not meet the requirement for availability pay that he must either work or be available to work an annual average of two unscheduled hours each work day. Id. at *6. The MSPB proceeded to hold a merits hearing, focusing primarily on whether or not Mr. Caven met LEAPA's hourly requirement. Id. at *6. Consistent with the agency's posture before the MSPB, by letter dated June 21, 2002, while Mr. Caven's appeal before the MSPB was still pending, the FAA formally denied his request for availability pay, on the grounds that Mr. Craven did not meet LEAPA's hours requirement. Id. at *6.

Subsequently, the MSPB concluded that it was without jurisdiction to entertain Mr. Caven's appeal. Id. at *7. The MSPB found

> unpersuasive the appellant's [Mr. Caven] argument that the Board has jurisdiction over his appeal pursuant to 5 U.S.C. § 5545a(e)(2). That section states that an "Involuntary reduction in pay resulting from a denial of certification . . . shall be a reduction in pay for purposes of section 7512(4) of this title." See 5 U.S.C.A. § 5545a(e)(2) (West 1996). In a similar vein, the Office of Personnel Management's (OPM) regulations state that "an involuntary suspension of availability pay resulting from a denial or cancellation of certification . . . is a reduction in pay for the purpose of applying the adverse action procedures of 5 U.S.C. 7512 and part 752 of this chapter." See 5 C.F.R. § 550.184(e) (2003). While it is undisputed the agency finally issued a letter denying the appellant's certification for LEAP pay, that denial did not lead to either a reduction in the appellant's pay or a suspension of his availability pay.

Caven v. Dep't of Transp., 2003 M.S.P.B. LEXIS 1041, at *9 (omissions in original). Mr. Caven submitted a petition for review by the full Board, which was denied on October 31, 2003. See Caven v. Dep't of Transp., No. SE-0752-02-0194-I-1, 2003 M.S.P.B. LEXIS 1038, at *1 (M.S.P.B. Oct. 31, 2003).

Mr. Caven then appealed to the United States Court of Appeals for the Federal Circuit, which affirmed the MSPB's dismissal for lack of jurisdiction. See Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1382. The Federal Circuit agreed with the reasoning of the MSPB:

> As the Board stated in this case, "Congress has clearly granted to the Board jurisdiction to review agency denials of requests for LEO retirement credit." In reviewing denials of certification for availability pay, however, the Board's jurisdiction is far more limited. As the Board correctly indicated, it has such jurisdiction only if the denial of certification results in a "reduction in the

on January 6, 2002.

[employee's] pay, or the suspension of his availability pay."

> Under the 1994 Act, a "criminal investigator" defined as a "law enforcement officer" under 5 U.S.C. § 5545a(a)(2) is entitled to availability pay if the unscheduled overtime he works or is available to work equals or exceeds specified amounts. 5 U.S.C. § 5545a(d). Subsection (e)(1) states:
>
> > Each criminal investigator receiving availability pay under this section and the appropriate supervisory officer, to be designated by the head of the agency, shall make an annual certification to the head of the agency that the investigator has met, and is expected to meet, the requirements of subsection (d).
>
> Id. §5545a(e)(1). Subsection (e)(2) provides further:
>
> > Involuntary reduction in pay resulting from a denial of certification under paragraph [e](1) shall be a reduction in pay for purposes of section 7512(4) of this title.
>
> Id. § 5545a(e)(2). Section 7512(4), read in conjunction with section 7513(d), gives the Board jurisdiction over appeals by any employee who has been subjected to "a reduction in pay."
>
> The criminal investigator's certification to which section 5545a(e)(1) refers is that of an investigator "receiving availability pay." An "[i]nvoluntary reduction in pay" that triggers Board jurisdiction is one "resulting from a denial of [such] certification." § 5545a(e)(2). In other words, the Board's jurisdiction over denial of availability pay is limited to cases in which the certification terminates such pay that a criminal investigator was receiving. It does not extend to denials of certification that prospectively deny employees availability pay that they have not been receiving, but to which they claim entitlement.
>
> Applying these provisions, the Board correctly held that it had no jurisdiction in Caven's case. Since Caven never had received availability pay, the Department's denial of certification for such pay was not a "reduction in pay." It was a refusal to increase pay, not a reduction of it – quite a different concept.

Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380-81 (bracketed material in original; citations omitted).

On January 29, 2001, the FAA and the other seven plaintiffs in this case, not including Mr. Caven, entered into a Settlement Agreement which stated that their service as Series 1811 Criminal Investigators and as Series 1801 Civil Aviation Security Specialists/Criminal Investigators, would receive LEO retirement credit. See Vanderpool,

et al. v. Dep't of Transp., No. SE-0831-00-0350-I-1, et al. (Settlement Agreement Jan. 29, 2001).

Between February 8, 2001 and March 6, 2001, six of the seven plaintiffs who received LEO credit from the Settlement Agreement, plaintiffs Vanderpool, Funke, Roberts, Root, Fisher and Macho, submitted letters to the Department of Transportation, requesting availability pay. The record does not contain a letter from plaintiff McMullen to the FAA requesting availability pay. The record contains individual responses, dated March 15, 2001, from the Department of Transportation to plaintiffs Vanderpool, Roberts and Funke. All three letters from the Director of the Office of Human Resource Management, Office of the Secretary of Transportation, contained the same language:

> The premium pay provisions of the United States Code and the Code of Federal Regulations governing LEAP apply only to those Law Enforcement Officers covered by the cited statute and regulation, and do not apply to those employed by the Federal Aviation Administration (FAA). Therefore, you are not entitled to Law Enforcement Availability Pay.

The FAA denied Mr. Caven's request for availability pay on June 21, 2002, based on not meeting LEAPA's unscheduled duty hours requirement. Caven v. Merit Sys. Prot. Bd., 2003 M.S.P.B. LEXIS 1041, at *6. The record does not contain responses from the Department of Transportation to plaintiffs Root, Fisher and Macho.

On March 14, 2002, plaintiff Fisher received a letter from the FAA signed by FAA officials, including Gregory McLaughlin, Manager of the Federal Air Marshal Program, notifying Mr. Fisher of his selection for the position of "Civil Aviation Security Specialist (Federal Air Marshal), FV-1801-J, with the Federal Aviation Administration (FAA) effective 3/17/02." The March 14, 2002, FAA letter did not mention availability pay, but a March 17, 2002, Office of Personnel Management (OPM) form, "Notification of Personnel Action," stated that Mr. Fisher would be receiving availability pay as a Series 1801 Civil Aviation Security Specialist (Federal Air Marshal). Mr. Fisher received a second OPM "Notification of Personnel Action," dated March 24, 2002, reiterating that he would receive availability pay as a Series 1801 Civil Aviation Security Specialist (Federal Air Marshal).

On March 21, 2002, plaintiff Vanderpool filed a claim with the Merit Systems Protection Board, seeking availability pay. Mr. Vanderpool had received LEO status pursuant to the January 29, 2001 Settlement Agreement with the FAA, had requested availability pay from the FAA by letter dated February 26, 2001, had been denied availability pay by letter dated March 15, 2001 from the Office of the Secretary of Transportation and, on March 21, 2002, filed an appeal with the MSPB seeking availability pay. See Vanderpool v. Dep't of Transp., No. SE-0752-02-0192-I-1, slip op. at 1 (M.S.P.B. Aug. 30, 2002). Mr. Vanderpool's claim for availability pay was dismissed on August 30, 2002, for lack of jurisdiction. Id., slip op. At 3.

In explaining its decision to dismiss Mr. Vanderpool's appeal for lack of jurisdiction,

the MSPB held that:

> Appellant [Mr. Vanderpool] has not established the Board has jurisdiction over his appeal. He did not allege, and there is no evidence showing, that he sought the requisite certification from the appropriate supervisory officer that he had met and was expected to meet the requirement of an annual average of 2 unscheduled duty hours per day during the relevant period. Appellant also did not allege, and there is no evidence showing, that he was specifically denied such certification.

Vanderpool v. Dep't of Transp., slip op. at 3 (footnote omitted). Mr. Vanderpool did not appeal the MSPB's dismissal of his request for availability pay.

On March 21, 2002, plaintiff Root also filed a claim with the Merit Systems Protection Board, seeking availability pay. Ms. Root had received LEO status pursuant to the January 29, 2001 Settlement Agreement with the FAA, and requested availability pay from the FAA by letter dated February 16, 2001. The record does not contain a response from the FAA to Ms. Root's request for availability pay. On March 21, 2002, Ms. Root filed an appeal with the MSPB seeking availability pay. For the same reasons as in the Vanderpool case, the MSPB also dismissed Ms. Root's appeal for lack of jurisdiction on August 30, 2002. See Root v. Dep't of Transp., No. SE-0752-02-0193-I-1, slip op. at 1, 3 (M.S.P.B. Aug. 30, 2002). Ms. Root did not appeal the MSPB's dismissal of her request for availability pay.

This availability pay claims history of the eight plaintiffs in this case is summarized in the following chart:

| **Employee** | **LEO Status Awarded by** | **Availability Pay**<br><br>**FAA** | **Availability Pay**<br><br>**MSPB** | **Availability Pay**<br><br>**Federal Circuit** |
|---|---|---|---|---|
| James R. Vanderpool | Settlement Agreement | Denied by FAA Letter | Dismissed - No Jurisdiction | Did Not Appeal |
| Richard L. Roberts | Settlement Agreement | Denied by FAA Letter | Did Not Apply to MSPB | |
| Thomas J. Funke | Settlement Agreement | Denied by FAA Letter | Did Not Apply to MSPB | |
| Thomas L. Caven | MSPB Decision | Denied by FAA Letter | Dismissed - No Jurisdiction | Affirmed MSPB Dismissal |
| Michelle L. Root | Settlement Agreement | No Response from FAA | Dismissed - No Jurisdiction | Did Not Appeal |

| | | | |
|---|---|---|---|
| William E. Fisher | Settlement Agreement | No Response from FAA | Did Not Apply to MSPB |
| Donald A. McMullen | Settlement Agreement | No Request Made to FAA | Did Not Apply to MSPB |
| Robert Macho | Settlement Agreement | No Response from FAA | Did Not Apply to MSPB |

The parties have stipulated that none of the eight plaintiffs ever received availability pay from the FAA, with the exception of Mr. Fisher, who received availability pay for his new position as a Federal Air Marshal, beginning March 17, 2002. In the case before this court, Mr. Fisher claims availability pay as a Series 1811 Criminal Investigator during the period October 31, 1994 to March 26, 2001. The parties have further stipulated that:

> None of the plaintiffs and the appropriate supervisory officer ever made an initial certification attesting to the head of the agency that each plaintiff was expected "to meet the substantial hours requirement in § 550.183 during the upcoming one-year period." 5 C.F.R. § 550.184(a).

In this regard, the cited regulation at 5 C.F.R. § 183(a) (titled "Substantial hours requirement"), provides that:

> A criminal investigator shall be eligible for availability pay only if the annual average number of hours of unscheduled duty per regular workday is 2 hours or more, as certified in accordance with § 550.184. This average is computed by dividing the total unscheduled duty hours for the annual period (numerator) by the number of regular workdays (denominator).

The other cited regulation, at 5 C.F.R. § 550.184(a) (titled "Annual certification"), provides that:

> Each newly hired criminal investigator who will receive availability pay and the appropriate supervisory officer (as designated by the head of the agency or authorized designee) shall make an initial certification to the head of the agency attesting that the investigator is expected to meet the substantial hours requirement in § 550.183 during the upcoming 1-year period. A similar certification shall be made for a Criminal Investigator who will begin receiving availability pay after a period of nonreceipt (e.g., a designated voluntary opt-out period under § 550.182(e)).

Plaintiffs seek retroactive availability pay,[11] relying on, among other statutes and regulations, 5 C.F.R. § 550.184(f), which provides that: "The head of an agency (or authorized designee) may prescribe any additional regulations necessary to administer the certification requirement, including procedures for retroactive correction in cases in which a certification is issued belatedly or lapses due to administrative error." Defendant has filed a partial motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties and by the court sua sponte. Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g denied (1993)); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991); North Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 185, appeal dismissed, 226 F. App'x 1004 (Fed. Cir. 2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990) and View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.")).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff must state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." RCFC 8(a)(1); Fed. R. Civ. P. 8(a)(1). When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d 1576, 1580 (Fed. Cir.), reh'g denied and reh'g en banc denied (1997)), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. See 28 U.S.C. § 1491. The Tucker Act states:

---

[11] Count 1 of the plaintiffs' complaint seeks availability pay based on LEAPA. Count 2 of the complaint was based on a breach of contract theory, and has been withdrawn by the plaintiffs. The clerk's office shall dismiss Count 2 of the complaint, with prejudice.

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); see also Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001); see also United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Marathon Oil Co. v. United States, 374 F.3d 1123, 1126-27 (Fed. Cir. 2004), cert. denied, 544 U.S. 1031 (2005); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996). "If a statute is susceptible to a plausible reading under which sovereign immunity is not waived, the statute fails to establish an unambiguous waiver and sovereign immunity therefore remains intact." Marathon Oil Co. v. United States, 374 F.3d at 1127.

The Tucker Act confers jurisdiction on the United States Court of Federal Claims, however,"'it does not create any substantive right enforceable against the United States for money damages.'" United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir. 2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Khan v. United States, 201 F.3d 1375, 1377-78 (Fed. Cir. 2000); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); see also United States v. Testan, 424 U.S. at 400; Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff 'must assert a claim under a separate money-

mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999))); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g and reh'g en banc denied (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

Summarizing, the United States Court of Appeals for the Federal Circuit has stated that:

> The Court of Federal Claims's jurisdiction pursuant to the Tucker Act is derived from the underlying substantive law that is the subject of a suit. Samish [Indian Nation v. United States,] 419 F.3d 1355, 1364 (Fed. Cir. 2005). A substantive law provides jurisdiction only if it "can fairly be interpreted as mandating compensation by the Federal government for the damage sustained." United States v. Mitchell, 463 U.S. 206, 217, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983) ("Mitchell II"). This requirement is commonly termed as the "money-mandating" requirement. Id.; Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). The "fair interpretation" standard articulated in Mitchell II is met when a statute is "reasonably amenable to the reading that it mandates a right of recovery in damages." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003). Thus, jurisdiction exists under the Tucker Act so long as there is a "fair inference" that a statute is money-mandating. Id. at 473, 123 S. Ct. 1126; see also Samish, 419 F.3d at 1364. We have acknowledged that the jurisdictional inquiry and merits inquiry may blend together under the Tucker Act. Fisher, 402 F.3d at 1173. In Fisher we clarified the distinction between the jurisdictional and merits inquiry under the statute. 402 F.3d at 1175-76. The jurisdictional requirement is met if a statute or regulation is "money-mandating." Id. at 1175. However, a party bringing suit under the Tucker Act may then lose on the merits if he or she is not one of the persons entitled to pay under the statute or regulation. See Fisher, 402 F.3d at 1176 (citing Banks v. Garrett, 901 F.2d 1084, 1087-88 (Fed. Cir. 1990); Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991)).

Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006), cert. denied, 127 S. Ct. 1910 (2007); see also Forest Prods. Northwest, Inc. v. United States, 453 F.3d 1355, 1359 (Fed. Cir. 2006); Crowley v. United States, 398 F.3d 1329, 1334 (Fed. Cir. 2005) (The Tucker Act, 28 U.S.C. § 1491(a)(1), confers jurisdiction on this court, "[b]ut the Tucker Act alone does not create a substantive claim against the federal government for money damages."), cert. denied, 546 U.S. 1031 (2005); Martinez v. United States, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) ("The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations or executive orders. The Tucker Act does not itself provide the substantive cause of action; instead, a plaintiff must look elsewhere for the source of

substantive law on which to base a Tucker Act suit against the United States.") (internal citations omitted in original).

Jurisdiction over Availability Pay Claims

Plaintiffs seek availability pay under the Law Enforcement Availability Pay Act of 1994 (LEAPA), 5 U.S.C. § 5545a. LEAPA provides that:

> [(a)](3) the term "unscheduled duty" means hours of duty a criminal investigator works, or is determined to be available for work, that are not–
>
> > (A) part of the 40 hours in the basic work week of the investigator; or
> >
> > (B) overtime hours paid under [5 U.S.C.] section 5542[.]
>
> * * *
>
> (b) The purpose of this section is to provide premium pay to criminal investigators to ensure the availability of criminal investigators for unscheduled duty in excess of a 40 hour work week based on the needs of the employing agency.
>
> (c) Each criminal investigator shall be paid availability pay as provided under this section. Availability pay shall be paid to ensure the availability of the investigator for unscheduled duty. The investigator is generally responsible for recognizing, without supervision, circumstances which require the investigator to be on duty or be available for unscheduled duty based on the needs of the Agency. Availability pay provided to a criminal investigator for such unscheduled duty shall be paid instead of premium pay provided by other provisions of this subchapter, except premium pay for regularly scheduled overtime work as provided under [5 U.S.C.] section 5542, night duty, Sunday duty, and holiday duty.
>
> (d)(1) A criminal investigator shall be paid availability pay, if the average of hours described under paragraph [d](2)(A) and (B) is equal to or greater than 2 hours.
>
> (2) The hours referred to under paragraph [d](1) are–
>
> > (A) the annual average of unscheduled duty hours worked by the investigator in excess of each regular work day; and
> >
> > (B) the annual average of unscheduled duty hours such investigator is available to work on each regular work day upon request of the employing agency.
>
> * * *

> (e)(1) Each criminal investigator receiving availability pay under this section and the appropriate supervisory officer, to be designated by the head of the agency, shall make an annual certification to the head of the agency that the investigator has met, and is expected to meet, the requirements of subsection (d). The head of a law enforcement agency may prescribe regulations necessary to administer this subsection.
>
> (2) Involuntary reduction in pay resulting from a denial of certification under paragraph (1) shall be a reduction in pay for purposes of section 7512(4) of this title [5 U.S.C.].

5 U.S.C. § 5545a.

LEAPA is a money-mandating statute. LEAPA contains language which "can fairly be interpreted as mandating compensation by the Federal Government . . . ." Doe v. United States, 463 F.3d at 1324 (quoting United States v. Mitchell, 463 U.S. at 217). In this regard, LEAPA provides that: "(c) Each criminal investigator shall be paid availability pay as provided under this section. Availability pay shall be paid to ensure the availability of the investigator for unscheduled duty. . . . (d)(1) A criminal investigator shall be paid availability pay, if the average of hours described under paragraph [d](2)(A) and (B) is equal to or greater than 2 hours." 5 U.S.C. § 5545a(c), (d)(1). OPM's implementing regulations for LEAPA similarly state that: "(a) Each employee meeting the definition of *criminal investigator* in § 550.103, and fulfilling the conditions and requirements of 5 U.S.C. 5545a and §§ 550.181 through 550.186, must receive availability pay to compensate the criminal investigator for unscheduled duty in excess of the 40-hour workweek based on the needs of the employing agency, except as provided in paragraph (b) of this section."[12] 5 C.F.R. § 550.181 (emphasis in original). LEAPA, therefore, is a money-mandating statute, over which this court has been afforded jurisdiction by the Tucker Act, unless jurisdiction for redress of LEAPA has been statutorily vested elsewhere. As the United States Court of Appeals for the Federal Circuit stated in Worthington v. United States, 168 F.3d 24 (Fed. Cir.), reh'g denied (1999), identification of a money-mandating statute does not end the jurisdictional inquiry.

> The Supreme Court held in United States v. Fausto, 484 U.S. 439, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988), that the enactment of the CSRA [Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified in various sections of 5 U.S.C.)] operated to deprive a Tucker Act court of jurisdiction it would otherwise have over certain actions.
>
> * * *
>
> To determine the coverage of the CSRA, this court assesses the jurisdiction of the [Merit Systems Protection] Board, the primary institution for adjudicating

---

[12] The exception in paragraph (b) permits an Office of Inspector General with four or fewer Criminal Investigators to elect not to pay availability pay, and is inapplicable to the present case. 5 C.F.R. § 550.181(b).

> an employee's allegations of prohibited personnel practices under the CSRA. For example, where the Board has jurisdiction over a claim, this court has held that the Claims Court does not. See McClary v. United States, 775 F.2d 280, 282 (Fed. Cir. 1985) ("Where an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court.") The Claims Court, in turn, took this analysis a step further by applying it the other way around–if the Board does not have jurisdiction, then the Claims Court (and thus the Court of Federal Claims) does. See Shelleman v. United States, 9 Cl. Ct. 452, 458 (1986) ("[A]ny residual Tucker Act jurisdiction relating to federal personnel actions should be analyzed according to the exclusive jurisdiction prescribed in the CSRA relative to the MSPB.").
>
> * * *
>
> As previously discussed, the Board has no jurisdiction over Worthington's underlying claim and therefore, per Spezzaferro [v. Federal Aviation Administration, 24 M.S.P.R. 25 (1984)], no jurisdiction over his back pay claim. Thus, because Worthington's claim is not within the coverage of the CSRA and because it otherwise falls within the jurisdictional grant of the Tucker Act, the Court of Federal Claims has jurisdiction to adjudicate this dispute.

Worthington v. United States, 168 F.3d at 26-27.

The language of 5 U.S.C. § 5545a(e)(2) which potentially provides jurisdiction in the MSPB for LEAPA claims, states that: "(2) Involuntary reduction in pay resulting from a denial of certification under paragraph (1) shall be a reduction in pay for purposes of section 7512(4) of this title [5 U.S.C.]." This language was addressed by the United States Court of Appeals for the Federal Circuit in the Caven case.

Plaintiff Caven had unsuccessfully sought availability pay from the FAA. Mr. Caven then appealed to the MSPB, but his appeal was denied for lack of jurisdiction. The United States Court of Appeals for the Federal Circuit affirmed the MSPB determination. Reading the LEAPA language, that an "[i]nvoluntary reduction of pay resulting from a denial of certification under paragraph (1) shall be a reduction in pay for purposes of section 7512(4) of this title," 5 U.S.C. § 5545a(e)(2), the Federal Circuit stated that: "Section 7512(4), read in conjunction with section 7513(d), gives the Board jurisdiction over appeals by any employee who has been subjected to 'a reduction in pay.'" Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380. The Federal Circuit, however, agreed with the MSPB that the Board has "jurisdiction only if the denial of certification results in a 'reduction in the [employee's] pay, or the suspension of his availability pay . . . .'" Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380 (bracketed material in original; citation omitted). The Federal Circuit continued: "In other words, the Board's jurisdiction over denial of availability pay is limited to cases in which the certification terminates such pay that a criminal investigator was receiving. It does not extend to denials of certification that prospectively deny employees availability pay that they have not been receiving, but to which they claim entitlement." Id. at 1381. Applying the LEAPA provisions to Mr. Caven, the Federal Circuit concluded, "the Board correctly held that

it had no jurisdiction in Caven's case. Since Caven never had received availability pay, the Department's denial of certification for such pay was not 'a reduction in pay.' It was a refusal to increase pay, not a reduction of it – quite a different concept." Id.

Because none of the plaintiffs in this case initially received availability pay, there could be no reduction in pay, and under the Federal Circuit's binding decision, the MSPB does not possess jurisdiction over availability claims for the plaintiffs' initial LEAPA year of eligibility. See Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380. LEAPA, therefore, serves as a money-mandating statute for purposes of Tucker Act jurisdiction in this court for the initial year of eligibility for availability pay. See Bradley v. United States, 42 Fed. Cl. 333, 336 (1998) (LEAPA is a money-mandating statute, "[t]hus, jurisdiction in this court is established under the Tucker Act, 28 U.S.C. § 1491(a)(1).") (citation omitted). Although an odd result, if availability pay is ultimately received by plaintiffs for the initial LEAPA year, and if the agency denies certification for subsequent years, thereby creating an "[i]nvoluntary reduction of pay," in the language of 5 U.S.C. § 5545a(e)(2), then the MSPB and not this court possesses jurisdiction over the subsequent years of availability pay claims. See Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380-81; Nigg v. Merit Sys. Prot. Bd., 321 F.3d 1381, 1383-84 (Fed. Cir. 2003) (citing Martinez v. Merit Sys. Prot. Bd., 126 F.3d 1480, 1482 (Fed. Cir. 1997)); Bradley v. United States, 42 Fed. Cl. at 336.

Criminal Investigator

The plaintiffs' complaint addresses their Law Enforcement Officer (LEO) status:

> each of the Plaintiffs, except for Plaintiff Caven, as an incumbent of an LEO covered position, during all relevant times referred to in this complaint, were entitled to receive a form of overtime premium pay known as "Availability Pay" pursuant to the Law Enforcement Availability Pay Act (5 U.S.C. Section 5545a) ("LEAPA") beginning on October 1, 1994 when the Availability Pay statute was enacted until March 26, 2001, when the LEO status of Plaintiffs Vanderpool, Root, Roberts, Funke, Fisher, McMullen and Macho were summarily terminated by the FAA. Plaintiff Caven's claim for availability pay is from October 1, 1994 through January 4, 2002, the date his LEO status was summarily terminated by the FAA."

While plaintiffs had LEO status during the claimed periods, to be eligible for availability pay the plaintiffs also were required to be Series 1811 Criminal Investigators. LEAPA provides that: "Each criminal investigator shall be paid availability pay as provided under this section." 5 U.S.C. § 5545a(c). OPM regulations define a Criminal Investigator as a law enforcement officer "[w]hose position is properly classified under the GS-1811 or GS-1812 series in the General Schedule classification system based on OPM classification standards (or would be so classified if covered under that system) . . . ." 5 C.F.R. § 550.103 ("Definitions."). This focus on Series 1811 Criminal Investigators was defined early in the regulations implementing LEAPA. The following description was contained in the December

23, 1994 Federal Register:

> Eligibility for availability pay is limited to criminal investigators. The regulations make clear that only General Schedule (GS) employees who qualify as criminal investigators for the purpose of availability pay are those properly classified in the GS-1811 (Criminal Investigating) and GS-1812 (Game Law Enforcement) series under OPM standards. The GS-1812 series applies to criminal investigators with specialized duties and skill requirements associated with game law enforcement. Congress indicated its intent that availability pay be limited to these two classification series of employees in the conference report on the bill that was enacted as Public Law 103-329. (See House Congressional Record, September 20, 1994, page H9268)[.]

Pay Administration; Premium Pay, 59 Fed. Reg. 66,149 (Dec. 23, 1994) (reflected in 5 C.F.R. § 550.103). In subsequent briefing on this issue, plaintiffs do not dispute the necessity to be a Series 1811 Criminal Investigators.

This limitation on availability pay affects six of the eight plaintiffs, whose claims include periods of time during which they were not Series 1811 Criminal Investigators. The parties have stipulated as to plaintiffs' employment history as Series 1811 Criminal Investigators, as follows:

| Employee | Series | Time Period |
|---|---|---|
| James R. Vanderpool | 1811 | 10/31/94 - 05/28/95 |
| Richard L. Roberts | 1811 | 11/09/97 - 03/25/01 |
| Thomas J. Funke | 1811 | 04/02/95 - 03/25/01 |
| Thomas L. Caven | 1811 | 10/31/94 - 01/06/02 |
| Michelle L. Root | 1811 | 06/07/98 - 03/25/01 |
| William E. Fisher[13] | 1811 | 10/31/94 - 03/26/01 |
| Donald A. McMullen | 1811 | 09/14/97 - 10/08/00 |
| Robert Macho | 1811 | 08/16/98 - 02/10/01 |

Since plaintiffs had LEO status, and were Series 1811 Criminal Investigators during the

[13] Mr. Fisher accepted a Series 1801 Civil Aviation Security Specialist (Federal Air Marshal) position with the FAA, which included availability pay, effective March 17, 2002. The implications of this Series 1801 position receiving availability pay will be addressed below in the discussion of the FAA Personnel Management System legislation.

prescribed periods in the above chart, these are potential LEAPA claim periods.

The Federal Aviation Administration Personnel Management System

Defendant argues that the periods of time for which plaintiffs were eligible for availability pay were further curtailed by the FAA Personnel Management System, 49 U.S.C. § 40122, in that the statute eliminated availability pay for FAA employees, effective April 1, 1996.

Section 40122(g)(1) provides that:

> In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the [FAA] Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.

49 U.S.C. § 40122(g)(1) (emphasis added).

Section 40122(g)(2) continues:

> The provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1), with the exception of–
>
> (A) section 2302(b), relating to whistleblower protection, including the provisions for investigation and enforcement as provided in chapter 12 of title;
> (B) sections 3308-3320, relating to veterans' preference;
> (C) chapter 71, relating to labor-management relations;
> (D) section 7204, relating to antidiscrimination;
> (E) chapter 73, relating to suitability, security, and conduct;
> (F) chapter 81, relating to compensation for work injury;
> (G) chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage; and
> (H) sections 1204, 1211-1218, 1221, and 7701-7703, relating to the Merit Systems Protection Board.

49 U.S.C. § 40122(g)(2).

LEAPA is a Title 5 statute – 5 U.S.C. § 5545a. Therefore, section 40122(g)(2)

provides that LEAPA does not apply to the FAA after April 1, 1996, the effective date prescribed in section 40122(g)(4), since LEAPA is not on the above list of legislation that remains applicable to the FAA after that date. The United States Court of Appeals for the Federal Circuit, in Allen v. Merit Systems Protection Board, construed a related, predecessor statute, which similarly authorized the FAA to create a new personnel system, and similarly provided that Title 5 would not apply to the FAA, save for certain enumerated statutory exceptions. Allen v. Merit Sys. Prot. Bd., 127 F.3d 1074, 1075 (Fed. Cir. 1997). In that case, appellant Charles Allen argued that a Title 5 statute, 5 U.S.C. § 7513(d) (1994), which provided for appeals to the MSPB, should apply to the FAA, so he could appeal his removal from the FAA to the MSPB. Id. The Federal Circuit stated that:

> The Act clearly manifests Congress's intent to grant to the FAA the power to promulgate its own personnel system to address "the unique demands on the agency's workforce." Moreover, the Act is clear concerning the applicability of title 5 to the new FAA system: with limited exceptions, title 5 "shall not apply to the new personnel management system developed and implemented pursuant to subsection (a)"; it therefore does not apply to FAA personnel. Section 7513(d) of title 5, governing adverse action appeals to the board, does not fit within any of the stated exceptions, and it therefore no longer applies to FAA employees. Accordingly, under the FAA's new personnel management system, an FAA employee such as Allen no longer enjoys appeal rights to the board from adverse actions.[14]

Allen v. Merit Sys. Prot. Bd., 127 F.3d at 1076 (citations omitted); see also Diefenderfer v. Merit Sys. Prot. Bd., 194 F.3d 1275, 1277-78 (Fed. Cir. 1999) (construing the same related, predecessor FAA legislation to 49 U.S.C. § 40122 considered in Allen, as to whether a different Title 5 statute continued to apply, with the same conclusion, that the Title 5 statute did not apply to the FAA).

Section 40122(g)(1) contemplated the development of a personnel management system that addressed the "unique demands" on the FAA's workforce. Plaintiffs believe that in the development of a new, unique FAA Personnel Management System, availability pay did not remain excluded but was restored. Plaintiffs argue that: "The FAA personnel management system developed by the FAA pursuant to 49 U.S.C. Section 40122(g)(2), reincorporated, albeit indirectly, as binding on the FAA, the mandatory Availability Pay provisions of the Act [LEAPA], or at a minimum those provisions of the Act which deal with the mandatory payment of overtime for unscheduled irregular work." By way of support, plaintiffs point to a March 28, 1996 FAA policy document titled, "FAA Personnel

---

[14] The FAA Personnel Management System legislation was amended in 2000 to include a Title 5 statute, 5 U.S.C. § 7701 (2000), as applicable to the FAA. The statute at issue in Allen, (a 1997 case), 5 U.S.C. § 7513, provides for appeal under 5 U.S.C. § 7701, such that the result in Allen would be different today. See Pub. L. No. 106-181, Title III, §§ 307(a), 308, 114 Stat. 124, 126 (Apr. 5, 2000) (codified as amended at 49 U.S.C. § 40122(g)(2)(H) (2000).

Management System (FAA PMS)," which stated that the "FAA reserves the right to modify, add to, or delete any portion of this personnel management system, either in whole or in part, as deemed appropriate by the Administrator." Further, Chapter II of the FAA Personnel Management System policy document, titled "Compensation," and section 1 of Chapter II, titled "Base Pay, Personnel Compensation, and Benefits," provided that "Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996." FAA Personnel Management System, ch. II, § 1(b) (Mar. 28, 1996).

Plaintiffs, therefore, suggest that availability pay, which was in effect on March 31, 1996 for FAA employees, should be considered to be encompassed by the "personnel compensation" which the Administrator of the FAA decided to continue between April 1, 1996 and September 30, 1997 in the March 28, 1996 FAA Personnel Management System policy document. According to the March 28, 1996, FAA policy document, on September 30, 1997, the Administrator of the FAA was to be provided with a Compensation Revision Plan, which was to address the "premium pay structure," for the Administrator's review and approval. See FAA Personnel Management System, ch. II, §§ 1(c), 1(d)(viii), 1(e) (Mar. 28, 1996). Plaintiffs state that it is unclear whether the September 30, 1997 Compensation Revision Plan was ever approved, or even submitted.[15] Plaintiffs argue that availability pay was restored by the FAA Administrator in the March 28, 1996, FAA Personnel Management System policy document, and was never rescinded by a September 30, 1997 Compensation Revision Plan. Therefore, according to plaintiffs, availability pay was removed from the FAA by section 40122, but was restored to FAA employees by decision of the FAA Administrator, as permitted by section 40122. The court disagrees with plaintiffs' analysis.

The starting place for analysis of this issue is 49 U.S.C. § 40122, which expressly deletes LEAPA, a Title 5 statute, 5 U.S.C. § 5545a, for FAA employees, as of April 1, 1996 the effective date of section 40122. The dispositive question is whether the FAA decided to restore LEAPA for FAA Criminal Investigators. In this regard, the March 28, 1996 FAA Personnel Management System policy document, cited by plaintiffs, notes that:

FAA has the discretion to adopt the substance of any portion of Title 5 as

[15] Defendant responds that the FAA issued a document on September 30, 1997, titled, "The New FAA Compensation System." The document, provided by defendant, indicates that it was "[p]repared for The Administrator, Federal Aviation Administration by FAA Compensation Committee," and, "[a]s members of the Compensation Committee, we have reviewed the Core Compensation Plan and recommend the Administrator approve the program for implementation." No indicia of approval was found in the document or otherwise provided by defendant for the record. In any event, the Core Compensation Plan expressly mentions locality pay, cost of living allowance, recruitment bonuses, relocation bonuses, retention bonuses, physicians comparability allowance, and overtime pay, but does not expressly mention availability pay or LEAPA.

> deemed appropriate. In some instances, I [the FAA Administrator] have decided that FAA employees should be covered by the same provisions that apply to all other Federal Employees. Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system:
>
> 5 U.S.C. Section 2901-06 (Commissions, Oaths);
> 5 U.S.C. Section 3111 (Acceptance of Volunteer Service);
> 5 U.S.C. Section 3331-33 (Oath of Office);
> 5 U.S.C. Sections 5351-5356 (Student-Employees); and
> 5 U.S.C. Sections 5511-20 (Withholding Pay).

FAA Personnel Management System, § II. (Applicable Statutes) (Mar. 28, 1996). LEAPA, 5 U.S.C. § 5545a, is not on this list of Title 5 statutes which the FAA Administrator used his discretion to expressly restore as applicable to FAA employees.

Furthermore, the section of the March 28, 1996, FAA document on personnel compensation states: "<u>Except</u> <u>as</u> <u>provided</u> <u>below</u>, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996." FAA Personnel Management System, ch. II, § 1(b) (Mar. 28, 1996) (emphasis added). "[P]rovided below," is a subsection in the FAA policy document on "Premium Pay," which addresses "Overtime Pay," hours worked over 40 hours per week; "Compensatory Time Off" for religious observances; and "Sunday and Night Differential" pay. Not listed in the section on Premium Pay is availability pay, even though availability pay is considered a form of premium pay by OPM. Pursuant to OPM regulations, premium pay is defined as including "overtime, night, Sunday, or holiday work; or for standby duty, administratively uncontrollable overtime work, or availability duty." 5 C.F.R. 550.103. Availability pay, which is addressed at 5 C.F.R. §§ 550.181-550.187, is listed in the OPM regulations under "Premium Pay," 5 C.F.R. Part 550, Subpart A, as is overtime pay, night pay, pay for holiday work, pay for administratively uncontrollable work, and pay for Sunday work.[16] Plaintiffs

---

[16] Plaintiffs initially argued that section 40122 provides that, "[u]ntil July 1, 1999, basic wages (including locality pay) and operational differential pay provided employees of the Administration shall not be involuntarily adversely affected by reason of the enactment of this section . . . ." 49 U.S.C. § 40122(e). Plaintiffs then attempted to argue that operational differential pay included availability pay. The court disagrees. LEAPA, 5 U.S.C. § 5545a, was for Series 1811 Criminal Investigators, such as plaintiffs. Operational differential pay is addressed in a different statute, 5 U.S.C. 5546a (2000), titled "Differential pay for certain employees of the federal Aviation Administration and the Department of Defense." The thrust of section 5546a is differential pay for air traffic controllers, flight inspection crew members, and flight test pilot positions, at certain grade levels and in certain locations, and not for Criminal Investigators. The court concludes that availability pay is not encompassed in operational differential pay. Plaintiffs subsequently withdrew their operational differential pay argument.

have not demonstrated that the FAA Administrator restored availability pay in the March 28, 1996 policy document addressed above.

Plaintiffs also cite plaintiff Fisher's March 17, 2002 promotion to the "position of Civil Aviation Security Specialist (Federal Air Marshal), FV-1801-J with the Federal Aviation Administration (FAA)," as evidence of the agency's intent and practice to continue to provide its employees with availability pay. Plaintiffs contend that Mr. Fisher's promotion to a Civil Aviation Security Specialist (Federal Air Marshal), and ensuing entitlement to availability pay, "corroborates all of the Plaintiffs' claims that they were entitled to availability pay even after the promulgation of the new FAA Personnel Management System, because not only did the FAA believe that it could pay availability pay to its employees after April 1, 1996, under the authority of 40122(g), but, in fact, did so." (emphasis in original). However, Mr. Fisher's authorization to receive availability pay does not assist plaintiffs and, in fact, provides an example of the FAA using its discretion, and, affirmatively acting to restore availability pay, but to Federal Air Marshals.

Mr. Fisher's receipt of availability pay, and also receipt of availability pay by Joseph P. DeRoche, another Civil Aviation Security Specialist (Federal Air Marshal), brought to the court's attention by the plaintiff, is consistent with the flexibility in hiring and compensating FAA personnel stated as the purpose of the FAA Personnel Management System legislation. See 49 U.S.C. § 40122(g)(1). The FAA decision to authorize premium pay for Federal Air Marshals does not indicate that FAA made an express decision to authorize availability pay for the FAA's Criminal Investigators. The FAA described Federal Air Marshals as "a force of specially trained armed civil aviation security special agents capable of rapid deployment worldwide on U.S. air carriers." Department of Transportation, Federal Aviation Administration, FAA Order 1650.6C, ch. 1 ¶ 6 (April 25, 1996). On September 17, 1997, the FAA Administrator approved Federal Air Marshal Premium Pay, acting under the Administrator's independent authority. The record reflects that Federal Air Marshals have since migrated from the FAA to the Transportation Security Administration, and then on to the Department of Homeland Security. In any event, the record contains no post-April 1, 1996 approval documents broadly restoring availability pay for FAA Criminal Investigators, similar to the premium pay approvals for Federal Air Marshals by the FAA Administrator. Mr. Fisher and Mr. DeRoche received availability pay, not because the FAA Administrator decided to broadly restore availability pay for FAA's Criminal Investigators, but because Mr. Fisher and Mr. DeRoche were Federal Air Marshals. None of the claims of the plaintiffs in the present case are based on Federal Air Marshal status.

Given the congressional intent to free the FAA from mandatory adherence to the provisions of Title 5, including 5 U.S.C. § 5545a, the plaintiffs have the burden to show that they have a "substantive right to compensation based on the express terms of a specific statute." Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 432 (U.S. 1990). In this case, as Congress has provided the FAA Administrator with the discretionary authority to implement a personnel management system "that addresses the unique demands on the agency's workforce," 49 U.S.C. § 40122(g)(1), the plaintiffs must point to some provision in the FAA Personnel Management System policy document or other authorizing document

that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. at 217). "[T]here can be no consent by implication or by use of ambiguous language. . . . The consent necessary to waive the traditional immunity must be expressed, and it must be strictly construed." United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 659 (1947) (citations omitted). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001) (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992)); Marathon Oil Co. v. United States, 374 F.3d 1123, 1127 (Fed. Cir. 2004), cert. denied sub nom. Mobil Oil Exploration & Producing Se., Inc. v. United States, 544 U.S. 1031 (2005); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996). "If a statute is susceptible to a plausible reading under which sovereign immunity is not waived, the statute fails to establish an unambiguous waiver and sovereign immunity therefore remains intact." Marathon Oil Co. v. United States, 374 F.3d at 1127.

Although the FAA Administrator was free to reincorporate LEAPA into the FAA Personnel Management System, plaintiffs have not demonstrated that the FAA Administrator, in fact, exercised discretionary authority in such a manner. The court finds that LEAPA, 5 U.S.C. § 5545a is a Title 5 statute removed from the FAA, as of the April 1, 1996, effective date of 49 U.S.C. § 40122(g), and not restored as to FAA Series 1811 Criminal Investigators.

The stipulated employment history as Series 1811 Criminal Investigators, as constrained by the April 1, 1996 effective date of the FAA Personnel Management System legislation, is summarized in the following chart, and reflects the period of potential LEAPA entitlement for plaintiffs, if the plaintiffs could demonstrate that the unscheduled duty hours requirement, discussed below, had been met:

| **Employee** | **Series** | **Time Period** |
|---|---|---|
| James R. Vanderpool | 1811 | 10/31/94 - 05/28/95 |
| Richard L. Roberts | 1811 | None |
| Thomas J. Funke | 1811 | 04/02/95 - 03/31/96 |
| Thomas L. Caven | 1811 | 10/31/94 - 03/31/96 |
| Michelle L. Root | 1811 | None |
| William E. Fisher | 1811 | 10/31/94 - 03/31/96 |
| Donald A. McMullen | 1811 | None |

| | | |
|---|---|---|
| Robert Macho | 1811 | None |

The above chart reflects that Mr. Vanderpool served as a Series 1811 Criminal Investigator for the period 10/31/94 - 05/28/95, all of which was served before the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, Mr. Vanderpool may recover availability pay for this period, from 10/31/94 - 05/28/95, if he can demonstrate the requisite unscheduled duty hours, addressed below.

The first "None" entry reflected in the above chart is a result of Mr. Roberts serving as a Series 1811 Criminal Investigator for the period 11/09/97 - 03/25/01, all of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, Mr. Roberts has no opportunity to recover availability pay, and his availability pay claims are dismissed with this decision.

Mr. Funke served as a Series 1811 Criminal Investigator for the period 04/02/95 - 03/25/01, a portion of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, the above chart reflects that Mr. Funke may recover availability pay for the portion served before 4/1/96, that is, 04/02/95 - 03/31/96, if he can demonstrate the requisite unscheduled duty hours during this period, addressed below.

Mr. Caven served as a Series 1811 Criminal Investigator for the period 10/31/94 - 01/06/02, a portion of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, the above chart reflects that Mr. Funke may recover availability pay for the portion served before 4/1/96, that is, 10/31/94 - 03/31/96, if he can demonstrate the requisite unscheduled duty hours during this period, addressed below.

The second "None" entry reflected in the above chart is a result of Ms. Root serving as a Series 1811 Criminal Investigator for the period 06/07/98 - 03/25/01, all of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, "None" reflects that Ms. Root has no opportunity to recover availability pay, and her availability pay claims are dismissed with this decision.

Mr. Fisher served as a Series 1811 Criminal Investigator for the period 10/31/94 - 03/26/01, a portion of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, the above chart reflects that Mr. Fisher may recover availability pay for the portion served before 4/1/96, that is, 10/31/94 - 03/31/96, if he can demonstrate the requisite unscheduled duty hours, addressed below.

The third "None" entry reflected in the above chart is a result of Mr. McMullen serving as a Series 1811 Criminal Investigator for the period 09/14/97 - 10/08/00, all of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, "None" reflects that Mr. McMullen has no opportunity to recover availability pay, and his availability pay claims are dismissed with this decision.

The fourth and final "None" entry reflected in the above chart is a result of Mr. Macho

serving as a Series 1811 Criminal Investigator for the period 08/16/98 - 02/10/01, all of which was served after the 4/1/96 effective date of 49 U.S.C. § 40122. Therefore, "None" reflects that Mr. Macho has no opportunity to recover availability pay, and his availability pay claims are dismissed with this decision.

Unscheduled Duty Hour Requirement

LEAPA requires a certification by the Criminal Investigator and a supervisor to the head of the agency that the investigator "has met, and is expected to meet," an average of two of more hours per day in unscheduled duty hours. 5 U.S.C. § 5545a(e)(1). Plaintiffs contend that "[t]he certification process does not apply to [plaintiffs'] claims for Availability Pay, as a matter of law." Plaintiffs argue that "the initial certification contemplated by 5 C.F.R. Section 550.184(a) for the initial year of eligibility is prospective only, and does not reach or capture employee certification of past work." (emphasis in original). Continuing, plaintiffs argue that "the annual certification requirement applicable to years subsequent to the initial year of eligibility, is not intended to reach retroactive claims for Availability Pay." Plaintiffs contend that because the certification process entails a determination by the agency that the Criminal Investigator "is expected to meet," 5 C.F.R. § 550.184(a), or "currently meets, and is expected to continue to meet during the upcoming 1-year period," the substantial hours requirement, 5 C.F.R. § 550.184(b), "[i]t would be frivolous and futile to now require each Plaintiff to submit initial certifications since none of the Plaintiffs could now certify as to future performance." Accordingly, plaintiffs argue that they are entitled to retroactive availability pay, regardless of the certification requirement, as they have already performed "countless hours of uncompensated unscheduled overtime," which the plaintiffs "reasonably believed were required of them by virtue of their criminal investigator duties and functions."

According to the express language found in LEAPA, in order to receive availability pay, "[e]ach criminal investigator receiving availability pay under this section and the appropriate supervisory officer, to be designated by the head of the agency, shall make an annual certification to the head of the agency that the investigator has met, and is expected to meet, the [unscheduled duty hour] requirements of subsection (d)." 5 U.S.C. § 5545a(e)(1). Providing further elaboration on the certification process, LEAPA's implementing regulations state that:

> (a) Each newly hired criminal investigator who will receive availability pay and the appropriate supervisory officer (as designated by the head of the agency or authorized designee) shall make an initial certification to the head of the agency attesting that the investigator is expected to meet the substantial hours requirement in § 550.183[17] during the upcoming 1-year period. A similar

[17] The cited section 550.183(a) provides that "[a] criminal investigator shall be eligible for availability pay only if the annual average number of hours of unscheduled duty per regular workday is 2 hours or more, as certified in accordance with § 550.184. This average is computed by dividing the total unscheduled duty hours for the annual period

> certification shall be made for a criminal investigator who will begin receiving availability pay after a period of nonreceipt (e.g., a designated voluntary opt-out period under § 550.182(e)).
>
> (b) Each criminal investigator who is receiving availability pay and the appropriate supervisory officer (as designated by the head of the agency or authorized designee) shall make an annual certification to the head of the agency attesting that the investigator currently meets, and is expected to continue to meet during the upcoming 1-year period, the substantial hours requirement in § 550.183.

5 C.F.R. § 550.184(a), (b).

The United States Court of Appeals for the Federal Circuit gave dignity to the statutorily-required certification process, even in the retroactive availability pay situation. In the retroactive availability pay appeal brought by Mr. Caven, one of the eight plaintiffs in this case, the Federal Circuit stated that law enforcement officers are not automatically entitled to availability pay, and that availability pay "requires compliance with the requirements of section 5545a, which include certification by both the law enforcement officer and his superior that the officer has met the statutory requirements." Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1381.

The emphasis on statutory requirements in the Federal Circuit's Caven decision is consistent with the Federal Circuit's opinion in Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005). In Doe, federal employees sought overtime pay pursuant to the Federal Employees Pay Act (FEPA), 5 U.S.C. § 5542 (2000). Id. at 1348. The parties did not dispute that the overtime was actually worked, and was even memorialized in a set of time records. Id. at 1350, 1363-64. The Federal Circuit further noted that there was evidence supporting the plaintiffs' contention that the government not only expected and encouraged the plaintiffs to perform the overtime, but induced the plaintiffs to perform the overtime, and had knowledge that the overtime was worked. Id. at 1349, 1350, 1350 n.2. Nevertheless, the statute and implementing regulation required that the overtime be ordered or approved in writing, and it was not. Id. at 1351-52. The Federal Circuit found that, even if the plaintiffs actually worked overtime, and were induced to do so by the agency, their claims must be dismissed because not all of the requirements of the law were met, that is, the overtime was not ordered or approved in writing. Id. at 1349, 1364; see also Doe v. United States, 463 F.3d at 1320-22 (affirming the denial of overtime in the earlier Doe case); Koyen v. Office of Pers. Mgmt., 973 F.2d 919, 921-22 (Fed. Cir. 1992) ("The Supreme Court has left no doubt that it is 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" (quoting Schweiker v. Hansen, 450 U.S. 785, 788 (1981) (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947)))).

---

(numerator) by the number of regular workdays (denominator)." 5 C.F.R. § 550.183(a).

The Federal Circuit in Doe compared the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219), which entitles an employee to overtime pay if the employer "suffer[s] or permit[s]" the employee to work overtime, with the Federal Employees Pay Act (FEPA), 5 U.S.C. § 5542, at issue in Doe, which provides for overtime compensation only when overtime has been ordered and approved in writing. Doe v. United States, 372 F.3d at 1360-61 (alterations in original). In Doe, the Federal Circuit noted that other circuits interpreted the Fair Labor Standards Act language as allowing for the payment of overtime compensation so long as "an employer 'knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity.'" Id. at 1361 (quoting Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975)) (internal quotation marks and citations omitted by the Federal Circuit). In contrast, the Federal Circuit found that "[t]he lack of such language in FEPA at least suggests that the Act's requirement that overtime be 'officially ordered or approved,' 5 U.S.C. § 5542(a) [FEPA], cannot be satisfied by merely 'suffer[ing] or permit[ting],' 29 U.S.C. § 203(g) [FLSA], overtime. This further supports OPM's view that FEPA's 'ordered or approved' language can reasonably be interpreted to require a more formal means of authorization." Doe v. United States, 372 F.3d at 1361. Similarly, the Federal Circuit in Caven indicated that LEAPA effectively requires a formal means of authorization, that is, the hourly certification requirement. Id. See Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1381 (Availability pay "requires compliance with the requirements of section 5545a, which include certification by both the law enforcement officer and his superior that the officer has met the statutory requirements.").

Nevertheless, plaintiffs argue that LEAPA is not designed to "reach or capture employee certification of past work." To the contrary, the plaintiffs' "past work" is the subject of OPM regulations, at section 550.184(f), which state that "[t]he head of an agency (or authorized designee) may prescribe any additional regulations necessary to administer the certification requirement, including procedures for retroactive correction in cases in which a certification is issued belatedly or lapses due to administrative error." 5 C.F.R. § 550.184(f) (emphasis added). LEAPA itself provides that, as to the certification requirement, "[t]he head of a law enforcement agency may prescribe regulations necessary to administer this subsection." 5 U.S.C. § 5545a(e)(1).

In order for availability pay to be authorized, LEAPA requires certification by the Criminal Investigator and the appropriate supervisory officer to the head of the agency that the Criminal Investigator has met the unscheduled duty hour requirements, an average of two unscheduled duty hours per day. See 5 U.S.C. § 5545a(d)(1), (e)(2). In this regard, OPM regulations provide that:

> The employing agency shall ensure that criminal investigators receiving availability pay comply with the substantial hours requirement in § 550.183, as certified in accordance with this section. The employing agency may deny or cancel a certification based on a finding that an investigator has failed to perform unscheduled duty (availability or work) as assigned or reported, or is unable to perform unscheduled duty for an extended period due to physical

or health reasons.

5 C.F.R. § 550.184(d). Under this rule, the FAA may "deny" a certification for failure of compliance with the unscheduled duty hour requirements.

The initial LEAPA year availability pay claims of plaintiffs Vanderpool, Funke, Caven, and Fisher remain before the court. The parties have stipulated that Mr. Caven requested availability pay on April 17, 2000, but the FAA did not respond to Mr. Caven's first request. On May 22, 2000, Mr. Caven submitted a second request to the FAA for availability pay. Similarly, the FAA did not initially respond to Mr. Caven's second request. While Mr. Caven was pursuing his availability claim before the MSPB, the FAA denied his request for availability pay, stating that Mr. Caven did not meet LEAPA's unscheduled duty hour requirement. See Caven v. Merit Sys. Prot. Bd., 2003 M.S.P.B. LEXIS 1041, at *6.

Mr. Fisher requested availability pay in a letter to the FAA dated February 8, 2001. The record does not contain a response from the FAA to Mr. Fisher's request. Mr. Vanderpool requested availability pay in a letter to the FAA dated February 26, 2001. The FAA denied Mr. Vanderpool's request by letter dated March 15, 2001. Mr. Funke requested availability pay in a letter to the FAA dated March 6, 2001. The FAA denied Mr. Funke's request by letter dated March 15, 2001.

The FAA denials of availability pay to Mr. Caven, Mr. Funke, and Mr. Caven are consistent with the FAA's August 10, 1995 memorandum, issued after LEAPA's enactment on September 30, 1994, in response to a question from the field on entitlement to availability pay. The FAA stated in the memorandum that Criminal Investigators, a job classification all of the plaintiffs in this case held at some point, were not entitled to availability pay because they lacked LEO status, but the FAA memorandum continued, that it did not appear likely, based on the agency's experience, that Criminal Investigators would be able to perform the annual average of two hours of unscheduled duty per workday required to qualify for availability pay. See Memorandum, from the Director, Office of Civil Aviation Security Operations, Federal Aviation Administration, United States Department of Transportation, subject: INFORMATION: Eligibility for Availability Pay (Aug. 10, 1995).

The court concludes that, in the face of the August 10, 1995 FAA policy memorandum; the FAA's decision not to restore LEAPA applicability to the FAA after LEAPA's removal from the FAA pursuant to the FAA Personnel Management System legislation; the repeated failures to respond to Mr. Caven's requests for availability pay, then the denial letter to Mr. Caven, the denial letters to Mr. Vanderpool and Mr. Funke, and the failure to response to Mr. Fisher, it would have been futile and would have served no purpose for the four remaining plaintiffs before this court to have pursued their availability pay claims any further with the agency in an attempt to secure from the FAA a certification that the four plaintiffs met LEAPA's unscheduled duty hour requirement. See Heck and Assocs., Inc. v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998) ("[T]he futility exception simply serves 'to protect property owners from being required to submit *multiple* applications when the manner in which the first application *was rejected* makes it clear that no project will be approved.'" (quoting S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504

(9th Cir. 1990) (emphasis added in original)); see also Beekwilder v. United States, 55 Fed. Cl. 54, 61 (2002). Futility may be urged by plaintiffs, but seldom found. Under the particular facts and circumstances of this case, however, to require the four plaintiffs to return to the agency, yet again, would be an exercise in futility. The court finds that it has jurisdiction over the initial LEAPA year claims of these four claimants, and that the initial year LEAPA claims are ripe for adjudication.

Unlike the initial LEAPA year availability pay claims, over which this court possesses jurisdiction, subsequent LEAPA year availability pay claims are premature. For if a claimant were to receive availability pay for the initial year, and if the agency were then to deny availability pay for the subsequent year, the Federal Circuit has instructed that the MSPB and not this court would possess jurisdiction over the subsequent year claim. Caven v. Merit Sys. Prot. Bd., 392 F.3d at 1380-81.

Subsequent year claims, therefore, are premature at this stage. "The doctrine of exhaustion of administrative remedies . . . provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Sandvik Steel Co. v. United States, 164 F.3d 596, 599 (Fed. Cir. 1998) (quoting McKart v. United States, 395 U.S. 185, 193 (1969)); see also Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003); Forest Prods. Northwest, Inc. v. United States, 62 Fed. Cl. 109, 122 (2004) ("It is beyond any doubt that exhaustion of administrative remedies is mandated before relief may be sought in the courts." (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51-52 (1938)), aff'd, 453 F.3d 1355, 1359 (Fed. Cir. 2006). "A controversy must be 'ripe' for judicial resolution in order 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and it effects felt in a concrete way by the challenging parties.'" Disabled Am. Veterans v. Gober, 234 F.3d 682, 690-91 (Fed. Cir. 2000) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)), cert. denied, 532 U.S. 973 (2001); see also NSK Ltd. v. United States, 510 F.3d 1375, 1384-85 (Fed. Cir.2007), reh'g and reh'g en banc denied (2008); Perry v. Office of Pers. Mgmt., 243 F.3d 1337, 1344 (Fed. Cir. 2001). "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Abbott Labs. v. Gardner, 387 U.S. at 149. Due to the inability of the court, or the parties, to determine, at this stage, which forum has jurisdiction over subsequent year LEAPA claims, the subsequent years are not ripe for judicial decision, and we do not reach the hardship issue. Initial LEAPA year claims, however, as discussed above, are ripe for adjudication.

The following chart reflects those initial LEAPA claims that remain pending in this court, and subsequent year claims which are premature:

| Employee | Initial LEAPA Year | Subsequent LEAPA Year |
|---|---|---|
| James R. Vanderpool | 10/31/94 - 05/28/95[18] | None |
| Thomas J. Funke | 04/02/95 - 03/31/96[19] | None |
| Thomas L. Caven | 10/31/94 - 10/30/95 | 10/31/95 - 03/31/96[20] |
| William E. Fisher | 10/31/94 - 10/30/95 | 10/31/95 - 03/31/96[21] |

## CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss is granted. The claims of Richard L. Roberts, Michelle L. Root, Donald A. McMullen, and Robert Macho will be dismissed from this case by separate orders. Also by separate order, the court will schedule a status conference to address how to proceed to resolve those claims of James R. Vanderpool, Thomas J. Funke, Thomas L. Caven, and William E. Fisher, which remain pending before the court.

Count 2 of the complaint was based on a breach of contract theory, and has been withdrawn by the plaintiffs. Count 2 is dismissed, with prejudice.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[18] Mr. Vanderpool's initial LEAPA year was curtailed by the 05/28/95 end date of the period he was a Series 1811 Criminal Investigator.

[19] Mr. Funke's initial LEAPA year was curtailed by 03/31/96, the last day before the effective date of the FAA Personnel Management System legislation.

[20] Mr. Caven's subsequent LEAPA year was curtailed by 03/31/96, the last day before the effective date of the FAA Personnel Management System legislation. This subsequent LEAPA year claim is not ripe for adjudication for the reasons discussed above.

[21] Mr. Fisher's subsequent LEAPA year was curtailed by 03/31/96, the last day before the effective date of the FAA Personnel Management System legislation. This subsequent LEAPA year claim is not ripe for adjudication for the reasons discussed above.